

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

LHE:GK/JRS
F. #2018R01401

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 6, 2023

<u>By ECF and E-Mail</u>

The Honorable Diane Gujarati
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Rachel Cherwitz
       Criminal Docket No. 23-146 (DG)

Dear Judge Gujarati:

  The government respectfully submits this letter in support of its motion for the Court to impose appropriate conditions of release to reasonably assure the appearance of defendant Rachel Cherwitz in court as required and the safety of other persons and the community. Cherwitz was arrested earlier today in California.

I. <u>Background</u>

  A. <u>OneTaste, Inc.</u>

  OneTaste, Inc. ("OneTaste") advertised itself as a sexuality-focused wellness education company founded by Nicole Daedone in 2004 in San Francisco, California.[1] Until 2018, when the company largely reduced its operations,[2] OneTaste was best known for offering hands-on classes on "orgasmic meditation" ("OM"), a partnered practice typically involving the methodical stroking of a woman's genitals for a period of fifteen minutes. OneTaste generated revenue by providing courses, coaching and events related to OM and other wellness practices, in exchange for a fee. Many OneTaste members lived in residential warehouses where they participated in OM courses and experimented sexually.

---

  [1] Daedone served as the Chief Executive Officer and a leader of OneTaste from the company's founding until approximately 2017.

  [2] While OneTaste still exists, is unclear whether it continues to offer the same services as during the time period charged in the Indictment.

In 2009, the *New York Times* featured OneTaste on the front page of its style section, and the brand quickly expanded.[3] Daedone gave speeches in large settings and published on the topic of OM. In 2011, she published a book called *Slow Sex*. In 2013, Daedone delivered a speech at South by Southwest called "Female Orgasm: The Regenerative Human Technology." Daedone also spoke about OM in a 2011 TEDxSF talk, during which she described an essential hunger for connection and her experience listening to what she called the "'western woman's mantra': I work too hard, I eat too much, I diet too much, I drink too much, I shop too much, I give too much. And still, there's this sense of hunger I can't touch."[4] Daedone suggested that OM was the solution. Id.

In the 2010s, OneTaste expanded its customer base and geographic footprint. At various points in time, OneTaste maintained operations in, among other locations, San Francisco, Denver, Las Vegas, Boulder, Los Angeles, Austin, New York City, and London.[5] In New York City, OneTaste leased residences and hosted events in several different locations, including in the Harlem, Hells Kitchen, Soho and West Village neighborhoods in Manhattan, and in Brooklyn, New York. OneTaste operated through several affiliated entities, including but not limited to OneTaste NYC LLC, OneTaste NY Acquisition LLC, Mirror Clan Inc., One Taste Investments LLC, One Taste Holdings LLC, OneTaste Media LLC, Caravan Retreats Inc., OTBA Inc., Texas Limbic Network LLC, The Next Right Thing LLC, the Institute of OM Foundation, the Institute of OM LLC (the "Institute of OM") and The Land.

Rachel Cherwitz served as OneTaste's Head of Sales from approximately 2009 through 2018.

### B. The Forced Labor Conspiracy

As alleged in the indictment, from approximately 2004 through 2018, Cherwitz and her co-defendant, Nicole Daedone, participated in a scheme to obtain the labor and services of a group of OneTaste members—including volunteers, contractors, and employees of OneTaste—by subjecting them to economic, sexual, emotional and psychological abuse; surveillance; indoctrination; and intimidation.

Cherwitz and Daedone deployed a number of abusive and manipulative tactics in furtherance of their scheme. Cherwitz and Daedone intentionally targeted individuals who had suffered prior trauma for recruitment to OneTaste and advertised that OneTaste's courses and teachings could heal past sexual trauma and dysfunction. If the members could not afford the courses—which ranged from hundreds to tens of thousands of dollars each—Cherwitz induced

---

[3]   See Brown, Patricia & Pogash, Carol, The Pleasure Principal, New York Times (Mar. 13, 2009), https://www.nytimes.com/2009/03/15/fashion/15commune.html.

[4]   See https://www.youtube.com/watch?v=s9QVq0EM6g4

[5]   In New York City, OneTaste leased residences and held events at locations across Manhattan and Brooklyn, including Harlem, Hell's Kitchen, Soho, and the West Village.

the OneTaste members to incur debt, and at times directly assisted the OneTaste members in opening new credit cards, to pay for them.

