

U.S. Department of Justice

United States Attorney
Eastern District of New York

LHE/JS/GAK
F. #2018R01041

271 Cadman Plaza East
Brooklyn, New York 11201

September 13, 2023

<u>By Hand and ECF</u>

The Hon. Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. Daedone and Cherwitz</u>
     <u>Criminal Docket No. 23-146 (DG)</u>

Dear Judge Gujarati:

  The government respectfully submits this letter to notify the Court regarding two potential conflicts of interest involving counsel for both defendants Nicole Daedone and Rachel Cherwitz in the above-captioned case, and to request a hearing under <u>United States v. Curcio</u>, 680 F.2d 881, 888-90 (2d Cir. 1982).

  The potential conflicts arise from two circumstances:

  <u>First</u>, the government has been made aware that third parties associated with the entities involved in this case are paying defendant Cherwitz's legal fees. Specifically, at the time of the unsealing of the above-captioned Indictment, the government learned that during the pendency of the government's pre-indictment investigation, both defendants Daedone and Cherwitz had been indemnified and had their legal fees paid by third parties, namely, Anjuli Ayer, Amanda Dunham and Austin Ayer, whom the government understands to be the current owners of OneTaste, Inc. ("OneTaste") and its affiliated entities, including the Institute of OM LLC (the "Institute of OM"), the Land and the Connection Services Company (the "OneTaste Owners"). Counsel to Daedone has since informed the government that this indemnification arrangement is no longer in place as to her. Counsel to Cherwitz has declined to disclose to the government whether the arrangement remains in place; accordingly, and in an abundance of caution, the government is proceeding on the assumption that it is.

  <u>Second</u>, the firm of Steptoe & Johnson LLP ("Steptoe") represents both Daedone and The Institute of OM, a OneTaste-affiliated entity owned by the OneTaste Owners.

The government advises the Court of this information pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to Curcio. See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995).

## Background

On April 3, 2023, a federal grand jury sitting in the Eastern District of New York returned a sealed indictment charging the defendants Nicole Daedone and Rachel Cherwitz of participating in a forced labor conspiracy. ECF Dkt. No. 1. The charges arose of out of Daedone and Cherwitz's involvement with OneTaste, a sexuality-focused wellness company with operations throughout the United States and abroad. Id.

In or around 2017, prior to the end of the charged conspiracy period, Nicole Daedone, until that time the primary shareholder of OneTaste, sold her stake in the company to the OneTaste Owners. The company has continued to operate, including under the name the Institute of OM, as well as through its affiliates such as The Land, a retreat center that, among other things, offers programming relating to orgasmic meditation. In recent years, since the publication of a Bloomberg article about OneTaste, OneTaste and the Institute of OM have engaged in litigation in the United States and abroad seeking to defend the OneTaste brand against various critics. For example, the Institute of OM filed a defamation lawsuit in the United Kingdom relating to a BBC podcast made about OneTaste, which Daedone, Cherwitz and OneTaste later moved to join, see [2023] EWHC 106 (KB)[1], and OneTaste has filed a lawsuit in state court in California against a former OneTaste member and employee, alleging breach of her non-disclosure agreement. OneTaste, Inc. v. Ayries Blanck and Does 1 through 100, 22-STCV33 093 (Nov. 21 2022).

Prior to the government's filing of charges in this case, attorneys for the government met with various attorneys who identified themselves as representing Daedone, OneTaste and the Institute of OM. Several of these attorneys are employed by Steptoe. Specifically, at a meeting in December of 2022, counsel to Daedone, Reid Weingarten, Esq. identified himself as representing Daedone, while another Steptoe attorney in attendance, Jonathan Baum, Esq. stated that he represented the Institute of OM. Other attorneys, not affiliated with Steptoe, including Paul Pelletier, Esq. have appeared in this District on behalf of OneTaste. Julia Gatto, Esq., also of Steptoe, attended a subsequent meeting with the government, together with Mr. Pelletier, on May 31, 2023. During that meeting, Ms. Gatto stated that she represented the Institute of OM, but acknowledged that her firm also represented

---

[1] Earlier this year, the High Court of Justice denied Daedone and OneTaste's application to be added as parties on the grounds that their claims fell outside the twelve-month limitation period and were therefore time-barred; however, the court permitted Cherwitz's application to join the libel claim on the basis that Cherwitz was previously not aware of the original claim. See Yossman, K.J. "'Sexual Wellness' Company Founder Loses Libel Bid Against BBC Over Podcast," Variety, available at https://variety.com/2023/biz/global/onetaste-podcast-bbc-nicole-daedone-libel-lawsui-1235503124/. The claim remains ongoing in the United Kingdom.

Daedone in her individual capacity. Ms. Gatto has since appeared in the instant case on behalf of Daedone.

I.  Applicable Law

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995). Such per se conflicts of interest are not only unwaivable, but are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice. United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004). The Second Circuit has recognized only two categories of conflicts that are unwaivable: where "counsel" is not admitted to the bar of any court and where counsel is implicated in the defendant's crimes.

Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly

3

from the defendant a valid waiver in accordance with the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982). See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict;
>
> (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and
>
> (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." United States v. Stantini, 85 F.3d 9, 15 (2d Cir. 1996). Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation prior to trial. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

    A.    Third Party Payment of Legal Fees

A conflict may arise when an attorney is paid by a third party, rather than by his or her own client. "[B]enefactor payments . . . may subject an attorney to undesirable outside influence and raise[] an ethical question as to whether the attorney's loyalties are with the client or the payor." Locascio, 6 F.3d at 932 (quoting In re Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d 238, 248 n.6 (2d Cir. 1986) (en banc)); see also Wood, 450 U.S. at 269-270 ("Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party."); United States v. Wells, 394 F.3d 725, 733–34 (9th Cir. 2005); United States v. Arakelian, No. 04 Cr. 447 (RPP), 2005 WL 2173923, *6-7 (S.D.N.Y. Sept. 6, 2005) (describing Curcio-related inquiry related to potential benefactor payments); Moreno-Godoy v. United States, 2014 WL 1088300, at *32 (S.D.N.Y. Mar. 20, 2014) ("A conflict of interest can arise where a third party's payment of a defendant's attorney's fees leads to a theoretical division of loyalties.").

4

"By their very nature, third-party fee arrangements create numerous ethical pitfalls into which even the most wary criminal defense attorney may stumble." United States v. Duran-Benitez, 110 F. Supp. 2d 133, 151-52 (E.D.N.Y. 2000) (citing New York Disciplinary Rule 5-107). See also Restatement § 134(1) ("A lawyer may not represent a client if someone other than the client will wholly or partly compensate the lawyer for the representation, unless the client consents . . . and knows of the circumstances and conditions of the payment."). "These ethical pitfalls become especially dangerous when a defendant's lawyer is hired and paid by 'the operator of the alleged criminal enterprise.'" Duran-Benitez, 110 F. Supp. 2d at 152 (quoting Wood, 450 U.S. at 269). In such situations, the Supreme Court wrote in Wood, there exists a "risk that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest." Wood, 450 U.S. at 269; see also In re: Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d at 248 n.6 (noting that when "the third party is the head of a criminal enterprise of which the clients are members... an ethical question arises as to whether the attorney's loyalties are with the client or the payor").

"[A]bsent special circumstances . . . disclosure of fee information and client identity is not privileged . . . ." In re Grand Jury Subpoena Served Upon John Doe, Esq., 781 .2d at 248.

      B.     Joint Representation

With regard to joint representation of multiple parties, a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person." Restatement (Third) of the Law Governing Lawyers § 121 (2000) ("Restatement"). A serious conflict may also arise if the defendant wished to cooperate with the government's investigation and testify as to facts inculpating the other client. See Locascio, 6 F.3d at 931; United States v. Iorizzo, 786 F.2d at 57; Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the 'lawyer's duties to . . . a former client . . . ."). This is because a lawyer owes an absolute duty of loyalty and confidentiality to both his current and former clients. See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); ABA Model Code of Professional Responsibility, Ethical Consideration 4-6. That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to him by reason of the confidential relationship, absent release from that duty under the law. See Rahman, 861 F. Supp. at 274; 4-6 ("The obligation to protect confidences and secrets of a client continues after the termination of employment."). Therefore "unless the . . . client waives these obligations, the attorney's . . . representation creates the potential for a serious conflict of interest." Yannotti, 358 F. Supp. 2d at 295.

Furthermore, in evaluating an actual or potential conflict of interest, actions of any member of a law firm are imputed to every member of the firm. E.g., United States v. Jiang, 140 F.3d 124, 127 (2d Cir. 1998). A partner in a law firm is vicariously bound by the duties of

5

loyalty and confidentiality that his partners owe to their clients. See Restatement § 123(1) (conflicts of one lawyer are imputed to other lawyers who "are associated with that lawyer in rendering legal services to others through a law partnership, professional corporation, sole proprietorship, or similar association"). Due to the vicarious obligations of partners, "a showing that two attorneys are partners or represent themselves to the world at large as partners, and whose interests overlap in the acceptance of clients and in the sharing of fees is sufficient to ground a conflict of interest claim, assuming that there is proof that the clients' interests may have been in conflict." Jiang, 140 F.3d at 127 (internal quotation marks and citation omitted). See also United States v. Blount, 291 F.3d 201, 211 (2d Cir.2002) ("A conflict-of-interest claim may ... be grounded in the fact that two lawyers from the same firm represent two codefendants, even in unrelated proceedings."). United States v. Pizzonia, 415 F. Supp. 2d 168, 182 (E.D.N.Y. 2006).

[I]n representing a current client, a lawyer may not use privileged information obtained from another client." See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982). Moreover, in representing a current client, a lawyer may not attack other clients through cross-examination or argument to the jury. See Pizzonia, 415 F. Supp. 2d at 177-78; Rahman, 861 F. Supp. at 277; United States v. Massino, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003).

