**Ballard Spahr LLP**

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

January 18, 2025

*By Electronic Filing*

The Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    <u>U.S. v. Cherwitz, et al., No. 23-cr-146 (DG)</u>

Dear Judge Gujarati:

    We have been retained to represent defendant Rachel Cherwitz in the above-captioned matter. We write to respectfully request a continuance of the trial scheduled to commence on May 5, 2025, to a date in September 2025. We understand that Your Honor recently adjourned the trial date to allow Ms. Cherwitz's new counsel to prepare for trial. In the past couple of days, however, we have had an opportunity to understand the enormous amount of material that has been amassed in this case since the investigation began seven years ago. As outlined more fully below, four months is insufficient time to prepare for trial with new counsel, especially given recent information that has come to light about manufactured and mishandled evidence, evidentiary issues that need to be resolved, and critical and voluminous discovery that still has not been turned over to the defense, let alone reviewed.

    Furthermore, and as set forth more fully below, there appears to be extensive *Brady* material that still needs to be investigated. *See Brady v. Maryland*, 373 U.S. 83 (1963). While trial courts enjoy broad discretion in granting or denying trial continuances, courts have penalized defendants for failing to request a continuance to sufficiently investigate *Brady* violations. *See United States v. Stringer*, 730 F.3d 120, 127 (2d Cir. 2013). Indeed, there are many cases in which a defendant has requested a new trial on the ground that there was insufficient opportunity to investigate a *Brady* violation pretrial, and the court denied the request because, among other reasons, the defendant failed to make a pretrial motion for a continuance to allow for further investigation. *See United States v. Chartier,* 2021 WL 3795352, *24 (E.D.N.Y. 2021); *United States v. Ulbricht*, 2015 WL 13893992, at *6 (S.D.N.Y. 2015); *United States v. Douglas*, 415 F. Supp. 2d 329, 336 (S.D.N.Y. 2006). To

The Honorable Diane Gujarati
January 18, 2025
Page 2

avoid that very scenario, we respectfully request a continuance to permit sufficient investigation of the serious *Brady* issues discussed below.

While the 120-day adjournment that prior counsel requested on December 30, 2024 may have been sufficient for them to prepare for trial, as new counsel, we need to time review all of the evidence that prior counsel had months to digest. And notably, Ms. Cherwitz's need for new counsel was not her fault by any means. Furthermore, as noted at the January 8, 2025 hearing, given the issues with prior counsel, no work had been done on the case since December 25, 2024.[1]

Accordingly, for the reasons set forth herein, we respectfully request an adjournment to permit new counsel sufficient time to prepare for trial. This requested adjournment is necessary to ensure that Ms. Cherwitz has effective assistance of counsel at trial, as required by the Sixth Amendment.

I.     Extensive Discovery to Review

Since being retained, we have quickly learned that this is not an ordinary case. The government has charged one count of a forced labor conspiracy over a twelve-year span, without providing any critical details about the force that occurred and how it specifically induced any labor. Instead, the government uses broad strokes to argue that the defendants generally used intimidation, psychological tactics, and emotional control to keep customers and employees at OneTaste—despite overwhelming evidence that they could and did leave whenever they wanted—and that OneTaste forced members to work and engage in sexual acts. To prove this charge at trial, the government is calling witnesses who have engaged in the fabrication of evidence, have received significant benefits from the government and from telling their "stories" in the media, and have been exposed as perjurers in a parallel civil lawsuit. *See OneTaste Inc. v. Ayries Blanck*, No. 22 STCV 33093 (Superior Court of Los Angeles). Accordingly, these issues will require the defendants to call defense witnesses to rebut each and every claim by the government, which will take months to develop.

If counsel was not new, this massive undertaking of a defense case would be difficult to complete by May given the other issues raised below. However, here, where counsel to Ms. Cherwitz was just retained, additional time is necessary to even begin to prepare the defense

---

[1] *See* Jan. 8, 2025 Hr'g Tr. at 7 ("So, again, I'm independent counsel and new counsel would have to obviously weigh in on the ability to catch up. I just want to convey what I've experienced and . . . I know that Ms. Cherwitz is going to do every effort to get this done quickly so we appreciate any time, but it is obviously serious and I've been listening to the discovery and the amounts and knowing that, again, I just wanted you to know that nothing really had been done because of these events.").

The Honorable Diane Gujarati
January 18, 2025
Page 3

case because we need to first review the extensive material the government has produced. We understand that the government has produced over 400,000 pages of discovery material, 80,000 pages of government exhibits, 5,000 pages of 18 U.S.C. § 3500 material, and 82 hours of video.

