**Ballard Spahr** LLP

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

March 3, 2025

*Via ECF*

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: United States v. Nicole Daedone and Rachel Cherwitz, 23-CR-146

Dear Judge Gujarati:

Defendants Rachel Cherwitz and Nicole Daedone jointly move this Court to stay the proceedings. By no later than March 7, 2025, the defendants intend to file in the Second Circuit a petition for a writ of mandamus to reverse this Court's September 27, 2024 and February 26, 2025 orders (the "Orders") regarding the government's improper use of stolen and privileged material. Trial in this matter is presently scheduled to begin on May 5, 2025. Because the Second Circuit's decision will have significant implications on the trial preparation and the trial itself, a stay is warranted to allow the Second Circuit to consider and rule on this dispositive issue. Furthermore, given the Court's recent ruling that the documents at issue are not privileged, a failure to stay the proceeding could also result in further dissemination of privileged material and, thus, further damage to the defendants. The government opposes this request for stay.

I. Legal Standard

Courts consider the following factors when deciding whether to issue a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." *S.E.C. v. Citigroup Glob. Mkts Inc.*, 673 F.3d 158, 162 (2d Cir. 2012) (internal citations and quotations omitted). "The degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of

Honorable Diane Gujarati
March 3, 2025
Page 2

the other." *Ligon v. City of New York*, No. 08 CIV. 1034 SAS, 2013 WL 227654, at *1 (S.D.N.Y. Jan. 22, 2013) (alterations omitted). The defendants meet all four factors.

II. <u>Defendants are Likely to Succeed on the Merits</u>

*First*, the defendants have a strong likelihood of success on the merits. A stay is warranted here because the issue is novel and significant, and it is appropriate for appellate review on mandamus. *See In re The City of New York*, 607 F.3d 923, 939 (2d Cir. 2010) ("To determine whether mandamus is appropriate in the context of a discovery ruling, [the Court] look[s] primarily for the presence of a novel and significant question of law…and…the presence of a legal issue whose resolution will aid in the administration of justice." (internal quotation marks omitted)). The mandamus petition presents the novel question of whether the government can use stolen and privileged corporate material to prosecute a company's executives, without notifying the company and/or over the company's objections.

As defendants have made clear in previous submissions, the documents at issue are privileged. At the direction of outside counsel Davis Goldberg & Galper, PLLC ("DGG"), OneTaste, Inc. ("OneTaste" or the "Company") prepared a document to aid in a legal risk assessment in anticipation of potential litigation (the "Privileged Risk Assessment"). *See* Van Vleck Decl., Ex. A., ¶¶ 8–10; Goldberg Decl., Ex. B, ¶¶ 6–8; Vang, Decl., Ex. C, ¶ 3. OneTaste's then-CEO, Joanna Van Vleck, asked a small team to gather the information DGG requested, and told them the Privileged Risk Assessment was privileged; indeed, both an early outline of the document (the "Privileged Outline"), screenshots of a draft of the document (the "Privileged Screenshots"), and the final document (the "Privileged Risk Assessment"; collectively, the "Stolen Privileged Documents") were clearly marked as such. *See* Ex. A, ¶¶ 11–15; Ex. C, ¶¶ 4–6; Williams Decl., Ex. D, ¶¶ 6–7; Pelletier Decl., Ex. E, ¶ 2.[1]

There is no dispute that the government has accessed the Stolen Privileged Documents. Indeed, the government admits that Federal Bureau of Investigation ("FBI") agents have accessed, reviewed, and disseminated information from the Stolen Privileged Documents. *See* Sept. 20, 2024 Gov't Letter, Dkt. No. 154 at 3. Specifically, it noted that five days after interviewing Mitch Aidelbaum—a former OneTaste IT contractor from whom the FBI obtained the Privileged Risk Assessment and Privileged Outline—an agent sent an email containing a "bullet point list of information...associated with [Aidelbaum]," which appeared to be derived from the Stolen Privileged Documents. *Id.* Moreover, in October 2024, the United States Attorney's Office ("EDNY") admitted that its *Cherwitz* case file contained the Privileged Outline and the Privileged Risk Assessment. *See* Oct. 7, 2024 Gov't Letter, Dkt. No. 163.

---

[1] The Yang Declaration is redacted to protect privileged communications, and the Williams Declaration is redacted pursuant to the Protective Order.

