

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DCP:EMR:GK/KCB/NCG/SMF

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 12, 2025

TO BE FILED UNDER SEAL

By ECF

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Cherwitz, et al.
     Criminal Docket No. 23-146 (DG)

Dear Judge Gujarati:

  The government respectfully submits this letter in response to the Court's order at the February 26, 2025 status conference requiring the government to (1) lay out in more factual detail the government's position with respect to the authenticity of certain handwritten journals authored by Ayries Blanck ("Blanck"); and (2) provide the government's position as to the government's obligations should a government witness lie while testifying at trial. See Feb. 26, 2025 Tr. at 63-64. As detailed below, in light of information obtained since the status conference, the government no longer maintains that the disputed portions of Blanck's handwritten journals are authentic; this letter therefore affirmatively corrects any statements to the contrary previously made to the Court and defense. Furthermore, should the government call any witness at the forthcoming trial to testify, and knows that witness has provided false testimony, the government will comply with its duty to correct any such false testimony.

I. Background

    A. Statements by Ayries Blanck between 2018 and 2024

        1. Initial Statements Regarding Journals

Agents with the Federal Bureau of Investigation ("FBI") first interviewed Blanck on July 25, 2018. See 3500-AYB-1.[1] In that interview, Blanck detailed significant abuse she suffered from the defendants in connection with her participation in OneTaste, and labor that she performed on behalf of the organization.[2] Id. During the July 25, 2018 interview, Blanck did not volunteer to provide copies of any journals or mention journals she maintained while at OneTaste or at any other period. Id. On May 13, 2022, Blanck was interviewed again, both by the FBI and this Office, and again did not volunteer to provide copies of any journals or mention their existence. See 3500-AYB-2. On June 1, 2022, for the first time, Blanck indicated ███████████████████████████████████████████████████████████████████████████████████████████ 3500-AYB-4. However, Blanck did not share any journals with the FBI or the Office at that time. On October 3, 2022, Blanck was again interviewed by the FBI, and again, though she detailed abuse she suffered while involved in OneTaste, she did not mention any journals. See 3500-AYB-7. On November 8, 2022, shortly after a Netflix documentary about OneTaste was released, Blanck informed the FBI that ███████████████████████████████████████████████████████████████. 3500-AYB-8. Blanck was interviewed by the FBI on November 30, 2022, and by the FBI and this Office on January 18, 2023, and did not mention her journals during those interviews. See 3500-AYB-10, 3500-AYB-11.

        2. Blanck's Provision of Typewritten and Handwritten Journals

On March 9, 2023, Blanck first provided the FBI with copies of typewritten journals pertaining to her time at OneTaste (the "Typewritten Journals"). See 3500-AYB-13-A through 3500-AYB-13-D. On April 3, 2023, a grand jury sitting in this District returned an

---

[1] The 18 U.S.C. § 3500 material referenced herein has been previously provided to the defendants and designated as Sensitive Material pursuant to the governing protective order in this case, with the exception of the materials that the government obtained since the February 26, 2025 status conference, which were produced to the defendants on March 12, 2025, and which have also been designated as Sensitive Material pursuant to the protective order.

[2] Blanck's statements regarding the abuse she suffered at OneTaste have been corroborated by, among other things, statements of other witnesses and contemporaneous email and text messages. For example, on November 15, 2015, following OneTaste's receipt of a demand letter sent by Blanck, OneTaste's then-president, while "sitting with nic," i.e., Daedone, detailed Blanck's claims, including that "we forced her to have sex with wealthy clients," and "forced her to have sex for the job," to which another OneTaste leader responded, "I'm sure there are places she felt coerced in some way." See Ex. E to Gov't Mots. In Limine, ECF No. 169.

indictment against Nicole Daedone and Rachel Cherwitz, charging them with forced labor conspiracy in or about and between 2006 and May 2018. ECF No. 1.[3] On September 18, 2023, the Typewritten Journals were produced to the defendants in discovery. See ONETASTE00165920-ONETASTE00165950.

On April 15, 2024, the FBI received a package from Blanck's sister, Autymn Blanck ("Autymn"), containing three journals (the "Handwritten Journals") and a hard drive belonging to Ayries Blanck. 3500-AYB-17. On June 5, 2024, Blanck reported to the FBI that ▮▮▮▮▮▮ 3500-AYB-19. On July 31, 2024, the government produced the Handwritten Journals to the defendants in discovery. See ONETASTE00256871-ONETASTE00257087.

3. Blanck's Statements in Fall 2024

On October 1 and 2, 2024, Blanck was deposed in connection with a civil suit brought by OneTaste against Blanck (the "Civil Case"). See 3500-AYB-30, 3500-AYB-31.



On October 15, 2024, following claims by the defendants as to the inauthenticity of the journals, Blanck was interviewed by the FBI and this Office, and stated that, ▮▮▮▮▮▮ 3500-AYB-20.

---

[3] Contrary to allegations by the defense, the government did not rely on the Typewritten Journals in drafting the Indictment in this case.

3

Among other things, in that interview, the government asked Blanck to explain different styles of handwriting in the Handwritten Journals, and specifically asked Blanck regarding entries in her journal that appeared to be written after she had left OneTaste. Id. Blanck maintained

On November 26, 2024, Blanck was interviewed by the FBI and this Office, and asked about the Typewritten Journals. This time, Blanck stated that

On December 3, 2024, after requesting a call with the FBI, Blanck was interviewed by the FBI and this Office, and was again pressed on the authenticity of the journals. Blanck indicated that

However, in the December 3 interview, Blanck indicated, for the first time, that

On December 12, 2024, Blanck was interviewed by the FBI and this Office, and was again asked about the journals. 3500-AYB-75. Blanck stated that

4

B.  Statements by Autymn Blanck in 2023 and 2024

On January 4, 2023, in an interview with the FBI and this Office, Autymn stated that ███████████████████████████████████████████████ 3500-ABL-1.

