

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DCP/EMR:KTF/KCB/NCG/SMF
F. #2018R01401

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 8, 2025

**FILED UNDER SEAL**

By ECF

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    United States v. Cherwitz, et al.
       Criminal Docket No. 23-146 (DG)

Dear Judge Gujarati:

The government respectfully submits this letter to inform the Court of additional conduct by the defendants in the above-referenced case that the government submits constitute violations of the protective orders entered on June 26, 2023 and November 15, 2024 (collectively, the "Protective Orders") (ECF Dkt. Nos. 26 & 207; Nov. 15, 2024 Minute Entry) and Eastern District of New York Local Criminal Rule 23.1. In particular, the defendants have engaged in efforts to intimidate witnesses and slander the government. Notably, these violations occurred after the defense team was on notice of, and engaged with the Court regarding, prior violations of the Protective Orders. See ECF No. 119, ECF No. 207 & Nov. 15, 2024 Minute Entry (modifying Protective Orders following a hearing on prior violations). The defendants have also failed to comply with Rule 26.2 despite contrary representations to the Court and a clear record that purported OneTaste materials are in at least one defendant's possession, custody, or control.

As a result of these violations, the government therefore requests (1) a prompt hearing regarding the defense team's violations of the Protective Orders[1]; (2) reconsideration of

---

[1]    Once the facts of the violations are established at the requested hearing, potential appropriate remedies could include: (*i*) claw back of all materials produced in the above-captioned case to counsel for OneTaste, Inc.; (*ii*) further modification of the existing Protective Orders prohibiting disclosure to any attorneys representing OneTaste, Inc. or OneTaste, Inc. personnel; (*iii*) criminal contempt proceedings pursuant to Federal Rule of Criminal Procedure

the Court's January 7, 2025 ruling requiring witnesses ████████████████████████████ to testify using their full names at the forthcoming trial; (3) issuance of an order to defense counsel to refrain from making any additional public comments that presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice; and (4) an order requiring the defendants to produce reciprocal discovery under Rule 16 and Rule 26.2 of the Federal Rules of Criminal Procedure.

As detailed below, such relief is warranted by efforts by the defense and individuals associated with OneTaste, Inc. ("OneTaste") on the eve of trial to intimidate the government and its witnesses, improperly influence the jury pool, and a failure to comply with discovery obligations.

I.    Protective Order Violations

A.    The June 2023 and November 2024 Protective Orders

On June 21, 2023, the parties jointly moved the Court to enter a protective order, which the Court ordered on June 26, 2023.  See ECF Nos. 21, 26 (the "June 2023 Protective Order").  Among other things, the June 2023 Protective Order provided that "[a]ll material and information disclosed or produced" to the defendants and defense counsel of record by the government in the above-captioned matter "shall be governed by this protective order" and "may be used only for purposes of defending against the charges in the above-captioned case."  June 2023 Protective Order ¶ 1 (emphasis added).  The June 2023 Protective Order further provided that, with certain limited exceptions, "the defendants and defense counsel may not disclose or disseminate Discovery Materials[2] to anyone who has not signed this Stipulation and Order, other than to counsels' legal staff, counsel working on the related/overlapping federal and state enforcement and administrative actions, any potential experts . . . , vendors, and/or investigators who are first advised of and agree to be bound by the terms of this Stipulation and Order (collectively, 'defense staff')."  Id. ¶ 2.  The June 2023 Protective Order specified that any further disclosure or dissemination of the Discovery Materials must be preceded by either notice to the government and the Court or an ex parte authorization from the Court.  Id. ¶ 3.  The June 2023 Protective Order also required the parties to notify the Court and opposing counsel if the June 2023 Protective Order was violated.  See id. ¶ 9.  The government produced thousands of documents, videos and photographs, many of which contain identifying, financial and other private material for victims and witnesses pursuant to the June 2023 Protective Order.  Counsel for defendant Nicole Daedone, Jennifer Bonjean, represented to the government that OneTaste attorneys Kevin Williams and Rachel Caine, whom Ms. Bonjean identified as members of the defense team, and Joanna van Vleck, OneTaste's current President, ████████████████

_____

42; and (iv) admission at trial of obstructive efforts as direct evidence of the defendants' consciousness of guilt, or pursuant to Federal Rule of Evidence 404(b).

