# Ballard Spahr LLP

1675 Broadway, 19th Floor  
New York, NY 10019-5820  
TEL 212.223.0200  
FAX 212.223.1942  
www.ballardspahr.com

Celia Cohen  
Tel: 646.346.8002  
Fax: 212.223.1942  
cohenc@ballardspahr.com

Michael P. Robotti  
Tel: 646.346.8020  
Fax: 212.223.1942  
robottiM@ballardspahr.com

April 25, 2025

*Via ECF*

Honorable Diane Gujarati  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, NY 11201

Re: <u>United States v. Nicole Daedone and Rachel Cherwitz, 23-CR-146</u>

Dear Judge Gujarati:

  The defendants Rachel Cherwitz and Nicole Daedone respectfully submit this reply in response to the government's opposition to their renewed motion for a *Kastigar* hearing. *See* Dkt. No. 343. In its opposition, the government argues this Court should deny the defendants' motion because they lack standing. The government is wrong, and this Court should grant the defendants' motion for an immediate *Kastigar* hearing.

  As an initial matter, not once during the lengthy proceedings on this issue—before this Court and the Second Circuit—has the government disputed that the defendants have standing to raise their *due process* claim. The defendants have steadfastly maintained that it is a violation of their right to due process for the government to rely on stolen privileged material to build its prosecution, regardless of whether they hold the privilege or not. Judge Levy ruled that the Company has established that the Stolen Privileged Documents are, in fact, privileged and that the Company has not waived the privilege. A *Kastigar* hearing thus is necessary on the due process claim alone, to establish that the government's witnesses and evidence are tainted by its unfettered access to the privileged material. The government long-ago waived any argument that the defendants lack standing to assert their due process claim.

  As to the defendants' standing to assert their right-to-counsel claims, the undisputed evidence before the Court demonstrates that they have standing. The undisputed affidavits the defendants submitted in support of their claims demonstrate the common-interest doctrine applies here. "[T]he common interest doctrine requires a two-part showing: (1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought must have been designed to further that interest." *HSH Nordbank AG N.Y. Branch*, 259 F.R.D. at 71; *see Schwimmer I*,

892 F.2d at 243–45.[1] The information in the Stolen Privileged Documents was gathered and provided to OneTaste's outside counsel, "[a]s a result of increased negative (and false) commentary about OneTaste and the senior executives of OneTaste, *including Ms. Daedone and Ms. Cherwitz*," so that outside counsel could "provide legal advice for addressing the negative and false commentary and in anticipation of possible litigation by those critical of OneTaste." Van Vleck Dec. ¶10 (emphasis added). Defendants had a common legal interest with the Company in addressing these false allegations and potential litigation, and the Stolen Privileged Documents were created to further that legal interest. "When viewed in conjunction with the fact that the relevant communications involve development of the appropriate legal strategy…, and that the parties privy to the communication understood the communication to be confidential on account of attorney-client privilege, these facts bring the communications at issue squarely within the common interest doctrine." *HSH Nordbank AG N.Y. Branch*, 259 F.R.D. at 72.

Defendants shared (and share to this day) a common-interest privilege with the Company, and the Stolen Privileged Documents fall directly under that privilege's protection. *See id.*; *Delgado*, 2024 U.S. Dist. LEXIS 113160, at *13–15 (concluding individual and organization had common-interest in prosecuting and defending against claims "all brought or threatened to be brought in the same action"); *Milhorat*, 2011 U.S. Dist. LEXIS 173925, at *10–11 (stating common-interest doctrine applies to communications between "party's attorney and a third party with a common interest" and to discussion of privileged information outside presence of counsel).

