

767 S. Alameda Street
Suite 270
Los Angeles, CA 90021

p (213) 394-7979
f (213) 529-1027
umklaw.com

May 1, 2025

**VIA ECF**

Judge Diana Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *United States v. Cherwitz, et al.,* Criminal Docket No. 23-cr-00146-DG-RML

Dear Judge Gujarati:

I write to update the Court on the concerns I raised in Court on Tuesday, April 29, 2025, about my client Ezra Landes and the government's request for his testimony concerning the protective order in this matter.

As the Court knows, I was retained on Friday, April 25, 2025, and have endeavored to collect facts, conduct research, and analyze the issues presented by the government's request for testimony. That process is ongoing, and more time is necessary to fully consider the legal and ethical issues here. That said, I appreciate the additional time the Court has afforded me, and I understand that trial begins imminently. I write to provide my current assessment of the issues in anticipation of the hearing scheduled for Friday, May 2, 2025.

I should also note that on Wednesday, April 30, 2025, I reached out to the government to attempt to address their concerns consistent with the legal and ethical constraints in play. That morning, I had a lengthy and productive conversation with Assistant United States Attorney Kaitlyn Farrell. I'm hopeful that my ongoing conversations with the government will obviate the need for Mr. Landes to appear on May 2, 2025. We will inform the Court of any proposed resolution, should one arise, but in the absence of any further developments, Mr. Landes and I will appear at the hearing as ordered.

Should the hearing proceed, I offer the following facts and argument concerning the government's intention to call Mr. Landes as a witness.

1. **Mr. Landes Represents OneTaste, and His Communications with OneTaste Are Privileged**

Attached to this letter are redacted retainer agreements confirming that Mr. Landes represents OneTaste for the specific purpose of providing advice related to this criminal matter. *See* Exhibits A & B. These retainer agreements confirm that Mr. Landes has an attorney-client relationship with OneTaste that relates to this case. In re Colton, 201 F. Supp. 13, 16 (S.D.N.Y. 1961), aff'd sub nom. Colton v. United States, 306 F.2d 633 (2d Cir. 1962) (a retainer agreement

is "evidence of the retention" and "enable[s] the court to determine that the relation of attorney and client exists"). Accordingly, the attorney-client privilege protects confidential communications between Mr. Landes and the OneTaste organization, including its employees, to give and receive legal advice on the matter for which Mr. Landes was retained. Jeanty v. Bagley, No. 6:22-CV-00319, 2025 WL 892691, at *3 (N.D.N.Y. Mar. 24, 2025) (citation omitted) ("The relationship of attorney and client, a communication by the client relating to the subject matter upon which professional advice is sought, and the confidentiality of the expression for which protection is claimed, all must be established in order for the privilege to attach.").

OneTaste has not waived its privilege over its communications with Mr. Landes. United States v. Ghavami, 882 F. Supp. 2d 532, 538 (S.D.N.Y. 2012) ("Where a corporate entity seeks legal advice, the attorney-client privilege belongs to the corporation alone. It follows that the privilege may be waived only by corporate officers or directors with the authority to do so.")

The privilege also protects communications between lawyers for OneTaste and lawyers for the individual defendants in this case that fall within the confines of the common interest doctrine. United States v. Schwimmer, 892 F.2d 237, 243–44 (2d Cir. 1989) (citation omitted) (the common interest doctrine "protect[s] the free flow of information from client to attorney ... whenever multiple clients share a common interest about a legal matter" and "protect[s] the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel"). Neither OneTaste nor the individual defendants have waived their privilege over common interest communications involving Mr. Landes.

Beyond privilege, Mr. Landes is constrained by ethical duties, including the duty of confidentiality and the duty of loyalty. "The ethical duty to keep client confidences 'is broader than the attorney-client privilege, and exists "without regard to the nature or source of information or the fact that others share the knowledge."'" Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, No. 14-CV-6867, 2016 WL 1071107, at *10 (S.D.N.Y. Mar. 18, 2016), aff'd, 814 F.3d 132 (2d Cir. 2016) (citations omitted); see also Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562, 571 (2d Cir. 1973) (duty of confidentiality must be applied as a "strict prophylactic rule to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage").

2. **Mr. Landes Cannot Answer the Government's Questions Without Violating the Attorney-Client Privilege and His Ethical Obligations**

During the hearing on April 29, 2025, the government indicated that the core question it wants to ask Mr. Landes is who sent him the Jencks/3500 material referenced in his letter dated April 2, 2025.

Based on (i) the research I have conducted since being retained on April 25, 2025, (ii) my consultation with an ethics expert who is a former federal prosecutor and law professor, and (iii) my 25 years of experience as an attorney, including as a federal prosecutor, **I do not believe Mr. Landes can answer that question, or any other questions on that subject, without violating**

May 1, 2025
Page 3 of 3

**the attorney-client privilege or his ethical duties, including his duty of confidentiality and duty of loyalty.**

If Mr. Landes were required to appear and testify, I would object to the questions on the basis of privilege and his ethical obligations, and I would instruct him not to answer. I believe he would comply with my instructions. If he were compelled to answer, I would seek to appeal such a determination and stay any proceedings until the issue could be resolved at the appellate level. I regret the inconvenience this would cause the Court and the parties, but I believe that any other course of action would be inconsistent with my client's obligation to his client.

Under analogous circumstances, courts have suggested that attorneys have an obligation not to answer questions, even when the information called for is not technically privileged. In United States v. Mitchell, 372 F. Supp. 1239 (S.D.N.Y. 1973), the court suppressed an attorney's grand jury testimony and certain documents prepared for an attorney by his client. The court noted, "The fact that they are not within the technical scope of the attorney-client privilege does not render them amenable to examination and use by the prosecutor." The Mitchell court cited In re Terkeltoub, where the prosecution sought to compel a lawyer's testimony, and the Court concluded that "the ultimate interest to be protected is the privacy and confidentiality of the lawyer's work in preparing the case" and held, "It is clear that an attorney is 'not only entitled, but probably required, to withhold' such testimony." Mitchell, 372 F. Supp. at 1246 (quoting In re Terkeltoub, 256 F. Supp. 683, 684 (S.D.N.Y. 1966)). While the facts of these cases differ from this one, the principle set forth applies here: an attorney may and must refuse to answer questions from a prosecutor that intrude on the attorney-client relationship.

I am prepared to proffer additional information *in camera* and *ex parte* should the Court require this of me.

Respectfully submitted,

/s Matthew Donald Umhofer
Matthew Donald Umhofer
Umhofer, Mitchell & King LLP
767 S. Alameda St., Suite 270
Los Angeles, CA 90021
Telephone: 213-394-7979
matthew@umklaw.com