# Ballard Spahr LLP

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

May 11, 2025

*Via ECF*

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>United States v. Nicole Daedone and Rachel Cherwitz, 23-CR-146</u>

Dear Judge Gujarati:

The parties submit this joint letter to address the defendants' motion for a mistrial.

**<u>Defense Motion</u>**

The defendants Rachel Cherwitz and Nicole Daedone respectfully move for a mistrial, due to the Court's systematic exclusion at trial of evidence that goes to the heart of the defense and highly prejudicial conduct by the Court and the government in front of the jury. The conduct of the trial to date has violated the defendants' constitutional rights to due process, to a fair trial and to present a defense, and it cannot be remedied through any corrective action. The defendants therefore seek a mistrial.[1]

The defense seeks a mistrial for four reasons, all of which have rendered this trial patently unfair. *See United States v. Klein*, 582 F.2d 186, 190 (2d Cir. 1978) (mistrial standard).[2]

---

[1] These grounds are separate and apart from the defendants' motion for a mistrial based on the misconduct of Juror No. 41, who concealed information from the parties about the fact that his wife had been a victim of sexual abuse and that he could not be fair in a trial involving such issues.

[2] The issues raised by the defendants in the separate joint letter concerning the government's motion to limit cross-examination provide further support for this motion. *See* Dkt. No. 370.

Honorable Diane Gujarati
May 11, 2025
Page 2

*First*, the Court has systematically excluded evidence that goes to the heart of the defense. The government's theory of the case is that its witnesses were psychologically manipulated into working for OneTaste against their will. *See, e.g.*, Joint Proposed Jury Instr., Dkt. No. 326 at 12; Second Mot. *in Limine*, Dkt. No. 364 at 2; Tr. at 32-33; Tr. 32:11–14 ("Dana will tell you how she came to rely on OneTaste for her housing and basic needs. She will tell you how she was psychologically manipulated by the defendants."). The government's opening statement and the testimony of Rebecca Halpern have made it clear that the government contends that OMing and other sexual activities that took place at OneTaste *are* the "labor and services." The defense is that the government's witnesses chose to work there and were free to leave. The defendants made the defense theory plain in filings before trial and during opening statements. *See, e.g.*, Joint Proposed Jury Instr., Dkt. No. 326 at 2; Trial Tr. at 37:13–16; 55: 11-13; ("It boils down to this, freedom to stay or freedom to go."). To effectively present this defense, the defendants must be able to introduce evidence, including the witnesses' contemporaneous statements recorded in video, audio and written formats, showing that they "chose to work" at OneTaste and participate in OneTaste activities. *United States v. Rivera*, 799 F.3d 180, 186 (2d Cir. 2015).

This evidence is highly relevant and admissible. It directly contradicts testimony to date and expected testimony that the witnesses were forced to stay at OneTaste, and it directly rebuts the government's theory of the case. *See, e.g.*, Tr. 35:21–36:9 (explaining to the jury in opening statements that they were going to see evidence and hear testimony how their experiences at OneTaste damaged them financially, psychologically, and otherwise); *see also* Tr. 36:12-17. Thus far, Rebecca Halpern testified: "I knew that the expectation was for me to be on, you know as many hours of the day as possible…and it was enforced by Rachel." (Tr. 253; 6-7, 16). "And, you know, I could see the dark circles and I felt really sluggish and fatigued all the time because I was sleeping quite little from the stress and also just from the hours." Tr. 252:9-12 ("I was -- you know, like, sort of like toward the – in the latter, like, half of my time there, I just remember feeling really, really foggy all the time …." Tr. 252:24-25; 253:1; *see also* Tr. 306:19-21(Ms. Halpern describing how no one at OneTaste was speaking with her anymore). The defense sought to introduce videotaped, photographic and documentary evidence showing that Ms. Halpern wanted to work at OneTaste and found it beneficial. *See, e.g.*, DX21BU; DX21CT; DX21Y; DX21U (attached).[3] Moreover, the videotaped and photographic evidence showed Ms. Weiner's demeanor, physical appearance, and behavior were directly at odds with what she described on the witness stand, including the fact that people at OneTaste never stopped talking to her and laughing with her. Similarly, had the Court not repeatedly excluded this evidence during Ms. Halpern's testimony, the defense would have sought to introduce videotaped evidence of Mr. Hubbard's contemporaneous statements and demeanor at OneTaste, *see* DX16A-1; DX16L. That evidence directly undermined his testimony on direct examination regarding his supposedly

