**Ballard Spahr LLP**

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

May 19, 2025

*Via ECF*

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     United States v. Nicole Daedone and Rachel Cherwitz, 23-CR-146

Dear Judge Gujarati:

The defendants Nicole Daedone and Rachel Cherwitz submit this renewed motion to strike all evidence and argument regarding religious and spiritual beliefs and practices, which are protected by the First Amendment. *See* Motion in Limine, Dkt. 171, 8-10. As set forth more fully below, the government continues to elicit testimony and evidence concerning OneTaste's philosophy through Daedone's teachings and ideology to suggest that they were brainwashed. Such evidence violates the defendants' First Amendment right to religious freedom, and as such, the evidence and argument concerning such teachings should be stricken from the record.

**Defense Motion**

At the hearing on the motions in limine in this case, the Court ruled that it would not issue a "blanket ruling prohibiting reference . . . to OneTaste's spiritual and religious practices because such references, depending on the specifics, including the context, could be relevant to issues the jury will have to decide." (Hr'g Tr. 27:3-8, Nov. 15, 2024.) Rather, the Court advised that it "need[s] to know what the specifics are" and stated that "specific objections will have to be made at an appropriate time . . . [because] a lot of these categories just don't lend themselves to generalities." (Id. at 28:5, 28:20–29:3.)

In the government's opening statement, it claimed that the alleged victims worked because they were afraid that, if they did not, they would be spirituality ruined and would "lose their entire source of support, community, spirituality, and identity." (Tr. 34:7-20, May 6, 2025). As the trial has proceeded, it has become clearer that the government is intending to elicit testimony that OneTaste's spiritual teachings led to psychological harm. Since the

Honorable Diane Gujarati
May 19, 2025
Page 2

opening statement, the government continues to directly place "religious practice" as a central issue in its theory of the case. In response to a request for a proffer by the court of the relevance of certain evidence, the government stated:

> [O]ur theory of the case is that the defendants put some [of] the testifying witnesses, our victims, in psychological distress and also taught them concepts that taught them basically to consent to everything and to be willing to engage in certain sexual activities that even at the time they would have viewed as something they wouldn't consent to, but they did so because they were taught this was a *philosophy or a religious practice* that was good for them, and if they continued to do it they would reach enlightenment. This all goes to the psychological aspect of how the labor is forced.

Trial Tr. at 190:23–191:7 (emphasis added).

Indeed, the government has not alleged that the defendants utilized any force, restraint, abuse of legal process, or threats to obtain labor. Rather, it asserts that controversial teachings intrinsic to OneTaste philosophy (i.e., encouraging sexual exploration as a means for personal growth, which inherently involves a level of discomfort) are criminal tactics because they caused its followers "psychological harm." *See, e.g.*, Gov's Mot. *in Limine*, Dkt. No. 170 at 12. Furthermore, the government introduced videos of Ms. Daedone and Ms. Cherwitz discussing OneTaste's philosophy and of certain practices to attack to assert that the alleged victims were "brainwashed."

In using these teachings in this way, the government has infringed upon Ms. Daedone's and Ms. Cherwitz's First Amendment right to religious freedom. *See also* Trial Tr. at 1992:10–23 ("Q: And what are priests or priestesses of orgasm? A: They were participants or members of OneTaste who had shown sufficient devotion or commitment to the path of orgasm that they were sort of inducted as priests or priestesses of orgasm. Q: And who held the induction ceremony—did you attend the induction ceremonies? A: I attended and I was inducted as one of the priests of orgasm. . . . Q: Who conducted the priest or priestesses of orgasm ceremonies? A: Nicole and Rachel and the leaders of OneTaste.").[1]

Excluding such evidence is essential to uphold the constitutional and statutory protections afforded to Ms. Daedone and Ms. Cherwitz—who acted from sincerely-held

---

[1] While we are still waiting for today's transcript, Ms. Lifson also testified today regarding matters implicating the First Amendment, such as Ms. Daedone's spiritual teachings and discussions of myths affecting her thoughts, as well as alleged shunning activity for taking action that did not conform to OneTaste's spiritual teachings.