Cherwitz and Daedone also undertook tactics designed to render the OneTaste members dependent on OneTaste for their shelter and basic necessities, and to limit the OneTaste members' independence and control. Among other things, they subjected the OneTaste members to constant surveillance in communal homes, where Cherwitz and Daedone, together with others, directed that the OneTaste members sleep in shared assigned beds and eat, work and travel in groups, depriving them of personal privacy. Cherwitz and Daedone collected deeply sensitive and personal information about the OneTaste members, including information pertaining to the members' prior trauma, sexual histories and romantic relationships. Cherwitz and Daedone then used such information to render the OneTaste members emotionally, socially and psychologically dependent on OneTaste. They frequently broke up established romantic relationships among the OneTaste members where they perceived such relationships as a threat to OneTaste's interests and separated the OneTaste members from their support networks by encouraging them to limit contact with people outside of the OneTaste community and by assigning them to move to new locations on short notice.

While employing such tactics, Cherwitz and Daedone promoted a philosophy and ethos based at the worship of "Orgasm" in which Daedone played a central role. Cherwitz, Daedone, and other leaders in the OneTaste community demanded absolute commitment to Daedone, including by exalting Daedone's teachings and ideology. As part of this ideology, Cherwitz and Daedone instructed the OneTaste members to engage in sexual acts—including acts the members found uncomfortable or repulsive as part of a so-called "aversion practice"—as a requirement to obtain freedom and enlightenment and demonstrate their commitment to OneTaste and Daedone.

Upon securing the allegiance of the OneTaste members through these tactics, Cherwitz and Daedone engaged in abusive employment practices. For example, Cherwitz, Daedone and other OneTaste leaders promised to pay the OneTaste members wages and commissions for work performed on behalf of OneTaste and subsequently declined to pay the OneTaste members the amounts owed or changed the OneTaste members' employment statuses or locations without advance notice. Cherwitz and Daedone also recruited and groomed OneTaste members to engage in sexual acts with OneTaste's current and prospective investors, clients, employees and beneficiaries, for the financial benefit of OneTaste and, in turn, themselves.

Resistance to Cherwitz's and Daedone's directives was not tolerated, and would often result in public shame, humiliation and workplace retaliation. Cherwitz and Daedone, together with other OneTaste leaders, also employed harassment and coercion to intimidate and attack OneTaste members perceived to be enemies and critics of Daedone or OneTaste.

On April 3, 2023, a grand jury in this District issued an indictment charging Cherwitz and Daedone with forced labor conspiracy, in violation of 18 U.S.C. § 1594. See ECF Dkt. No. 1 (the "Indictment").

Based on Cherwitz's serious and years-long abuse, the penalties she faces upon conviction, the strong evidence of her guilt, and her ability and incentives to flee, the government respectfully submits that Cherwitz should be released only upon the imposition and satisfaction of appropriate conditions to ensure that she does not flee or commit any additional crimes.

II.     Legal Standard

In deciding whether to release or detain a defendant, a court "must undertake a two-step inquiry." United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988). "It must first determine by a preponderance of the evidence that the defendant either has been charged with one of the crimes enumerated in Section 3142(f)(1) [which are inapplicable here] or that the defendant presents a risk of flight or obstruction of justice." Id. "Once this determination has been made, the court turns to whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial." Id.

The government may proceed by proffer to establish facts relevant to a detention determination. United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995). Furthermore, "[t]he rules of evidence do not apply in a detention hearing." Id. at 542. As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross examination. Most proceed on proffers. See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000). This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131). Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence. Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including "the person's character"; and (4) the nature and seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g). In evaluating dangerousness, courts consider not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

4

III. <u>Argument</u>

    A. <u>Cherwitz Presents a Risk of Flight and Obstruction</u>

The facts and circumstances of this case demonstrate that that Cherwitz presents a serious risk of both flight and of obstruction.

    1. <u>Risk of Flight</u>

First, "[t]he prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence." <u>United States v. Zhang</u>, 55 F.4th 141, 151 (2d Cir. 2022). Here, if Cherwitz is convicted at trial, she faces up to 20 years' imprisonment. 18 U.S.C. §§ 1589(c), 1594(b). Courts have recognized that even a significantly shorter potential sentence can warrant a risk-of-flight finding. <u>See, e.g.</u>, <u>United States v. Khusanov</u>, 731 F. App'x 19, 21 (2d Cir. 2018) ("[E]ven if, as a practical matter, Khusanov's maximum sentence exposure were only 15, rather than 30, years' imprisonment, that would still be sufficient to provide him with a strong incentive to flee.").