Joint representation brings two constitutional rights into potential conflict: "the right of a criminal defendant to be represented by counsel of his own choice and the right of such a defendant to counsel whose effectiveness is unimpaired by divided loyalty." Curcio, 694 F.2d at 22. A criminal defendant is free to prefer the right to counsel of his choosing over the right to counsel of undivided loyalty, provided that the choice is "knowing and intelligent," a matter which depends upon the facts and circumstances of each case. See Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378 (1981). United States v. Fan, 36 F.3d 240, 248 (2d Cir. 1994). Multiple representation of parties involved in a criminal offense can give rise to hypothetical conflicts even where certain of the parties are not charged. See, e.g., United States v. Laraba, 19-CR-36 (RJA), 2022 WL 7145401, at *7 (finding that actual and potential conflicts were inherent in defense counsel's simultaneous representation of charged defendant and uncharged subject of investigation).

II.     Analysis

As described above, the government has identified two potential conflicts facing counsel in this case; first that third parties are currently paying Cherwitz's legal fees, and second, that Daedone's current counsel and others at Steptoe jointly represent both Daedone and The Institute of OM.

Turning first to the issue of Cherwitz's legal fees, the government's primary concern is that this payment structure could, hypothetically, affect defense counsel's advice, including, but not limited to, advice on issues such as (1) whether to seek possible leniency by cooperating with the government, including against Daedone and other members of OneTaste leadership; (2) whether to take responsibility for her criminal conduct, which would require an allocution acknowledging that certain members of OneTaste had been forced to perform labor on behalf of the company, as alleged in the Indictment; and (3) whether to testify in her own defense

6

at trial, where such testimony might implicate members of OneTaste's leadership.  See United States v. Raniere, 18-CR-204 (NGG), ECF Dkt. No. 266 (observing that a potential conflict arises where the choice of defense strategy may influence decisions on the part of those who are paying for legal fees).

These concerns are amplified in this case given the allegations involving coercive tactics deployed against OneTaste employees.  See generally, Indictment ECF Dkt. No. 1. Moreover, Daedone was the face of OneTaste and remains strongly associated with OneTaste's brand, even post indictment.  For example, as of September 13, 2023, OneTaste's homepage, https://onetaste.us, presents a video of a speech given by Daedone in which she "shares her experience of the past few years of living through negative media and the fast growing science on [orgasmic meditation] and release of upcoming books."  Daedone and the OneTaste brand are likewise valuable to the Institute of OM, as reflected on their website, which links to the sale pages for Daedone's book, Slow Sex.  See Insituteofom.com.[2]  Indeed, in recent weeks, Anjuli Ayer, one of the owners of OneTaste and the Institute of OM, has stated in public interviews that the instant case "is not Nicole [Daedone] and Rachel [Cherwitz] indicted, this is Eros [a term used to encompass OneTaste and the Institute of OM] indicted."  See James, Emma "Boss of 'orgasm cult' OneTaste, Anjuli Ayer, denies it forced members into sex acts and kept women in residential warehouses," Daily Mail, available at https://www.dailymail.co.uk/news/article-12366259/OneTaste-CEO-outlandish-sex-cult-false-fought-worker-NDA-court.html. Consequently, should Cherwitz adopt a legal strategy that was at all incriminating or disparaging to Daedone or OneTaste, that strategy would be adverse to the interests of the OneTaste Owners, who are paying Cherwitz's fees.

Likewise, Steptoe's simultaneous representation of Daedone and the Institute of OM gives rise to a potential conflict of interest, for many of the same reasons.  For example, if Daedone, hypothetically, wished to take responsibility and enter a plea of guilty, doing so might tarnish the OneTaste brand and therefore be adverse to the business prospects of the Institute of OM, another of Steptoe's clients to whom it owes a duty of loyalty.  Likewise, the conflict might affect counsel's ability to advise Daedone as to her choice of whether to testify in her own defense in a way that acknowledged criminality at OneTaste.  Finally, if Steptoe learned certain information in the context of their attorney client relationship with the Institute of OM that might assist their Daedone, they could not use that information if it would do harm to the Institute of OM, even if it would benefit Daedone, due to their duty of loyalty to the Institute of OM.

Therefore, a Curcio inquiry is appropriate to determine (1) whether the payment of Chertiz's legal fees by Anjuli Ayer, Amanda Dunham and Austin Ayer and/or OneTaste and/or its affiliated companies presents a conflict; (2) whether Steptoe's simultaneous

---

[2]  As of September 6, 2023, Rachel Cherwitz was also featured on the OneTaste website as an instructor of certain art-related courses offered over "The Eros Platform;" as of the date of this letter those courses no longer appear on the website.

representation of Daedone and the Institute of OM presents a conflict; (3) the nature and extent of any such conflict; and (4) whether each defendant is willing and able to make a knowing and voluntary waiver of the conflict.

                              Respectfully submitted,

                              BREON PEACE
                              United States Attorney

By:    /s/
                              Lauren Howard Elbert
                              Gillian A. Kassner
                              Jonathan Siegel
                              Devon Lash
                              Assistant U.S. Attorneys
                              (718) 254-7000