Moreover, the hard drive from government witness Chris Kosley contains 1.2 terabytes of material that must be reviewed by new counsel. *See* Dkt. No. 241 at 3. The government argues that much of the Kosley hard drive was previously produced, *see* Dkt. No. 244 at 1-2; but because the hard drive contains no Bates numbers and no means to determine what was previously produced, the defense needs to review the entire hard drive, as it cannot be expected to rely on the government to identify what it should and should not review. Therefore, it is not 30 gigabytes, but the entire drive containing 1.2 terabytes that must be reviewed. While the review of this voluminous material alone would require additional time to prepare for trial, that work is on top of the serious issues described below, including missing discovery and fabricated evidence.

II.     Missing Discovery

Contrary to the government's December 31, 2024 letter, *see id.*, there is extensive discovery that has not been produced. The defense will need to review these materials once these production issues are resolved through discussion with the government or court intervention. Although the defendants previously raised some of these issues, we distill them here through the lens of new counsel.

   A.     Ayries Blanck Hard Drive

This hard drive, which belonged to the government's star witness, still has not been turned over to the defense, despite being in the government's possession since April 2024. The government refuses to turn over the entire hard drive because it maintains that there is material on it that falls outside the scope of the search warrant for the drive. *See* Dkt. No. 244 at 3-4.

But the government has manufactured a Fourth Amendment barrier to production where none exists. The government had no need to obtain the search warrant; the government has the lawful right—and, indeed, the obligation under *Brady*, *Giglio*, and § 3500—to search the entire hard drive. Ayries Blanck waived her Fourth Amendment rights when she provided the hard drive to her sister, her sister subsequently gave it to the FBI, and Ayries and her sister both initially provided consent to search the drive. *See United States v. Jacobsen*, 466 U.S. 109, 117 (1984) ("It is well settled that when an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities."); *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) ("[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.").

The Honorable Diane Gujarati
January 18, 2025
Page 4

Moreover, even if a search warrant was required, the search warrant was improperly limited to search terms that excluded material highly relevant to this case:

- First, the search time period (January 1, 2013 to December 31, 2015) is narrower in time than Ms. Blanck's time with OneTaste. She became a customer of OneTaste in October 2012, and therefore would have necessarily had positive communications with OneTaste at that time, particularly since she moved to join the OneTaste community there a few months later.

- Second, any of Ms. Blanck's written communications on the hard drive related to OneTaste are § 3500 material, regardless of when they were written.

- Third, the fact that Ms. Blanck participated through her sister in the Netflix movie about OneTaste leading up to its release in 2022 further suggests that there would be exculpatory and/or impeachment material on the hard drive created after the search warrant end date of December 31, 2015. Especially in light of the overwhelming evidence that Ms. Blanck fabricated evidence leading up to the Netflix movie (discussed below), such material post-dating December 2015 must be produced to the defense.

- Finally, without access to the physical hard drive, the defense may not be able to access and review important metadata on that drive, which could further demonstrate that evidence was fabricated in this case.

Accordingly, the narrow production pursuant to the search warrant appears to have been designed to avoid disclosure of highly relevant information to which the defense is entitled. The government must produce the entire hard drive to the defense.

B.  <u>The Missing USB Drive Containing the Stolen Privileged Document</u>

In the government's December 31, 2024 letter, they claim that the defense "characterize[s]" the USB drive as missing. Dkt. No. 244 at 4. The defense did not "characterize" the drive as missing. The drive *is* missing, according to the government's own witness.

The third party who provided the drive to the government made a declaration, under penalty of perjury, in which he told the FBI that (1) he was in possession of an electronic document that was entitled "Attorney Client Privilege" (the "Stolen Privileged Document"), (2) the document itself was so marked, (3) it was created *after* he left OneTaste, and (4) the FBI provided him with a USB drive on which to copy the document—the very USB drive the government claims does not exist.

The Honorable Diane Gujarati
January 18, 2025
Page 5

The government's interview reports demonstrate that it directly relied on this Stolen Privileged Document to build its case in the weeks after it obtained it.[2] It is therefore critical that the defense be permitted to examine this USB drive that the FBI provided to the third party. Among other things, the defense seeks to confirm the date the Stolen Privileged Document was saved to it, review the document's original metadata, and determine what else was saved to the USB drive. Furthermore, we intend to demonstrate to the Court that, not only does Ms. Cherwitz have standing to assert privilege over this document, but, regardless, the government cannot use a Stolen Privileged Document—no matter to whom the privilege belongs—to investigate and prosecute someone. Such behavior violates Department of Justice policy and the constitutional right to due process.