Honorable Diane Gujarati
March 3, 2025
Page 3

Because the Stolen Privileged Documents are indeed privileged, and the government in fact accessed these privileged materials, the burden shifts to the government to show an independent source for its evidence. *See United States v. Hoey*, 725 Fed. App'x 58, 61 (2d Cir. 2018) (imposing only the minimal burden to show the government had access to privileged materials pertaining to the prosecution's subject matter before shifting the burden). The government has not made such a showing; instead, the § 3500 material produced in November 2024 revealed that the FBI used the Stolen Privileged Documents to guide its investigation and build its case.

Based on the record before the district court, dismissal of the indictment is warranted, because the government violated the defendants' rights to counsel and due process. *See United States v. Schwimmer*, 924 F.2d 443, 447 (2d Cir. 1991); *United States v. Cuervelo*, 949 F.2d 559, 565 (2d Cir. 1991). But even if the record was not fully developed, the defendants had the right to submit *ex parte* affidavits in support of their motion that could not be used against them, *see, e.g.*, *Simmons v. U.S.*, 390 U.S. 377, 394 (1968); *Fero v. Excellus Health Plan, Inc.*, No. 6:15-CV-06569-EAW-JJM, 2019 U.S. Dist. LEXIS 207871, at *11–12 (W.D.N.Y. Dec. 3, 2019), and the court was required to hold a *Kastigar* hearing, after shifting the burden to the government, *see Hoey*, 725 Fed. App'x at 61; *United States v. Schwimmer*, 892 F.2d 237, 244–45 (2d Cir. 1989). Defendants have standing to assert privilege under the common-interest and co-client doctrines, especially given that neither OneTaste nor the defendants have waived the privilege. *See, e.g.*, *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 215–16 & n.3 (2d Cir. 1997); *Schwimmer*, 892 F.2d at 243; *United States v. Dennis*, 843 F.3d 652, 657 (2d Cir. 1988); *Youngblood v. Menard, Inc.*, No. 3:22-cv-02822-SMY-GCS, 2024 U.S. Dist. LEXIS 148033, at *9–15 & n.5 (S.D. Ill. Aug. 19, 2024); *Supreme Forest Prods., Inc. v. Kennedy*, No. 3:16-cv-0054 (JAM), 2017 U.S. Dist. LEXIS 4421, at *4–10 (D. Conn. Jan. 12, 2017). The opportunity to submit *ex parte* affidavits would have further established standing; if the trial continues without allowing defendants to submit such affidavits under the protections of *Simmons*, their ability to do so will be lost.

The defendants did not waive the privilege. *See, e.g.*, *In re Parmalat Sec. Litig.*, No. 04 MD 1653 (LAK) (HBP), 2006 U.S. Dist. LEXIS 88629, at *28 (S.D.N.Y. Dec. 1, 2006); *see Dukes v. Wal-Mart Stores, Inc.*, No. 01-cv-2252 CRB (JSC), 2013 U.S. Dist. LEXIS 42740, at *15 (N.D. Cal. Mar. 26, 2013). Furthermore, defendants' motions were timely. *See, e.g.*, Fed. R. Crim. P. 12(c); *United States v. Milton*, 621 F. Supp. 3d 421, 426 (S.D.N.Y. 2022); *United States v. Shine*, No. 17-CR-28-FPG-JJM, 2019 U.S. Dist. LEXIS 98619, at *8 (W.D.N.Y. June 12, 2019); *United States v. Beras*, No. 99 CR. 75(SWK), 2004 U.S. Dist. LEXIS 11559, at *2 n.2 (S.D.N.Y. June 23, 2004).

Mandamus is appropriate to resolve these significant issues and to prevent the Stolen Privileged Documents and evidence derived therefrom from being disclosed at trial. *See, e.g.*, *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 238 (2d Cir. 2016) (noting "liberal use of mandamus" to protect privilege); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760–61 (D.C. Cir. 2014) (Kavanaugh, J.) (granting writ to protect privilege); *In re von Bulow*, 828

Honorable Diane Gujarati
March 3, 2025
Page 4

F.2d 94, 98–99 (2d Cir. 1987). Defendants have no other adequate means of relief. *See, e.g.*, *Prevezon Holdings Ltd.*, 839 F.3d at 238; *In re City of New York*, 607 F.3d at 933–38; *In re Kellogg*, 756 F.3d at 761; *In re von Bulow*, 828 F.2d at 98–99. For the foregoing reasons, there is a strong likelihood that the Second Circuit will grant the petition.