In August 2024, Autymn was deposed in connection with the Civil Case.[4]

████████████████████████████████████████████████████████████████████

C.  Materials from the Defense

On December 30, 2024, counsel for the defendants for the first time attached to a Court filing a PDF of copies of certain versions downloaded from Google Docs by an expert retained by OneTaste in connection with the Civil Case pertaining to the Typewritten Journals. ECF Dkt. No. 243-11. On February 26, 2025, counsel for the defendants shared Word documents of the same.

D.  March 2025 Interview with Ayries Blanck

On March 7, 2025, the FBI and this Office interviewed Blanck with respect to the Typewritten and Handwritten Journals. The report of that interview is attached as Exhibit A. As detailed in Exhibit A, Blanck informed the government that ████████████████████████

████████████████████████████████████████████████████████████████████

---

[4]     Attorneys for Blanck produced Autymn's deposition transcript, portions of which are subject to a protective order in the Civil Case, to the government with the understanding that the transcript would remain subject to the protective order in this case.

5

E.    March 2025 Interview with Autymn Blanck

On March 10, 2025, the FBI and this Office interviewed Autymn Blanck. Autymn stated in sum and substance that ████████████████████████████████

████████████████████████████████████████████████████████████████

On March 11, 2025, Autymn requested an interview with the government and the FBI and stated, in sum and substance and in part, that ████████████████████████

II.    The Government's Position Regarding the Handwritten Journals

At the February 26, 2025 status conference, the Court ordered the government to submit a filing with "the facts laid out in a much more clear way than they have been so that the real issues in dispute between the parties are teed up, because I'm hearing the defense say that it is just so obvious that these original journals are not authentic in terms of [being] contemporaneous, and I'm hearing the Government say they are." Feb. 26, 2025 Tr., at 63. Based on the foregoing, and, in particular, information obtained since the last status conference,

6

the government no longer believes that the disputed portions of the Handwritten Journals are authentic "in terms of [being] contemporaneous[ly] [written.]"  Id.

As the government has outlined herein, prior to March 2025, Blanck repeatedly maintained to the government that she wrote the Handwritten Journals in and around the time she left OneTaste, and the Typewritten Journals were based on the Handwritten Journals—even when pressed by the government on multiple occasions.  Her account was corroborated by her sister.  However, upon continuing to be pressed by the government regarding the journals, Blanck has since acknowledged that she physically copied the relevant portion of the Handwritten Journals after typing the Typewritten Journals.  Blanck maintains that she wrote the Typewritten Journals based at least in part on contemporaneously-written journal entries, which she has stated were both in electronic and hard copy format, and which she stated she has maintained with her (and, thus, they were not part of, and never were part of, the Handwritten Journals).  The government is in the process of obtaining these electronic and hard copy records and will produce them to the defendants upon receipt.  The government does not intend to and will not seek to admit any of Blanck's journals at trial.

III.     The Government's Duty to Correct

Also at the February 26, 2025 status conference, the Court asked the government to provide its position on "what happens if you have a witness and she lies on the stand in a way that you were not expecting . . . .  I'm not suggesting any witness will or will not lie.  I don't know who you're actually going to call and we haven't had a trial yet."  Feb. 26, 2025 Tr., at 63.

"In Napue v. Illinois, [the Supreme] Court held that a conviction knowingly 'obtained through use of false evidence' violates the Fourteenth Amendment's Due Process Clause."  Glossip v. Oklahoma, 604 U.S. ----, 2025 WL 594736, at *11 (Feb. 25, 2025) (quoting Napue v. Illinois, 360 U.S. 264, 269 (1959)).  A Napue violation occurs where "the prosecution knowingly solicited false testimony or knowingly allowed it to go uncorrected when it appear[ed]."  Id. (internal quotation marks omitted); see also United States v. Full Play Group, S.A., No. 15-CR-252 (PKC), 2023 WL 1994196, at *12 (E.D.N.Y, Feb. 13, 2023) (explaining the Napue standard in the Second Circuit, and explaining the distinction between perjured/false testimony and simple inaccuracies or inconsistencies); Gomez v. Commissioner of Correction, 336 Conn. 168, 183-88 (2020) (discussing applications of Napue, including in the Second Circuit).

The government does not intend to call Blanck as a witness at the forthcoming trial.  Nor does the government intend to call any witness at trial who the government believes would provide false testimony.  However, should any witness testify falsely, and the government is aware of such false testimony, the government would seek to have the witness correct such false testimony by either "recalling the . . . witness and asking leading questions to draw out the true nature" of any falsity, or asking the Court to "take any necessary remedial measures, such as requiring the parties to clarify the nature" of any false testimony by stipulation or otherwise, "on the record and instructing the jury accordingly."  Gomez, 336 Conn. at 188-89.

IV.     Sealing

As the Court is aware, the potential witnesses discussed herein have been the subject of harassment for speaking with law enforcement. Further, this letter discusses material produced to the government under a protective order in related and pending civil litigation and produced to the defendants as sensitive material under the governing protective order in this case. Accordingly, the government respectfully requests that this filing be maintained under seal as the sensitive information outlined herein outweighs the public's right to disclosure at this stage. See United States v. Amodeo, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (privacy interests of third parties may be compelling reason to justify sealing).

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:   /s/
Gillian Kassner
Kayla Bensing
Nina Gupta
Sean Fern
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of Court (DG) (via ECF and Email)
       Counsel for Cherwitz and Daedone (via ECF and Email)