2    Capitalized terms not otherwise defined herein are defined in reference to the Protective Orders.

█████████████████████████████████ all signed the June 2023 Protective Order prior to Bonjean's appearance in this case.  See Ex. A (Aug. 2, 2024 Email).

On August 15, 2024, the government informed the Court of violations of the June 2023 Protective Order.  See ECF No. 119.  Those violations included instances in which counsel or other executives for OneTaste directly or indirectly misused information obtained in the government's discovery productions in outreach to potential witnesses, including using material produced pursuant to the June 2023 Protective Order to threaten lawsuits against three potential witnesses and retaliate against another potential witness, as detailed at length in the government's prior filing on those violations.  Id. at 4-6.  They did so in violation of the June 2023 Protective Order's requirement that such individuals use discovery only for purposes of defending against the above-captioned criminal charges.  See id. at 4-6; see also June 2023 Protective Order ¶ 1.  OneTaste's counsel did so without seeking leave from the Court, which, as the June 2023 Protective Order required, they should have done had they believed they were appropriately contacting those witnesses.  See June 2023 Protective Order ¶ 3.

Following a hearing on November 15, 2024, Magistrate Judge Robert M. Levy so-ordered a revised protective order (the "November 2024 Protective Order"), which governed subsequent productions of Rule 16 discovery, trial exhibits and material pursuant to 18 U.S.C. § 3500.  See ECF No. 207 & Nov. 15, 2024 Minute Entry.  At that hearing, Ms. Bonjean and then-counsel for defendant Rachel Cherwitz repeatedly indicated that the criminal defendants were working hand-in-hand with OneTaste and thus required that two attorneys for OneTaste, Ms. Caine and Mr. Williams, be included on the November 2024 Protective Order.  See Nov. 15, 2024 Tr. at 6 ("It would be impossible for us to do our jobs without being able to consult freely with counsel for OneTaste."), 35 ("I cannot try this case without Kevin Williams.  Or Rachel Caine.").  In light of those protestations, Judge Levy ordered that Mr. Williams and Ms. Caine, but no other OneTaste attorney, be defined as individuals permitted to use materials produced pursuant to the November 2024 Protective Order, so long as they signed and agreed to be bound by the terms of that order, which prohibit, among other things, "disclos[ing], disseminat[ing] or discuss[ing] . . . to, or with, any individuals organizations or other entities" materials disclosed pursuant to the order.  Nov. 2024 Protective Order ¶ 3.

B.    The Continued Misuse of Protective Order Materials

Approximately one month before the scheduled trial in this case, on April 2, 2025, Ezra Landes, an attorney for OneTaste who is not authorized under the terms of the November 2024 Protective Order to receive or use protected materials, emailed a letter to the government. See Ex. B ("OneTaste Letter").  The OneTaste Letter extensively quotes reports and other materials produced to defense counsel in this case which were designated as Sensitive Material pursuant to the November 2024 Protective Order, which Mr. Landes appears to have received or reviewed in violation of that order.  Today, counsel of record in the criminal case informed the government that they are unaware how Mr. Landes received or reviewed 18 U.S.C. § 3500 material.

The OneTaste Letter identifies Mr. Landes as an attorney of record for OneTaste in OneTaste Inc. v. Netflix, Inc., et al, Los Angeles Superior Court Case No. 23SCTV27119; California Court of Appeals Case Nos. B339113 and B342250 (collectively, the "Netflix Cases").  OneTaste Letter at 1.  The OneTaste Letter consists of nothing more than baseless

3

accusations of criminal misconduct and ethical violations against the government, coupled with thinly veiled attempts to threaten or intimidate the government and individual prosecutors.  See generally id.

But the most disturbing part of the OneTaste Letter is that the attempts to threaten or intimidate the government were based on materials that were clearly obtained in violation of the November 2024 Protective Order.  For example, the OneTaste Letter repeatedly discusses interview reports of witness interviews in March 2025, including with references to particular pieces of 3500 Material, even including direct quotes and citing page numbers for that material.