Because the defendants share a common-interest privilege with the Company, they have standing to assert it here. *See Delgado*, 2024 U.S. Dist. LEXIS 113160, at *13–15; *Breuder*, 2021 U.S. Dist. LEXIS 46773, at *12 (concluding individual had standing to assert work-product doctrine due to common-interest privilege); *Dominion Res. Servs*, 2017 U.S. Dist. LEXIS 132212, at *10 (stating party had standing to challenge non-party subpoena under common-interest privilege); *Holmes*, 2018 U.S. Dist. LEXIS 176120, at *7–8 (concluding defendants had standing to challenge production of documents "covered by the joint defense and/or common interest privilege").

As for the defendants' standing to assert the privilege because they are DGG's co-clients, the government has relied almost entirely on *Teamsters* in arguing the defendants lack standing, without addressing the critical distinction between *Teamsters* and this case. *Teamsters* is limited to circumstances where a company has waived privilege, and an employee is attempting to block disclosure of privileged information over the company's waiver. *See Int'l Bhd. of Teamsters*, 119 F.3d at 215. *Teamsters* itself acknowledged that limitation, indicating it was addressing a case in which there were "competing claims to

---

[1] Cases previously cited in the defendants' filings on this issue are short-cited herein. Defined terms have the same meaning as in previous filings.

privilege." *Id.* at 216. And, it distinguished *Dennis* on the grounds that, like here, in that case, there were no "competing claims of privilege between corporations and their employees." *Id.* at 216 n.3. Thus, *Dennis*'s test should apply here to determine whether an employee may assert privilege, when the employee's interests are aligned with the company's in preventing disclosure. *See Dennis*, 843 F.2d at 657 ("The key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential."). Indeed, *Youngblood*—a case the government has not even bothered to address—recently dealt with just this question. It concluded the *Teamsters* test is not appropriate where the issue is "joint representation" and the employees' claims of privilege are "not competing with an assertion or waiver of privilege from" the company. 2024 U.S. Dist. LEXIS 148033, at *13–16. Because OneTaste is also invoking the privilege, *Teamsters* is inapposite, and defendants have standing.

Moreover, the government does not dispute *Simmons* applicability here; specifically, that under *Simmons*, the defendants cannot be forced to choose between asserting the attorney-client privilege and waiving their Fifth Amendment rights against self-incrimination. To the extent this Court believes the record is insufficient to establish defendants' standing to assert privilege (which it is not), in light of Judge Levy's order, the defendants renew their request to submit *ex parte* affidavits under the protections of *Simmons*.

The prompt resolution of these issues is critical to this case. As Judge Levy noted in his order, he issued his decision after lengthy oral argument and a careful review of the parties' submissions. His ruling is correct under the law and based on the undisputed record before him, which consists of the exact same undisputed affidavits that are before the Court in this case. His ruling cannot be considered "contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). This Court should promptly affirm the ruling, reject the government's request for a stay, and address the significant ramifications of Judge Levy's ruling in this case. As noted in the defendants' motion, even if the Court does not dismiss the indictment, the Court should suppress the government's tainted evidence, and it should disqualify tainted members of the prosecution team. Accordingly, the *Kastigar* hearing will have a significant impact on the trial in this matter.

Finally, the defendants request that the Court direct the government's taint team to represent the government at the *Kastigar* hearing and that the prosecution team be excluded from portions of the hearing at which they are not witnesses. The defense anticipates that it will need to examine FBI Special Agent McGinnis related to specific investigative steps that he took based on the content of the Stolen Privileged Documents. That examination necessarily would reveal the privileged content of those documents to the prosecution team. Moreover, the defense expects to call several members of the prosecution team as witnesses at the hearing to determine whether they have been tainted by access to the Stolen Privileged Documents or evidence derived therefrom.

      For the foregoing reasons, and for the reasons set forth in the defendants' motion, the Court should order an immediate *Kastigar* hearing.

                                        Respectfully submitted,

                                        /s/Celia Cohen
                                        /s/Michael Robotti
                                        *Counsel for Rachel Cherwitz*
                                        Ballard Spahr LLP

                                        /s/Jennifer Bonjean
                                        *Counsel for Nicole Daedone*
                                        Bonjean Law Group, PLLC