---

[3] The defense is submitting the attached exhibits as a zip file via email to the Court's deputy, and it requests that they be made part of the record.

Honorable Diane Gujarati
May 11, 2025
Page 3

negative views of the culture at OneTaste, *see, e.g.*, Tr. 830, 842–44. For the record, the defense now moves to admit those exhibits for the reasons stated herein.

Separate and apart from impeachment through prior inconsistent statements under Federal Rule of Evidence 613, this extrinsic evidence is also admissible as impeachment by contradiction under Federal Rule of Evidence 607 to attack the witnesses' credibility. *See Chavez-DeRemer v. Sarene Servs., Inc.*, 2025 U.S. Dist. LEXIS 72571, *7 (E.D.N.Y. 2025) ("The doctrine of 'impeachment by contradiction, which operates as a limited exception to Rule 608(b),' 'provides that when a witness puts certain facts at issue in his testimony, the [opposing party] may seek to rebut those facts, including by resorting to extrinsic evidence if necessary.'" (quoting *United States v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010)); *Friedman v. Rehal*, 618 F.3d 142 (2d Cir. 2010) (stating that impeachment evidence is evidence that "is offered to discredit a witness…to reduce the effectiveness of [her] testimony by bringing forth evidence which explains why the jury should not put faith in [her] or [her] testimony" (internal quotation marks omitted; alterations in original)); *United States v. Pastor*, 419 F. Supp. 1318, 1324 (S.D.N.Y. 1975) ("[T]he Government ought not to be allowed to deprive a defendant of his right to impeachment by contradiction."); 1 Weinstein's Evidence Manual § 12.01[4] (2024).

This evidence is also admissible for a variety of other reasons. It is rebuttal evidence that directly refutes the government's theory of the case, and its witnesses' testimony. *United States v. Casamento*, 887 F.2d 1141, 1172 (2d Cir. 1989) ("The function of rebuttal evidence is to explain or rebut evidence offered by the other party."). It is admissible under Federal Rule of Evidence 803(3), to establish the witnesses' "then-existing state of mind (such as motive, intent, or plan) or *emotional, sensory or physical condition (such as mental feeling, pain, or bodily health)*." (emphasis added); *see United States v. Priolo*, 2025 WL 679413, at *32 (E.D.N.Y.) (alleged victims' statements that they won large prizes based on mailings they received were admissible under Rule 803(3) because they showed the alleged victims' state of mind when they received the mailings); *U.S. v. DiMaria,* 727 F.2d 265, 270-71 (2d Cir. 1984) (court erred in excluding defendant's statement under 803(3) where the statement fell within the state of mind exception because it refuted the government's theory of the case); *see also United States v. Harris*, 733 F.2d 994, 1005 (2d Cir. 1984) (district court erred in precluding testimony under 803(3) because the testimony supported the main theory of the defense). And, to the extent the defendants heard or saw the contemporaneous statement, it is admissible for the effect on the listener. It demonstrates that the defendants believed the witnesses chose to work at OneTaste, because that is what the witnesses told them at the time—undermining the government's claim the defendants' intended to force their labor. *See Rivera*, 799 F.3d at 186.