religious and spiritual beliefs—and to avoid setting dangerous precedent that can be used to attack religious freedom more broadly. *See* U.S. Const. Amend. I; 42 U.S.C. § 2000bb-1 (codifying the Religious Freedom Restoration Act). Furthermore, being ostracized from one's religious or spiritual community is common in various religious groups and does not constitute "serious harm" under the forced-labor statute. *See Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012); *see also Paul v. Watchtower Bible & Tract Soc.*, 819 F.2d 875, 876–77 (9th Cir. 1987) (being cut off from one's religious or spiritual community – a practice known as "shunning"- is common in various religious groups). In a religious or spiritual community, such loss is a "legitimate consequence" of leaving—not "coercion" that amounts to "serious harm." *Id.*; *see also Tegete v. Marynoll Sisters of Saint Dominic, Inc.*, No. 20-CV-5023 (CS), 2023 WL 2504744, at *11 (S.D.N.Y. Mar. 14, 2023). The government's witnesses have testified that they enjoyed their time at OneTaste and voluntarily practiced orgasmic meditation, but in retrospect claim they were "brainwashed" such that they could not leave. These claims of "brainwashing" have been directly tied to the alleged victims' claims that, if they left, they would be shunned or cut off from the community. That is an attack on religious freedom and should not be permitted as evidence of serious harm. Furthermore, the government has played videos of OneTaste teachings as further evidence of "brainwashing." The government should not be allowed to criminalize beliefs rather than conduct.

As further evidence of the government's attempt to criminalize beliefs, the government played a video clip of a workshop where Ms. Daedone discussed her views on rape (Tr. at 217). Ms. Daedone's beliefs on this topic not only stem from her own personal experiences as a victim of sexual assault, but are also rooted in a concept referenced as the "fourth dimension," to which the government alluded in its Motion in Limine. (Mem. Supp. Govt's Mot. Lim. 10-11, 69, Dkt. No. 169.) This concept is part of the Buddhist and Hindu belief in nonduality—i.e., the idea that spiritual transformation involves transcending beyond dualistic thinking. Dualism includes dividing one's experiences into self and other, good and evil, or— in the defendants' application of this concept—victim and perpetrator. In other words, what Ms. Daedone expressed in that workshop was that, in pursuit of spiritual transcendence, the spiritual principle of nondualism guides one to understand experiences beyond the victim-perpetrator dichotomy. Accordingly, the government should not be able to put these views on trial in an attempt to demonstrate "serious harm."

For the forgoing reasons, the defense requests that the Court strike all evidence and argument regarding defendants' religious and spiritual beliefs and practices.

**Government Response**

The defendants' renewed motion is meritless. As an initial matter, the defendants have not established any violation of any First Amendment right to religious freedom—much less any infringement of any purported such right in a criminal case. That

Honorable Diane Gujarati
May 19, 2025
Page 4

Daedone misappropriated aspects of many world religions[2] to make her teachings more "theatrical," Tr. 2040, or lend credibility to the meditative sexual practices that she rebranded and marketed,[3] does not render OneTaste a religion entitled to First Amendment protection. Indeed, the defendants have repeatedly argued that OneTaste was a sexual wellness start-up, and not a religion. See, e.g., Tr. 41:10, 42:6, 43:17, 51:19, 975:8, 1190:7. Consistent with that, OneTaste's current website has an entire page devoted to explaining that it is not, and never was, a religion:

> A frequent media strategy to discredit OneTaste and Nicole Daedone is to allege that OneTaste was a cult or religion that treated Nicole Daedone as a prophet or cult leader . . . .
>
> OneTaste was open to new ideas. Not just to hearing them, but trying them on, living them, wearing them, as with all of its beliefs, lightly. Whenever someone had a passion or an interest in something, we would try to incorporate that into OneTaste (which, because it wasn't a religion, was easy to do). Some of the things that would be incorporated into classes or the daily schedule at various times included Zen Dharma teachings, Soul Cycle workouts, Qi Gong, Feldenkrais Method, CrossFit, Kundalini yoga, Bikram yoga, Insight Meditation, sweat lodges, improv, and dozens more. We were seeking a Wikipedia world that incorporated the best of everything.

OneTaste: The Truth About Whether It's a Cult, Mar. 2024, https://erosplatform.com/blogs/onetaste-the-truth-about-whether-it-s-a-cult (last visited May 19, 2025). No witness has testified that OneTaste was a religion.

In any event, as the government already briefed in its response to the defendants' motions in limine, and as remains the case in this motion, though the defendants reference the First Amendment, they cite no case law indicating that a jury should be deprived of evidence—here, use of purported spiritual practices to direct individuals to, among other things, perform sexual acts and go into debt—on such grounds. The law is squarely to the contrary. The First Amendment "does not . . . prohibit the evidentiary use of speech to

---

[2] See, e.g., Tr. 50 (Buddhism), Tr. 750-51 (Catholicism), Tr. 1992 (Greek mythology), GX 624 at 72 (Judaism).