Second, where, as here, the evidence of a defendant's guilt is strong, "it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight." <u>Zhang</u>, 55 F.4th at 151; <u>United States v. Sabhnani</u>, 493 F.3d 63, 76 (2d Cir. 2007) (finding detention appropriate because, in part, "the evidence of [the defendants'] guilt, both direct and circumstantial, appears strong"); <u>United States v. Bruno</u>, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long a defendant has stronger motives to flee."). Here, Cherwitz's arrest is the result of a long-term investigation conducted by the FBI that included the interviews of dozens of witnesses and the review of a variety of records, recordings, documents and other materials over the course of multiple years.

Third, Cherwitz has the means to flee if she chooses to do so. <u>See</u> <u>Sabhnani</u>, 493 F.3d at 76 ("a second factor strengthens the case for detention: defendants' ample means to finance flight"). Based on information obtained during the investigation, the government understands that Cherwitz has connections to individuals of substantial wealth, including individuals who own the property where she was residing at the time of her arrest. And following the publication of articles critical of OneTaste, Cherwitz's co-defendant, Daedone, has during various periods resided overseas for months at a time.[6]

Fourth, the conduct committed by Cherwitz in this case—which involves years of manipulation, emotional and psychological abuse, and intimidation—suggests that she cannot be trusted to return to court as required without appropriate conditions.

---

    [6] To the government's knowledge, Daedone remains overseas as of the filing this letter.

5

Accordingly, the government submits that the Court should find by a preponderance of the evidence that Cherwitz poses a serious risk of flight.

B. <u>Appropriate Conditions Are Required</u>

Here, each of the factors set forth in 18 U.S.C. § 3142(g) weigh in favor of setting appropriate conditions to ensure that Cherwitz does not flee, obstruct justice or attempt to retaliate against witnesses.

First, as set forth above, the offense is serious, the conduct involves extraordinary abuse, and Cherwitz faces severe penalties if convicted at trial.

Second, as set forth above, the weight of the evidence against Cherwitz is strong.

Third, Cherwitz's history and characteristics weigh in favor of imposing conditions of release—particularly as she is accused of participating in a years-long scheme to obtain the labor and services of the OneTaste members through deceptive, manipulative and abusive tactics. The government acknowledges that Cherwitz has no known prior criminal history.

Fourth, Cherwitz poses a continuing danger to the community. Based on information obtained during the investigation, as recently as this year, Cherwitz has returned to performing public OM demonstrations, although it is unclear to what extent she is directing the actions of employees of any organization affiliated with OneTaste.

In light of the above, the government submits that the Court should release Cherwitz only if she satisfies appropriate conditions, including:

1) A substantial secured bond of a value constituting a significant portion of Cherwitz's assets, signed by at least two sureties with net worths of sufficient unencumbered value to pay the amount of the bond, with appropriate moral suasion over Cherwitz, see <u>Sabhnani</u>, 493 F.3d at 77 ("[T]he deterrent effect of a bond is necessarily a function of the totality of a defendant's assets."); <u>United States v. Batista</u>, 163 F. Supp. 2d 222, 224 (S.D.N.Y. 2001) ("In addition to the requirement of financial responsibility, a defendant must show that the proposed suretors exercise moral suasion to ensure the defendant's presence at trial."); <u>see also</u> 18 U.S.C. § 3142(c)(1)(B)(xii) (requiring that any surety "have a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond");

2) Travel restrictions limiting Cherwitz's travel to the Northern District of California and, as required for court appearances, New York City, <u>see</u> 18 U.S.C. § 3142(c)(1)(B)(iv);

3) A condition forbidding Cherwitz from contact with any current or former employees of OneTaste, Inc., except in the presence of Cherwitz's counsel in this matter; and any other co-conspirators, victims or witnesses (with

6

                case-by-case exclusions for close friends who were not involved in the charged scheme, if consented to by the government and pre-trial), see 18 U.S.C. § 3142(c)(1)(B)(v);

4)     A condition forbidding Cherwitz from attempting to obstruct the prosecution or retaliate against witnesses, or causing, encouraging, or prompting anyone else to do so on Cherwitz's behalf.

IV.     Conclusion

For the reasons set forth above, the government respectfully submits that the Court should impose appropriate conditions, as forth above, to mitigate the risk that Cherwitz will flee, obstruct justice, retaliate against witnesses, or engage in further criminal activity harmful to the community.

                                                                          Respectfully submitted,

                                                                          BREON PEACE
                                                                          United States Attorney

By:     /s/
         Lauren H. Elbert
         Gillian Kassner
         Jonathan Siegel
         Assistant U.S. Attorneys
         (718) 254-7000

cc:     Clerk of the Court (DG) (by ECF)
        Counsel of Record (by ECF)