C. Witness Communications

The government still has failed to produce all of the written communications for those whom the government alleges are victims. These communications are potential *Brady/Giglio* material and § 3500 material. For example, the government failed to turn over a lengthy June 5, 2024 email between Ayries Blanck and FBI Special Agent McGinnis, during which Blanck attempts to explain why a book to which her fake journal refers was published in 2019, when she claims to have written the journal in 2015. That email is both *Brady/Giglio* and § 3500 material. The defense only learned of it through the related civil action, despite the government's obligation to produce it in this matter. The government must turn over any remaining written communications of its witnesses.

D. Chain of Custody Information

Chain of custody information is critical in any case, but it is particularly critical here. The FBI has collected information from third parties (e.g., the Ayries Blanck hard drive, the USB drive, and the Chris Kosley hard drive), and the defense has only learned that the FBI was sitting on much of this critical information through the related civil case. In short, it is apparent from the record in this case, and from the handling of evidence and misconduct

---

[2] Contrary to the government's assertion, *see* Dkt. No. 244 at 4, the Court has not ruled on any motion related to this privileged document. It ruled on a motion related to a separate privileged document that was provided to the government by a different third party. *See* Dkt. Nos. 113, 118, 141. The Court specifically stated that it had not yet ruled on this document. *See* Sept. 27, 2024 Hr'g Tr. at 7 ("The issues raised about those other documents in the additional filings should be addressed by the parties with each other in the first instance, including, as appropriate, with the Filter Team rather than the Trial Team. I have considered the entirety of the record, but will address only the two bases raised in the instant motion, one of which relates to the Purportedly Privileged Document.").

The Honorable Diane Gujarati
January 18, 2025
Page 6

described below, that there are serious concerns about the reliability of the evidence in this case. The defense is entitled to chain of custody information related to all physical and electronic evidence collected in this case so that it knows what evidence the government has in its possession, and how that evidence was both obtained and secured.

III.     Fabricated Evidence

Finally, the defense needs further time to investigate and present to the Court recent evidence that has come to light demonstrating that key evidence has been fabricated. While other defense counsel have raised some of these new issues in recent weeks, we emphasize it here, so that the Court is aware of the various work streams that must be addressed to ensure Ms. Cherwitz's constitutional right to a fair trial and effective assistance of counsel.

As the defense intends to develop through further submissions, the evidence is overwhelming that one of Ayries Blanck's handwritten journals (the "Fake Handwritten Journal") was fabricated at some point after 2022. In other words, key evidence the government intends to use to corroborate its star witness is fake.

The government continues to fight to admit the Fake Handwritten Journal as authentic and reliable evidence, based on various hearsay exceptions that could apply only if the journal was written in 2015. *See* Dkt. No. 169 at 92-98. The Fake Handwritten Journal, however, cannot possibly have been written in 2015; therefore, it is inadmissible at trial. The Fake Handwritten Journal directly matches a final typed journal that the government concedes was created in April 2022, edited in May 2022, and finalized on March 9, 2023. *See* Dkt. Nos. 242 at 7 and 246 at 3, n. 3. A comparison of the Fake Handwritten Journal to the typed journal reveals that it matches the final edits made on March 9, 2023. Other evidence abounds that the Fake Handwritten Journal is fake: (1) the Fake Handwritten Journal refers to a book published in 2019, despite the government's claim it was written in 2015; (2) the handwriting and linguistics of the Fake Handwritten Journal do not appear to match other known handwriting of Ayries Blanck; and (3) Ayries Blanck kept another journal that has entries from some of the exact same dates as the Fake Handwritten Journal, and the two same day entries directly conflict with each other regarding her experience at OneTaste. New counsel needs adequate time to investigate and develop this evidence to present to the Court, so that this fabricated evidence is not presented to a jury.

In short, it would be unjust to cripple Ms. Cherwitz's right not only to properly fight the charge in this case, but also to fully explore the government's use of the Stolen Privileged Document and the Fake Handwritten Journal to build this entire prosecution. It has taken months of the Court's time for the defendants to uncover these issues, many of which would never have come to light but for the related civil action. Given that these issues have only been exposed recently, we are not seeking to duplicate past work done by previous counsel. Rather, we respectfully request that Ms. Cherwitz's new attorneys be given adequate time to address these new and serious issues, review the discovery, and to prepare effectively for trial,

The Honorable Diane Gujarati
January 18, 2025
Page 7

all of which is necessary for effective assistance of counsel as is Ms. Cherwitz's right pursuant to the Sixth Amendment.

      In light of the foregoing and to allow justice to be done, we respectfully request a continuance of the May 5, 2025 trial until September 2025.

      Respectfully,

Celia Cohen

Michael P. Robotti