III.    Defendants Will Be Irreparably Injured Absent a Stay

*Second*, the defendants will be irreparably injured absent a stay in proceedings pending the Second Circuit's decision on the defendants' petition for a writ of mandamus. In the Orders, the Court concluded that the Stolen Privileged Documents are not privileged. And the government has indicated that, if the Stolen Privileged Documents are deemed not privileged, it very well may use the documents at trial. *See* Gov't Opp. to Motion to Dismiss, Dkt. No. 118 at 9 n.10; Dec. 3, 2024 Gov't Letter, Ex. F at 9. Once those documents are revealed during trial preparation and trial and relied upon by the government, it will be too late to protect the defendants' constitutional rights. *See, e.g.*, *In re Roman Catholic Diocese of Albany, New York*, 745 F.3d 30, 33, 35–37 (2d Cir. 2014) (disclosure of potential sexual abuse by priests was harm not adequately remediable after final judgment); *In re City of New York*, 607 F.3d at 934 (disclosure of confidential police reports could not be remediated after final judgement); *In re von Bulow*, 828 F.2d at 98–99 (mandamus necessary to prevent revelation of attorney-client privileged information); *see also In re Kellogg*, 756 F.3d at 761 ("[A]ppeal after final judgment will often come too late because the privileged materials will already have been released. In other words, the cat is out of the bag.").[2]

Furthermore, without a stay in the proceedings, the parties will be forced to prepare for trial with the assumption that the Stolen Privileged documents may be admissible. This will potentially cause further dissemination of the privileged documents, and thus irreparable injury to the defendants. It also will result in additional motion practice on the admissibility of the documents based on other evidentiary issues, causing unnecessary litigation and further exposure of the Stolen Privileged Documents. Therefore, without a stay for the Second Circuit to rule on this issue, the defendants will be irreparably harmed.

Moreover, even if the prosecution does not present to the jury the Stolen Privileged Documents themselves, presenting evidence derived therefrom is just as damaging as presenting the privileged material itself. *See Prevezon Holdings Ltd.*, 839 F.3d at 238 ("Adverse use of confidential information is not limited to disclosure. It includes knowing

---

[2] The defense has requested that the government keep the Stolen Privileged Documents segregated pending resolution of its petition and OneTaste's Rule 41(g) motion. In response, the government has said that the documents remain segregated with the Filter Team pending resolution of the Rule 41(g) motion.

Honorable Diane Gujarati
March 3, 2025
Page 5

what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses." (quoting *Ulrich v. Hearst Corp*, 809 F. Supp. 229, 236 (S.D.N.Y. 1992))). Because the FBI had access to these documents for four years and built their case upon them, information derived from these documents will undoubtedly be presented at trial.

Thus, if the Second Circuit rules in the defendants' favor and holds that the Stolen Privileged Documents are indeed privileged, but does not dismiss the indictment, any evidence derived from the privileged materials could be suppressed. *See United States v. Reyes*, 934 F. Supp. 546, 553 (S.D.N.Y. 1996) (suppressing evidence derived from violation of right to counsel); *People v. Joly*, 970 N.W.2d 426, 435 (Mich. Ct. App. 2021) (finding manifest corruption and suppressing evidence where government agent inadvertently came across a privileged email containing key incriminating evidence, but then intentionally "used the privileged information to further his investigation of defendant"). Further, any government personnel who have accessed the Stolen Privileged Documents or any information derived therefrom—such as the FBI agents or prosecutors who reviewed the documents or spoke to witnesses who were selected based on the documents—could be dismissed or recused as a result of the Second Circuit's ruling. *See, e.g.*, *State v. Robins*, 164 Idaho 425, 437 (2018); *State v. Robinson*, 209 A.3d 25, 59–60 (Del. 2019).

Accordingly, because the Second Circuit's decision will have significant implications on the trial preparation and the trial itself, a stay is further warranted to prevent irreparable injury to the defendants.

IV.  <u>The Issuance of the Stay Will Not Substantially Injure the Prosecution</u>

*Third*, the issuance of a stay will not substantially injure the prosecution. Indeed, in granting a stay pending appeal of a privilege ruling, courts have held that "[a] mere assertion of delay does not constitute substantial harm." *United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003). In addition, if the stay is not granted and the government begins to prepare for trial before the Second Circuit's ruling, it will be a waste of resources. The government will not only prepare its case without knowing the Second Circuit's ruling, but it will also have to litigate the admissibility of the Stolen Privileged Documents on other grounds. Furthermore, it was the government's slow drip of information in this case that dragged this issue out and did not allow the defendants to raise this issue earlier. The government concealed the Stolen Privileged Documents for years; indeed, the government did not disclose that the FBI and EDNY had the Privileged Outline and Privileged Risk Assessment in their possession until September 2024 and October 2024, respectively. And, in fact, the government had the § 3500 material in its possession for years that demonstrated

Honorable Diane Gujarati
March 3, 2025
Page 6

that the Stolen Privileged Documents were used as a guide to investigate and build the prosecution. That material was not disclosed until November 2024.