The majority of these materials were produced to defense counsel of record in the criminal case on March 12, 2025, subject to the November 2024 Protective Order.  Each of the materials identified above were designated as Sensitive Material under that protective order (with ███████████ even identified in the file title name as "SENSITIVE"), which require, among other provisions of the November 2024 Protective Order, the defendants, defense counsel and defense staff as defined by the order—a definition that does not include Mr. Landes[3]—not to "obtain or create any copies of the Sensitive Material for disclosure or dissemination to any person other than Defense Counsel and Defense Staff."  Nov. 2024 Protective Order, ¶ 6. Notably, when appearing before Judge Levy as to prior violations of the June 2023 Protective Order, Ms. Bonjean requested to add Mr. Landes to the November 2024 Protective Order, which the government objected to, and which the Court declined to order.  See Nov. 15, 2024 Tr. at 8-20, 35-38, 42-43.

II.     Witness Harassment and Intimidation

A.     The Court's Prior Order Regarding Victim-Witness Anonymity

As the Court is aware, in its October 11, 2024 motions in limine, the government requested an in limine ruling requiring the parties to refer to certain witnesses by their first names or pseudonyms only and keeping other personal identifiers confidential at trial.  See Gov't

---

[3]     The attorney for OneTaste with whom the government has been corresponding in the criminal matter, Paul Pelletier, informed the government he was unaware of the OneTaste Letter and that Mr. Landes "does not represent OT in the criminal/Rule 41(g) matter I can assure you."

Mots., ECF No. 169, at 38-48. As the government detailed therein, OneTaste had retained a purported news publication, the Frank Report, to "investigate the prosecution" of the defendants, and that OneTaste lawyers and executives, including Mr. Williams, who is presently identified as part of the defense team on the November 2024 Protective Order, first began speaking with that investigator in or around early April 2024. See Ex. C (email from Frank Parlato to, among others, Kevin Williams). Also beginning in April 2024, the website—which had previously identified OneTaste as a "cult," began publishing a series of articles disparaging potential witnesses in this case. See, e.g., https://frankreport.com/category/investigations/one-taste/.

The government supplemented its motion by letter on December 9, 2024, with

On January 7, 2025, the Court denied the government's motion, determining that the Court was "not convinced on the particular circumstances of this case that [certain factors cited by the government] outweigh the relevant Sixth Amendment considerations here and general considerations of fairness." Jan. 7, 2025 Tr. at 11. However, the Court made clear that "[t]his is the ruling at this stage based on the record before the [C]ourt," and that "[s]omething could come to light before or during trial that changes the analysis or something could happen before or during trial that changes the analysis," including threats or harassment not limited to only "threats or harassment by the defendants here." Id. at 12.

B.      Subsequent Attempts to Harass or Intimidate Witnesses

---

[4]      Defense counsel has been on notice since at least November 18, 2024, that
is represented by counsel.





IV.   Remedial Action is Warranted

The above-referenced facts present a troubling picture of either OneTaste's or the defendants' engaging in a pattern of behavior of violating the Court's protective orders and Eastern District of New York Local Criminal Rule 23.1 in order to intimidate and discredit trial witnesses.  As the government wrote in seeking a modified protective order in November 2024,

"in light of OneTaste's history of harassing conduct against potential government witnesses, and the defendants' sharing of material with OneTaste, there is a specific and significant risk that civilian and victim witnesses who may testify against the defendants may be subject to harassment or worse." See ECF No. 189, at 10.

A.    Protective Order Violations

As to the violations of the Protective Orders—and OneTaste's use of such material to attempt to intimidate witnesses and prosecutors in this Office—the government respectfully requests that the Court hold a hearing to determine how Mr. Landes acquired the 3500 material produced by the government as "Sensitive Material" under the Protective Orders to defense counsel.   A hearing is necessary to develop the facts because (1) since this is the second violation of the Protective Orders, the Court's first remedy was insufficient; and (2) before pursuing additional remedies, it is necessary for the Court to first develop facts surrounding who committed the violation and in what manner.   Once the facts are developed regarding how Mr. Landes came into possession of the protected information discussed in the OneTaste Letter, and whether such materials have been improperly shared with individuals beyond Mr. Landes, appropriate remedies could include (*i*) claw back of all materials produced in the above-captioned case to counsel for OneTaste; (*ii*) further modification of the existing Protective Orders prohibiting disclosure to any attorneys representing OneTaste or OneTaste personnel; (*iii*) criminal contempt proceedings pursuant to Federal Rule of Criminal Procedure 42; and (*iv*) admission at trial of obstruction and intimidation efforts as evidence of the defendants' or a defendant's consciousness of guilt, see United States v. Napout, No. 15-CR-252 (PKC), 2017 WL 4685089, at *6 (E.D.N.Y. Oct. 17, 2017) (admitting at trial evidence of defendant's later-in-time obstruction—both as direct evidence and under Rule 404(b)—to show consciousness of guilt); see also United States v. Elder, No. 18-CR-92 (WFK), 2021 WL 4129153, at *9 (E.D.N.Y. Aug. 25, 2021) ("Furthermore, Courts in this Circuit have held that the government can introduce and use uncharged obstruction of justice acts to 'prove [a defendant's] knowledge and intent with regard to the charged crimes through evidence of his consciousness of guilt.'"), on reconsideration, No. 18-CR-92 (WFK), 2022 WL 16837124 (E.D.N.Y. Nov. 9, 2022) (dismissing unrelated counts post-trial in light of United States v. Taylor, 142 S. Ct. 2015 (2022)).