Instead of permitting the defense to introduce this contemporaneous evidence, the Court has limited the defense to refreshing the witnesses' recollection about their past statements and then questioning the witness about each individual statement the witness previously made, one-by-one, during their time at OneTaste and their demeanor while making those statements. Not only is this process incredibly cumbersome—nearly grinding this trial

Honorable Diane Gujarati
May 11, 2025
Page 4

to halt at times—but it completely undermines the effect of the cross-examination.[4]  Playing a videotape or otherwise showing a witnesses' contemporaneous statement is much more impactful than having a hostile government witness begrudgingly acknowledge that they said the statements in the past.  *See Old Chief v. United States*, 519 U.S. 172, 187 (1997) (stating that "a party [should be able to] present to the jury a picture of the events relied upon" and should not be able to "substitute for such a picture a naked admission [that] might have the effect to rob the evidence of much of its fair and legitimate weight"); *United States v. Pedroza*, 750 F.2d 187, 201 (2d Cir 1984).  To limit the defense to the latter method completely undermines its ability to effectively cross-examine the government's witnesses regarding the central issue in this case.[5]

As another example, the Court excluded introduction of numerous of Ms. Halpern's own statements either in the form of social media posts or other messages which reflect her then-existing state of mind and enthusiasm for the practice of OM and her life at OneTaste.  *See, e.g.*, DX21BR; DX21DB; DX21DA; DX21DC; DX21AG, Tr. 655:5-17, 690:4-24, 731:16–738:10.  For example, the defense sought to introduce Ms. Halpern's "Desire Contract" that she was required to submit before CP6.  Ms. Halpern testified that the document contained her desires, admissions, and things she did not want for the future course, which demonstrated her then-existing state of mind and her plan for CP6.  *See* Tr. 485-86.  As another example, after permitting the government to elicit detailed testimony from Ms. Halpern about the sales tactics that were used in connection with her purchasing the coaching program, along with corroborating email communications, the court inexplicably precluded the defense from introducing into evidence statements of the witness that *directly contradicted* her testimony.  *See* DX21CT (transcript also attached).  The video *in its entirety* should have been played for the jury.  For starters, it showed that that Ms. Halpern was physically in San Francisco for the start of CP5 (something she denied on direct examination); it shed light on the nature of her

---

[4] To the extent the Court denies this mistrial motion, the defense cannot repeatedly seek to introduce this evidence as trial moves forward, only to have the Court deny it at each turn.  It requests a standing objection to the Court's refusal to admit each witnesses' contemporaneous statements while at OneTaste.

[5] The Court's offer towards the end of cross-examination of Ms. Weiner to go back and try to re-introduce certain video evidence did not cure this problem.  Tr. 737:11–19.  By that point, the defense already had moved on in its cross-examination after seeking introduction of her contemporaneous statements and other evidence of her demeanor several times, and the cross-examination had already lost its force.  The defense also did not want to risk having the Court deny the introduction of the evidence yet again.  The defendants may seek to recall Ms. Weiner, Mr. Hubbard and other government witnesses' in its case-in-chief to present this evidence.

relationship with Ms. Cherwitz, which the government has put squarely into issue; it reflected her own enthusiasm for the OneTaste teachings and curriculum and her own *desire* to take the program rather than being forced to do so; it directly contradicted her testimony that she lacked the free will or assertiveness to decline to sign up for the course, where she canceled her bank account so her check bounced; it directly contradicted her testimony that Ms. Cherwitz used sales tactics that overcame her free will, as she expressly admitted that Ms. Cherwitz did not have to hard stroke (hard sell) her at all. There was literally nothing in that video that was not relevant or admissible, since it was clearly not being used for substantive purposes.

Even more problematic, the Court permitted the government to elicit an out-of-context statement that Halpern made in the context of the three-minute video, presumably to rehabilitate her. The defendants did not ask nor intend to take *any* of the video out of context. Had the government and the Court just permitted the whole video to be seen by the jury, the government could have made its point and the jury would have had the benefit of an important piece of evidence that was directly relevant to the issues in the case and responsive to Halpern's testimony on direct. The Court's belated efforts to justify the exclusion were not logical, as the entire statement was admissible and excising one or two lines from the video would have removed context and rendered the evidence incomprehensible. The Court has no trouble understanding the purpose and need for context when admitting hearsay that the government offers.