[3] See 3500-RK-3 (describing earlier practice of Deliberate Orgasm developed at Morehouse community, which was precursor to Daedone's later-branded Orgasmic Meditation); 3500-EAU-1 (describing false story told by Daedone about a monk teaching her Orgasmic Meditation and explaining that the true origin was Deliberate Orgasm Daedone learned while at Morehouse); see also 3500-CK-5; 3500-MW-2; 3500-CK-6; 3500-KB-1.

Honorable Diane Gujarati
May 19, 2025
Page 5

establish the elements of a crime or to prove motive or intent." United States v. Kaziu, 559 F. App'x 32, 35 (2d Cir. 2014) (summary order) (quoting Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993)); see also Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 498 (1949) (rejecting contention that "the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute"). Just as people who associate can have that association used against them in a trial, and people who speak can have that speech used against them in a trial, the same is true of the use of spiritualism where such use establishes the elements of a crime or proves motive or intent.

Though the defendants argue that as "the trial has proceeded, it has become clearer that the government is intending to elicit testimony that OneTaste's spiritual teachings led to psychological harm," the government's theory has been consistent from the time of indictment to present. See Indictment, ¶ 7(d) (alleging as a tactic of the criminal conspiracy that the defendants "demanded absolute commitment to DAEDONE, including by exalting DAEDONE's teaching and ideology"); see ECF No. 182 at 14 (previewing that the trial evidence will establish that the defendants used the concept of "orgasm" as a spiritual force justifying certain of the alleged serious harm and performance of labor and services in this case and citing examples). Such evidence is relevant and admissible. See, e.g., United States v. Beasley, 72 F.3d 1518, 1527 (11th Cir. 1996) (holding that "evidence regarding [defendant's] religion was relevant, because religious teachings were used to justify, rationalize, and promote crime"); United States v. Sun Myung Moon, 718 F.2d 1210, 1233 (2d Cir. 1983) (holding that evidence of a person's beliefs is admissible where probative and finding that it was "inevitable that some Unification Church practices would creep into the trial in order to illustrate Moon's control over the activities of other church officials"); United States v. Murra, No. 16-CR-78, 2016 WL 10953909, at *6 (N.D. Tex. July 18, 2016) (same, as to forced labor conspiracy).

The cases the defendants cite warrant no different conclusion. The defendants misread Headley v. Church of Scientology Int'l, 687 F.3d 1173 (9th Cir. 2012), in which the Ninth Circuit held that, under the totality of the circumstances, the plaintiffs had not shown serious harm as a matter of law, but the Court never indicated that shunning or excommunication from the community was not a tactic that may result in serious harm. Id. at 1180-81. Similarly, the defendants misconstrue Paul v. Watchtower Bible & Tract Soc., 819 F.2d 875 (9th Cir. 1987) in which the Ninth Circuit held that the religious practice of shunning by Jehovah's Witnesses, without more, is not actionable in tort. Again, the court did not consider shunning in combination with other tactics. Id. at 883. Moreover, unlike the Jehovah's Witnesses and the Church of Scientology, OneTaste is neither a religion nor a church. Likewise, in Tegete v. Marynoll Sisters of Saint Dominic, Inc., No. 20-CV-5023 (CS), 2023 WL 2504744 (S.D.N.Y. Mar. 14, 2023), the court held, given the totality of the circumstances, that the threshold harm for a § 1589 claim was not met. Id. at *11 ("[T]he linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened

Honorable Diane Gujarati
May 19, 2025
Page 6

but that the employer intended the victim to believe that such harm would befall her"). Notably, none of these cases were solely decided on First Amendment grounds.

The government is in no way "criminalizing beliefs." As the government has repeatedly argued to the Court, the government has not and does not intend to attack the defendants' spiritual beliefs on their merits, devoid of evidentiary value to the charged conspiracy. The government reiterates, however, that it would not oppose a jury instruction that the defendants' espoused beliefs were probative only as evidence of the charged conspiracy, that the defendants are not on trial for having such spiritual views and that such evidence cannot "act as a substitute for proof beyond a reasonable doubt of the elements." Kaziu, 559 F. App'x at 35 (Second Circuit approving a similar jury instruction).

Respectfully submitted,

/s/JENNIFER BONJEAN
/s/KELSEY H. KILLION
Jennifer Bonjean
Kelsey H. Killion
*Counsel for Nicole Daedone*
Bonjean Law Group, PLLC
303 Van Brunt Street, 1st Floor
Brooklyn, NY 11231
718-875-1850

/s/CELIA A. COHEN
/s/MICHAEL P. ROBOTTI
Celia A. Cohen
Michael P. Robotti
*Counsel for Rachel Cherwitz*
Ballard Spahr, LLC
1675 Broadway, 19th Floor
New York NY 10019
212-223-0200