Accordingly, the government cannot now argue that a stay of the proceedings will prejudice it, when its delay in disclosing this issue has irreparably harmed the defendants. The defendants' constitutional rights must outweigh the public right to a speedy trial, and there is no indication that the government will be prejudiced by a stay for this issue to be resolved.

V.  It is in the Public's Interest to Avoid Allowing Access to Privileged Materials

*Fourth*, it is in the public's interest to resolve the important question of whether the government can use stolen, privileged company documents to prosecute a company's executives, as opposed to the company itself, over the company's and executives' objections and refusal to waive. The Second Circuit has emphasized the importance of the attorney-client privilege, noting that it "provides essential support for the constitutional right to the assistance of counsel" and that "[w]ithout the attorney-client privilege, that right and many other rights belonging to those accused of crime would in large part be rendered meaningless." *Schwimmer*, 892 F.2d at 243.

If the government is permitted to access, disseminate and use a company's stolen privileged material to develop its prosecution against a company's executives without notifying the company and/or over the company's objections, it will have a far reaching chilling effect on corporate employees and counsel. If employees recognize that whatever privileged communications they have with company attorneys may be stolen and readily used to prosecute them, they will be disinclined to seek advice from the company's attorneys and participate in privileged legal discussions for the company's benefit. Further, company counsel will be disinclined to provide written legal advice. As the Second Circuit has stated, "[a] client cannot fully and candidly discuss its situation with counsel if the client must worry that such confidences could be used to implicate him in the very crimes for which he hired that attorney to defend him, significantly undermining the lawyer-client relationship." *Prevezon Holdings Ltd.*, 839 F.3d at 238; *see also In re City of New York*, 607 F.3d at 942 ("[W]e have recognized that, for a privilege to serve its intended function, potential litigants must be able to predict which of their materials will be protected by the privilege…. Otherwise, potential litigants may become overly cautious in creating materials so as to not risk disclosing sensitive information in future litigation."). Therefore, it is in the public's interest that this issue be resolved to prevent uncertainty in the protections afforded to privileged communications in the corporate context.

Corporate theft is ever-present, so the Court's ruling in this case stands to have broad implications for the attorney-client privilege in the corporate context. Corporate data breaches

Honorable Diane Gujarati
March 3, 2025
Page 7

continue to rise.[3]  Targeted corporate espionage for anti-competitive purposes—like the theft that occurred in this case—also remains a constant threat to companies.[4]  And, recent DOJ policy has encouraged corporate whistleblowers to come forward and has prioritized the prosecution of executives over companies.[5]  Corporate executives, therefore, are keenly aware of the possibility that their companies' most sensitive data, including privileged material, may end up in the hands of hackers, thieves, and claimed whistleblowers, who may publicly disclose it or directly turn it over to authorities.  If courts permit the DOJ, absent waiver, to use stolen privileged information to prosecute corporate executives, few executives will take the risk of gathering and memorializing sensitive communications and information that is necessary for company counsel to render legal advice.

---

[3] Stuart Madnick, *What's Behind the Increase in Data Breaches?*, Wall St. J. (March 15, 2024), https://www.wsj.com/tech/cybersecurity/why-are-cybersecurity-data-breaches-still-rising-2f08866c.

[4] *Combating Economic Espionage and Trade Secret Theft: Hearing Before the Subcomm. on Crime & Terrorism, S. Judiciary Comm.*, 113th Cong. (2014) (statement of Randall C. Coleman, Assistant Director, Counterintelligence Division, Federal Bureau of Investigation), available at https://www.fbi.gov/news/testimony/combating-economic-espionage-and-trade-secret-theft.

[5] *See, e.g.*, Memorandum from U.S. Dep't of Just., Department of Justice Corporate Whistleblower Awards Pilot Program (Aug. 1, 2024); Lisa Monaco, Deputy Att'y Gen., Keynote Remarks at the ABA's 39th National Institute on White Collar Crime (Mar. 7, 2024).

Honorable Diane Gujarati
March 3, 2025
Page 8

VI. <u>Conclusion</u>

    For the reasons set forth above, the defendants respectfully request that this Court issue its decision granting or denying a stay as expeditiously as possible. If the stay is denied, the defendants intend to request the Second Circuit to order a stay pending its decision on the defendants' petition for a writ of mandamus.

    Respectfully submitted,

    */s/ Celia Cohen*

    Celia Cohen

    */s/ Michael P. Robotti*

    Michael P. Robotti