The Court clearly has authority to hold such a hearing.   The Federal Rules of Criminal Procedure permit district courts broad discretion to "grant other appropriate relief" with respect to discovery protective order violations, Fed. R. Crim. P. 16(d)(1), including "enter[ing] any other order that is just under the circumstances," Fed. R. Crim. P. 16(d)(2)(D).   It is

commonplace and appropriate for district courts to hold evidentiary hearings to ascertain protective order violations and determine whether to impose sanctions.  E.g., United States v. Melvin, No. 23-CR-204 (PGG), 2024 WL 3102177, at \*3 (S.D.N.Y. June 24, 2024) (imposing discovery sanctions against defendant following evidentiary hearing showing that defendant posted online post-arrest interview of codefendant in violation of discovery protective order).

And an evidentiary hearing is necessary given the history of protective order violations in this case.  For months, the government has raised with the Court the defendants' and OneTaste's apparent strategy of attempting to influence, intimidate and harass witnesses on the basis of protected discovery material.  Those concerns are now further compounded by the recent attempt to intimidate prosecutors through the OneTaste Letter, which liberally cites to protected discovery material.  This should not be tolerated.  Such apparent conduct evidences a flagrant disregard for the Court and the principles underlying the Protective Orders, and threatens to undermine not only the instant Protective Order, but the value of protective orders and the ability of the government and courts to protect victim information more broadly.  It is entirely appropriate for the Court to engage in fact-finding surrounding violations of its orders, and to issue remedies as appropriate.

       **B.**      **The Court Should Permit** ██████████████████████ **to Testify Using Pseudonyms**

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

The Court, in its January 7, 2025 ruling, indicated that the "relevant Sixth Amendment considerations here and general considerations of fairness" weighed in favor of having witnesses testify using their full names.  Jan. 7, 2025 Tr. at 11.  Specifically, the Court determined that "[u]nder the particular circumstances of this case, defendants' argument that it is 'far easier to come to court and lie anonymously than it is to stand on testimony with one's true name' has some force."  Id.  The government respectfully requests reconsideration of the Court's balancing analysis in light of the facts set forth in this letter.



### C.   Defense Counsel Must Adhere To Local Rule 23.1

"Local rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."  Contino v. United States, 535 F.3d 124, 126 (2d Cir. 2008).  Rule 23.1(a) of the Local Criminal Rules for the United States District Courts of the Southern and Eastern Districts of New York provides:

> It is the duty of the lawyer. . . not to release or authorize the release of non-public information or opinion which a reasonable person would expect to be disseminated by means of public communication, in with pending or imminent criminal litigation with which they are associated, if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

L. Crim. R. 23.1(a).  Rule 23.1(d) establishes a presumption of impropriety for certain types of statements.  Specifically, statements concerning "the identity, testimony, or credibility of prospective witnesses," and "any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case," "presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."  L. Crim. R. 23.1(d)(4), (7).  Rule 23.1(h) speaks to remedies: the court "may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of the accused to a fair trial by an impartial jury . . . and any other matters which the court may deem appropriate for inclusion in such order."  L. Crim. R. 23.1(h).  Rule 23.1(h) requires district courts to make a finding of necessity before entering such a remedy.