*Second*, the Court has repeatedly berated defense counsel in front of the jury, when it has tried to make objections. Tr. 371:16–23 ("Ms. Bonjean: I'm going to object to the – no foundation. The Court: She's just said she saw something. She's allowed to continue. Overruled. Ms. Bonjean: By whom? The Court: You can — excuse me, Ms. Bonjean. You may continue."); *Id.* at 841:20–23 ("Ms. Bonjean: It's leading. The Court: It's not, but I'll sustain an objection on other grounds. Next question."). This improper treatment of defense counsel has involved repeatedly yelling and shouting at and cutting off defense counsel, when they try to object and make a record. *See, e.g.*, Tr. at 833 ("Ms. Bonjean: I'm objecting on— The Court: You've objected and I overruled it. Ms. Bonjean: I'd like to make a record, please. There is a Court of Appeals— The Court: Overruled. Overruled. Overruled. And please be quiet."); *Id.* at 826:7–12 ("Ms. Bonjean: Objection to— The Court: Overruled. Let him finish the answer. A: My understanding is that Nicole would assign the research partners. Ms. Bonjean: Objection to the understanding. The Court: Overruled. Overruled. Next question."). At this point, there are dozens of examples where the Court has refused to allow defense counsel an opportunity to provide any explanation or offer of proof as to why certain testimony is objectionable or why evidence should be admitted. The Court refuses to conduct side-bars, even when thorny evidentiary issues arise, and it has refused to allot adequate time before trial to address these issues forcing the parties into the Hobson's choice of waiving objections or continuing to attempt to preserve the record on appeal at the risk of being screamed at and told to "be quiet."

Honorable Diane Gujarati
May 11, 2025
Page 6

      Adding to the difficulties in making proper objections that preserve issues for appellate review, the government continues to elicit testimony that was the subject of the defendants' motions *in limine* that the Court never ruled on. For example, the government has questioned witnesses about their opinions that OneTaste is cult and that they were brainwashed. This Court tabled any ruling on this issue, but when the testimony was offered, without further discussion or a ruling, this Court berates defense counsel in front of the jury for objecting to it. Defense counsel was denied the benefit of clear ruling from this Court on this issue (and others, *e.g.* Daedone's childhood trauma and controversial views on rape), and it is in the dark at this point about what evidence is going to be admitted and what is precluded. This evidence came in without this Court ever having even ruled on whether it was admissible. This Court has abdicated its responsibility to rule and provide a basis on these issues that were raised long ago in motions *in limine,* and it then suggests to the jury that the defense is somehow doing something wrong by objecting to evidence to which it *must* object.

      These evidentiary questions are complicated and should be resolved in a thoughtful way outside the presence of the jury, but the Court has refused to provide the defendants with that opportunity, always blaming the defendants for somehow failing to address the issue in the precise manner that the Court expects, which is a moving target at this point. The defense has repeatedly been denied the opportunity to raise objections with the Court. Tr. 625:1–9; 739:20–740:11. Defense counsel has tried to adhere to the Court's preferences for raising issues, including by arriving early and notifying court staff of issues that need to be addressed. Nonetheless, the Court has refused to take up issues that need to be resolved, and because the Court will not hold sidebars, defense counsel is being denied the opportunity to raise its legal objections at the time evidence is being considered by the Court, including the issues raised here.

      Defense counsel has an obligation to make a record of its objections for any necessary appeal in this case, and the Court's conduct has unduly prejudiced the defendants in the eyes of the jury, indicating it has negative view of defense counsel, the defendants and/or the defense case. At this point, such substantial prejudice cannot be cured with an instruction. *See United States v. Nazzaro*, 472 F.2d 302, 312–13 (2d Cir. 1973).