11

D.    Rules 16 and 26.2 Material

Finally, the government respectfully renews its request for Fed. R. Crim. P. 16(b) and 26.2 material.  To date, the government has received no Rule 16 material from the defense, and approximately 25 pieces of Rule 26.2 material.  Though counsel for Daedone represented to the Court at the February 26, 2025 hearing that she would "make additional efforts to obtain and produce the Rule 26.2 materials for her anticipated witnesses," Feb. 26, 2025 Tr. of Proc. at 81-82, neither defendant has produced any additional materials and, despite prior representations to the contrary, counsel for Daedone has indicated that no further materials will be forthcoming. See Jan. 7, 2025 Tr. of Proc. at 32 (Counsel for Daedone: "I did represent and I will continue to represent that we will produce -- I will continue to produce videos [of witnesses being interviewed by OneTaste] as things come into focus and we will do our best with that . . ."); Dec. 10, 2024 Tr. of Proc. at 29 ("We are in the process of getting some of that material [referencing interview videos], and we're not going to withhold it. We are not trying to withhold it.").

First, any claim that defendant Daedone does not have access to the recorded video interviews is not credible given that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  The suggestion in Ms. Bonjean's previous statements to the Court are that Ms. Bonjean does not possess the videos.  But Ms. Daedone cannot evade Rule 26.2 obligations simply because her criminal counsel may not possess the videos; they are in Ms. Daedone's possession, custody, or control if any attorney of hers possesses the materials in connection with their representation of her. See United States v. Javice, No. 23-CR-251 (AKH), 2025 WL 278885, at *1 (S.D.N.Y. Jan. 23, 2025) (observing that the Rule 26.2 contemplates what is in "the defendant's" possession and setting deadline for production of written recordings of a witness's statement and documents shown to the witness, but not "legal memoranda or documents produced by an attorney beyond those interview notes or statements adopted by the witness." (emphasis added)); United States v. Dayan, No. 03-CR-1471 (HB) (S-3), 2004 WL 2937859, at *1 (S.D.N.Y. Dec. 20, 2004) ("Rule 26.2 'is designed to place the disclosure of prior relevant statements of a defense witness in the possession of the defense on the same legal footing as is the disclosure of prior statements of prosecution witnesses in the hands of the government under the Jencks Act, 18 U.S.C. § 3500.'" (citing Advisory Committee Notes 1979 Addition) (emphasis added)); see also Chevron Corp. v. Donziger, 296 F.R.D. 168, 190 (S.D.N.Y. 2013) ("Documents in the possession of a party's attorney may be considered to be within the control of the party." (quoting 7 Moore's Federal Practice § 34.14[2][c], at 34–80)); In re Terrorist Attacks on Sept. 11, 2001, 293 F.R.D. 539, 547 (S.D.N.Y. 2013) (document in an attorney's possession is within a party's possession or control if the attorney "comes into possession of the document as attorney for that party" (cleaned up)).

Second, as the Court is aware, the defendants, who were formerly leaders of OneTaste, have routinely obtained throughout the course of this criminal proceeding material from OneTaste that they have subsequently used in litigation.  Two attorneys who presently or formerly work for OneTaste are named on the November 2024 Protective Order after defense counsel argued they were indispensable to the defendants' defense.  One of those attorneys filed a notice of appearance to represent defendant Daedone in this case, but subsequently withdrew that notice after the government filed a Curcio letter.  As recently as last week, when attempting

to obtain a business records certification for materials that OneTaste produced to the government, counsel for OneTaste informed the government, in sum and substance, that he could not yet provide the certification because he was reviewing the materials to be certified with counsel for the defendants to see which documents he should or should not be certifying as OneTaste business records. In light of this history, the government maintains that materials defense counsel possess—including those they constructively possess via their viewing or access to them from OneTaste counsel who are part of the defense team—should be produced to the government pursuant to Fed. R. Crim. P. 16(b) and 26.2. See Fed. R. Crim. P. 26.2(a) (requiring the defendant and the defendant's attorney to produce "any statement of the witness that is in their possession"); see also Fed. R. Crim. P. 16(b) (requiring defendant to disclose certain materials "within the defendant's possession, custody, or control"); see also Gov't Mots., ECF No. 169, at 122-126 (requesting same).

V.    Sealing

The government respectfully requests permission to file this letter under seal to file only a redacted version publicly. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ United States v. Amodeo, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (privacy interests of third parties may be compelling reason justifying sealing).

VI.    Conclusion

For the foregoing reasons, the government respectfully requests that the Court modify the Protective Order and make remedial orders, as set forth herein.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:    /s/
Kayla Bensing
Kaitlin T. Farrell
Nina C. Gupta
Sean Fern
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of the Court (via ECF)
All Counsel of Record (via ECF)