      *Third*, the defense notes that the government's paralegal, who is sitting directly in front of the jury, has been repeatedly making non-verbal commentary, including his approval or disapproval of the events, by shaking his head during the defense presentation of the case. Defense counsel raised this issue with the Court, but the Court berated defense counsel for raising the issue. Tr. 801:20-802:2.

      *Lastly,* the Court has permitted the government to turn this trial into a free for all where witnesses can testify concerning matters about which they have no personal knowledge, matters on which they are merely speculating, and their own expert opinions. Simply because a witness testifies to his/her "understanding" does not excuse the government from demonstrating that the witness has a proper foundation for that "understanding" or that the

testimony is objectionable if that "understanding" is premised on hearsay. The Court has permitted the government to use the "what is your understanding" question to permit witnesses to testify to literally anything it wants. Just by way of example, during testimony from Mr. Hubbard, he was asked:

Q: Who would tell you – who if anyone, would assign you a research partner?

A: It was my understanding that Nicole would be.

A: My understanding is that Nicole would assign the research partners. (Tr. R. at 826)

When defense counsel objected to this testimony which clearly lacked any type of foundation and was speculative if not based on factual basis, this Court screamed at defense counsel repeatedly "overruled."

As another example, Mr. Hubbard was asked:

Q. Based on your personal observations and experience, why were those types of people important to the community [young and affluent]

Defense counsel's objections were overruled, allowing Mr. Hubbard to speak for an entire "community" of people without identifying a single fact that led to his belief, which is irrelevant in any event. The examples abound of this type of improper questioning that has permitted the government to rely extensively on witness opinion testimony and speculative testimony. Frankly, this trial is turning into a live performance of the Netflix movie.

To the extent this Court continues to permit the government's witnesses to avoid the requirement of showing personal knowledge that is not based on hearsay and without laying a proper foundation merely by testifying to his/her "understanding," defense counsel has a standing objection. Relatedly, it is the defendants on trial, not the OneTaste organization. Ms. Halpern and Mr. Hubbard were permitted to testify repeatedly about their observations and beliefs about *OneTaste* the organization, rather than identifying the specific conduct of the defendants. The Court has signaled to the jury that the defendants are responsible for every action of the organization *and the community* without the jury being afforded the opportunity to even decide that disputed question. There are countless examples in the record of this type of questioning. In sum, the defendants lodge a standing objection to the government's repeated failure to lay proper foundation for its questions.

For the forgoing reasons, the defense requests that the Court declare a mistrial.

Honorable Diane Gujarati
May 11, 2025
Page 8

**Government Response**

The defendants' motion for a mistrial should be denied. The defendants do not even come close to satisfying the stringent standard to declare a mistrial. "The decision by a district court to declare a mistrial is of great consequence." United States v. Razmilovic, 507 F.3d 130, 133 (2d Cir. 2007). For this reason, the Supreme Court has long made clear that mistrials are to be granted only in extraordinary cases, such that, "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." United States v. Scott, 437 U.S. 82, 92-93 (1978). "The power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes and in the exercise of a sound discretion." United States v. Klein, 582 F.2d 186, 190 (2d Cir. 1978) (quoting United States v. Perez, 22 U.S. 579, 580 (1824)). The defendants fail to make this showing.

First, while the defendants complain that the Court has "systematically excluded evidence that goes to the heart of the defense," in reality, the Court has made appropriate evidentiary rulings based on the foundation laid at the time, including, in many instances, sustaining defense objections and allowing the defense to enter exhibits into evidence. The defendants' selective cherry picking of instances where the Court excluded the defense from introducing irrelevant evidence in an attempt to show some sort of bias on the Court's part certainly does not constitute "manifest necessity" for a mistrial. See Klein, 582 F.3d at 186; Zinman v. Black & Decker (U.S.), Inc., 983 F.2d 431, 437 (2d Cir. 1993) (holding that trial judge acted within his discretion to terminate cross-examination where counsel "ignored repeated warnings to use his cross–examination time efficiently and to focus only on material issues in the case.").

Second, the defendants argue that the Court admonished defense counsel before the jury. But "a district judge is not a moderator, umpire, or passive spectator, but is obligated to intervene whenever necessary to ensure that proceedings over which the judge presides are fairly conducted, even if that intervention conflicts with the intended strategy of one of the parties or attorneys." In re Charges of Judicial Misconduct, 465 F.3d 532, 547 (2d Cir. 2006) (citing Lakeside v. Oregon, 435 U.S. 333, 342 (1978)). Additionally, "overly aggressive advocates may indeed require that the trial court interpose itself more actively and even forcefully in the proceedings to ensure fairness." In re Charges of Judicial Misconduct, 465 F.3d at 548. Nothing in the record in this case suggests the Court was acting outside the bounds of its discretion. Indeed, the government disagrees with the defendants' characterizations of the Court's tone, which the government views as appropriate and in response to defense counsel attempting to talk over the Court.

Third, the defendants suggest that the government's paralegal made non-verbal commentary. The government disagrees with the defendants' characterizations. In any event, the government intends to continue proceeding in a respectful manner and anticipates everyone else will do the same.

Fourth, the defendants accuse the government of eliciting testimony that OneTaste is a cult and that witnesses were brainwashed, and they argue that the Court's rulings were

Honorable Diane Gujarati
May 11, 2025
Page 9

unclear in this regard. This is incorrect. The Court previously held that it would "not issue a blanket ruling precluding the use of the term 'cult.'" Nov. 15, 2024 Tr. at 25 (emphasis added). The Court further noted, "[t]hat is not warranted on the facts of this case. The use of that term, depending on context, including who is using the term, could be relevant to issues the jury will have to decide." Id. The defendants' assertion that this issue was "tabled" is simply wrong. Additionally, at no point in this trial did the government introduce the concepts of "cult" or "brainwashing" independently; instead, these terms were introduced by the witnesses. See, e.g., Trial Tr. at 379-80 (Q: "My question is, what is the sum total of experiences that you had that made you feel disconnected. A: "I -- on sum [sic] level, I knew somewhere in there that I had been, you know, carefully, gently brainwashed over time, and -- but even that little amount of knowing that wasn't enough."); Id. at 817-18 (Q: "How else, at the time that you were at OneTaste, did Nicole Daedone describe OneTaste?" A: "Eventually, one of the ways that it was – Nicole described it and we all described it was it was a sex cult. We said that in public."). Indeed, Chris Hubbard's testimony was that Nicole Daedone was the person who described OneTaste as a cult.

Finally, the defendants imply that the Court has improperly allowed the government to elicit certain testimony of witnesses by framing questions based on those witnesses' understanding. But the government's witnesses are entitled to testify regarding their personal experiences, personal observations, and personal understandings during their time at OneTaste. Defense counsel takes issue with witnesses testifying regarding OneTaste the organization, but the government appropriately laid the foundation that Daedone and Cherwitz were operating OneTaste at the time the witnesses were there. Indeed, Daedone was the leader of the organization, which both witnesses confirmed. See, e.g., Trial Tr. at 103 (A: "[Daedone] obviously founded the company and acted as the president, CEO, leader of the company. Was kind of at the top of the pyramid as far as the leadership."); Id. at 810 (Q: "During your time at OneTaste, what role did Nicole Daedone play at the company?" A: "Primarily, she was the leader of OneTaste.").

Contrary to the defendants' assertions, and as discussed in the government's motion to limit cross-examination, ECF No. 370, the Court has given the defendants considerable leeway in their cross-examination of witnesses. The defendants' motion for a mistrial should be denied.