

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DCP:KCB/KTF/NCG/SMF  
F. #2018R01401

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 19, 2025

By ECF

The Honorable Diane Gujarati  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

   Re: United States v. Cherwitz, et al.  
     Criminal Docket No. 23-146 (DG)

Dear Judge Gujarati:

   The government respectfully writes to provide the Court with more details regarding financial evidence the government expects to introduce in its case-in-chief in the above captioned matter. As the Court is aware, the defendants, in their motion in limine, moved to preclude the government from introducing evidence of "[defendant] Daedone's financial condition and/or the terms of the sale of OneTaste." See ECF No. 171 at 17-18. Following responsive briefing, see ECF No. 182 at 18-19, the Court noted that it would "have to wait" to rule on such evidence's admissibility "until there are any specifics." See Nov. 15, 2024 Tr. 36-38. The government anticipates calling Federal Bureau of Investigation Forensic Accountant Mark Lubin ("FA Lubin") to introduce this information possibly as early as May 23, 2025.

   At trial, the government intends to introduce several categories of financial evidence that are critical to the charged crimes. The government has already established that numerous women provided labor and services, including sexual services, for OneTaste at the direction of Cherwitz and Daedone for little or no pay and following a campaign of psychological, financial, and sexual manipulation. Several more victims will testify to this effect in the coming week. The government now intends, consistent with the statute, to prove to the jury how OneTaste's financial situation improved throughout the conspiracy as a result of this labor, and the way in which the defendants Daedone and Cherwitz personally benefitted from OneTaste's financial growth:

- First, the government intends to introduce Internal Revenue Service ("IRS") certified taxpayer records through FA Lubin showing that defendants Cherwitz and Daedone received significant wages and income from OneTaste, Inc. and related corporate entities (collectively, "OneTaste"). This will show that OneTaste paid the defendants, who were

top executives at the company, throughout the conspiracy and their income increased as the conspiracy progressed.

- <u>Second</u>, the government intends to introduce through FA Lubin: (i) certified OneTaste business records demonstrating that in or about March 2017, defendant Daedone sold her interest in OneTaste for $12 million and (ii) certified bank records demonstrating that defendant Daedone received the contracted sales price from the enumerated purchasers into her bank account.

- <u>Third</u>, the government intends to introduce IRS-certified tax records through FA Lubin and certified business records of accounting firm A.L. Nella & Co. through retired partner Chris Kollaja that OneTaste was an S-corporation predominately owned by defendant Daedone and, through introduction of and testimony about OneTaste's general ledgers, that she received numerous benefits from that corporation, including, but not limited to, the payment of her personal income taxes, a car lease, other financial disbursements, and significant transfers of purported wages from OneTaste to defendant Daedone's mother, Beverly Daedone. Notably, none of the government's witnesses who have thus far testified have ever heard of Beverly Daedone, much less witnessed her performing any work for OneTaste. <u>See, e.g.</u>, Tr. 370, 1129, 1685. The government also anticipates testimony from at least one immunized witness it will call later in the trial that the financial transfers to Beverley Daedone were for a "no-show job." This financial benefit to Daedone and her mother is in stark contrast to the minimal payments—or lack thereof—by Daedone's company to the young women providing sexual services to Reese Jones and other clients and potential clients, and compelling evidence of Daedone's knowledge and intent with respect to the forced labor conspiracy.

- <u>Fourth</u>, the government intends to introduce evidence through FA Lubin of defendant Daedone's certified bank records to identify selected purchases defendant Daedone made in support of a lavish lifestyle using funds directly traceable from OneTaste.

The government's summary exhibits of these tranches of evidence, which are admissible pursuant to FRE 1006(a), were previously produced as GX 852, 853, 862, 863 and 865. Such evidence is admissible because: (i) it is directly relevant to the elements of the crimes charged, <u>see</u> <u>United States v. Sampson</u>, No. 13-CR-269 (DLI), 2015 WL 2066073, at *5 (E.D.N.Y. May 4, 2015) (evidence is directly relevant if it establishes an element required to prove the offense), and (ii) it bears directly on the defendants' motive to commit the crimes charged. The above-mentioned records are admissible as either certified business records pursuant to Federal Rules of Evidence ("FRE") 902(11) and 803(6) or certified public records pursuant to FRE 902(1). The government's proposed summary exhibits are admissible pursuant to FRE 1006(a) because the records on which they are based are voluminous and cannot be conveniently examined in court.[1]

---

[1] The government also intends to introduce evidence through FA Lubin of the wages and income select OneTaste employees received from OneTaste, Inc. and its related entities. The evidence includes records obtained from the New York State Department of Labor

2

A. The Evidence is Directly Relevant to the Charged Crimes

In addition to being charged with conspiring to violate 18 U.S.C. 1589(a), the defendants are also charged with violating 18 U.S.C. § 1589(b), which proscribes, in relevant part, "knowingly benefit[ting], financially or by receiving anything of value, from participation in a venture which has engaged in" forced labor. See 18 U.S.C. § 1589(b) (emphasis added); see Bistline v. Parker, 918 F.3d 849, 871 (10th Cir. 2019) ("One can violate the statute either as a primary offender or by benefiting financially in a 'venture' with the primary offender."); Riccio v. McLean, 853 F.3d 553, 556 (1st Cir. 2017) (defining "venture" for purposes of 18 U.S.C. § 1589 as a "group of two or more individuals associated in fact"). Although the government has demonstrated that the defendants are primary offenders, it is also entitled to elicit evidence that the defendants conspired to violate § 1589(b) by benefitting financially from their participation in OneTaste.

Here, the government's proffered financial evidence will show that defendants Daedone and Cherwitz benefitted financially by participating in the OneTaste forced labor venture. This evidence is relevant to proving their guilt of the charged conduct. See United States v. Rivera, No. 09-CR-619 (SJF), 2012 WL 2339318, at *5 (E.D.N.Y. June 19, 2012) ("There was ample basis upon which the jury could conclude . . . that [the defendant] knowingly benefitted from his participation in the operation of the bars and that he knew of, or recklessly disregarded, the persistent threats of deportation made to the victims working at the bars."); see also Gilbert v. U.S. Olympic Comm'n, 423 F. Supp. 3d 1112, 1139 (D. Colo. 2019) (indirect benefits, such as collecting money through sponsorships, licensing and grants accrued from forced labor sufficient to show that the defendant "benefited from its participation in the venture").

Furthermore, the government is not required to prove that the financial or other benefits Cherwitz and Daedone accrued are traceable directly to the forced labor, as the defendants have argued; it is sufficient that the government establish Cherwitz and Daedone's participation in OneTaste and that Cherwitz and Daedone's receipt of benefits flowed from their participation in that forced labor venture. See G.G. v. Salesforce.com, Inc., 76 F.4th 544, 565 (7th Cir. 2023) ("[A]s the statutory text clearly dictates, where the defendant is simply aware that it is benefiting, that is enough. . . . The continuous business relationship between Salesforce and Backpage was sufficient to show that Salesforce participated in Backpage's venture and knowingly benefited from it."); Paguirigan v. Prompt Nursing Emp. Agency LLC, 286 F. Supp. 3d 430, 439 (E.D.N.Y. 2017) (home, agency and employees financially benefited under 18 U.S.C. § 1589(b)).

Indeed, the defendants' theory that the statute requires proving direct, linear causation between the forced labor is found nowhere in the plain text of the statute, which simply requires "benefit[ing], financially or by receiving anything of value, from participation in a

---

and the California Employment Development Department, which are admissible pursuant to FRE 902(2), as well as certified business records, which are admissible pursuant to 902(11) and 803(6). FA Lubin will introduce such evidence through a summary chart pursuant to FRE 1006(a), which is marked as GX 856.

venture . . . ." 18 U.S.C. § 1589(b).  Thus, it is sufficient that the benefits accrued bear some reasonable relationship to the forced labor.  In this case, the evidence has shown and will continue to show that: (i) the forced labor provided to Reese Jones induced him to invest in the company, thereby allowing it to grow beyond its nascent San Francisco roots, Tr. 846; 3500-RKA-14; 3500-KB-1; (ii) the forced labor provided by members of OneTaste's sales team helped OneTaste sell more and more expensive courses, thereby growing the company's footprint and increasing its profits, see, e.g., Tr. 233, 245, 262; 3500-RKA-14; 3500-KB-1; 3500-KB-2; and (iii) the forced labor enabled defendant Nicole Daedone to increase her financial rewards by focusing her efforts on marketing OneTaste, thereby growing the company and increasing its revenues, see, e.g., Tr. 1663.

The evidence to be introduced will show that the financial benefits the government seeks to introduce bear a relationship—directly and indirectly—to the forced labor at issue.  See Levin v. Sarah Lawrence Coll., No. 23-CV-10236 (LJL), 2024 WL 4026966, at *24 (S.D.N.Y. Sept. 3, 2024) (financial benefits must bear a relationship to the venture); Bistline, 918 F.3d at 875-76 (defendant's legal fees funded by the forced labor of children).  Specifically, the evidence will show that defendants Daedone and Cherwitz earned income from OneTaste[2] and, with respect to Daedone, sold her interest in it for $12 million.  Daedone also used OneTaste funds for her own personal use and, as a majority owner of OneTaste, the proffered financial evidence, including OneTaste's general ledgers, demonstrates the degree of effective control that defendant Daedone exerted over the company.  The evidence will further show that Cherwitz and Daedone knowingly accrued such benefits from their participation in OneTaste.  See Geiss v. Weinstein Co. Holdings LLC, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (discussing how a Trafficking Victims Protection Act claim can proceed if plaintiff establishes a "causal relationship between affirmative conduct furthering the [] venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship" and noting that "[t[he participation giving rise to the benefit must be participation in a sex-trafficking venture, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture").

Finally, the evidence is relevant to demonstrate that the forced labor conspiracy was not simply a start-up company.  As the Court is aware, the defendants have repeatedly referred to OneTaste throughout this trial as a "start-up", see, e.g., Tr. 41:10, 42:6, 43:17, 51:19, 975:8, 1190:7, where employees typically work for free or for low pay.  The evidence will demonstrate that this was not a start-up where employees worked for a wage or equity in the company.  Instead, the evidence will show that defendant Daedone was the majority owner of OneTaste and, when she sold the company, she retained all the benefits: none were shared with any other OneTaste employee or shareholder.  Thus, the testimony is crucial to rebut the defendants' arguments regarding OneTaste functioning as a "start-up."

---

[2]  For the reasons set forth herein, the government also respectfully moves pursuant to 26 U.S.C. § 6103(i)(4)(A)(i) to introduce defendants Daedone and Cherwitz's tax return information at trial because such evidence is probative of the defendants' guilt in the above-captioned matter.

### B. The Evidence Bears on the Defendants' Motive

The proffered financial evidence also bears <u>directly</u> on the defendants' motive to commit the crimes charged. Here, the defendants' wealth is directly traceable to OneTaste's growth, which resulted from the labor and services of the testifying victims and others like them and provides a motive for them to commit the charged conduct. See <u>United States v. Adelglass</u>, No. 23-6248, 2024 WL 5087519, at *2 (2d Cir. Dec. 12, 2024) (noting the Second Circuit "regularly uphold[s] admission of financial and tax-related evidence when probative of motive, intent, or knowledge" and upholding the introduction of evidence of a defendant's lavish spending as probative of his motive); <u>United States v. Hoey</u>, 725 F. App'x 58, 60-61 (2d Cir. 2018) (affirming district court's admission of evidence of the defendant's personal spending habits, including evidence of "payments to his girlfriend," because such evidence was "highly probative" of the defendant's motive for taking the money); <u>United States v. Quattrone</u>, 441 F.3d 153, 187 (2d Cir. 2006) (evidence that links a defendant's financial compensation to his possible motives for participating in an alleged fraud is relevant to proving the fraud); <u>United States v. Franzone</u>, No. 21-CR-446 (VSB), 2025 WL 1094496, at *6 (S.D.N.Y. Apr. 11, 2025) (evidence of a defendant's spending, "even if not directly misappropriated from investor funds, is probative of his motive to commit the fraud, and any potential prejudice can be overcome by a limiting instruction to the jury"). As noted above, the defendants' salaries increased as the charged conspiracy unfolded and there is no evidence that they were independently wealthy. Indeed, as OneTaste grew on the backs of the victims of the charged conspiracy, so, too, did the defendants' wealth, culminating in defendant Daedone's $12 million sale of the company.

For the foregoing reasons, financial evidence of the benefit the defendants received from OneTaste is relevant and should be admitted at trial.

**Defendants' Position**

The government seeks to introduce evidence related to Ms. Daedone's and Ms. Cherwitz's financial condition. This evidence should be precluded as the records that the government seeks to introduce (e.g., taxpayer records, bank records, records of the accounting firm A.L. Nella & Co.) are wholly unrelated to the alleged conspiracy. Even if the evidence were related, the probative value of such evidence is substantially outweighed by the prejudicial effect.

For example, the government states that it intends to introduce "transfers of purported wages from OneTaste to defendant Daedone's mother, Beverly Daedone." Any evidence regarding payments to Beverly Daedone is distracting and irrelevant to the alleged conspiracy to commit forced labor. The government seeks to admit such evidence to show the "stark contrast" between the financial benefit that Ms. Daedone—the Chief Executive Office ("CEO") of OneTaste—and her mother received in comparison to other OneTaste employees, and alleges that it shows Ms. Daedone's knowledge and intent. The government fails, however, to explain how this "stark contrast" is connected in any way to the alleged forced labor. Nor does it explain how such evidence shows knowledge or intent. If the fact that a CEO earned more than other employees were evidence of force labor conspiracy, many CEOs would face forced labor charges.

Additionally, the financial documents that the government seeks to admit do not purport to reflect the sources of the funds in the accounts, nor do they reflect any nexus between the charged conduct and any of Ms. Daedone's or Ms. Cherwitz's income. Notably, during the period of the alleged conspiracy, OneTaste—neither Ms. Daedone nor Ms. Cherwitz—was the employer of the alleged victim-employees. The defendants were themselves OneTaste employees. Moreover, during Ms. Daedone's time as a CEO, her salary was relatively modest as was Ms. Cherwitz's.

Further, even if the Court were to find that the financial evidence is relevant to the charged conspiracy, the unfair prejudice to the defendants substantially outweighs the probative value of introducing such evidence. It also bears the substantial risk of confusing and misleading the jury to draw conclusions based on the defendants' financial status rather than the evidence related to the charged conspiracy. The evidence is thus precluded by Federal Rule of Evidence 403.

The government intends to admit evidence that Ms. Daedone sold her interest in OneTaste for $12 million. There is no dispute that Ms. Daedone, as the owner and co-founder of OneTaste, received proceeds from OneTaste's sale. Therefore, introducing evidence regarding the sale only serves to portray Ms. Daedone as wealthy and to prejudice the jury against her by improperly suggesting that the source of Ms. Daedone's wealth or OneTaste's valuation prior to the sale is related to the acts alleged in the indictment. Similarly, evidence that Ms. Daedone's mother received wages during the time that the government's witnesses allege they were underpaid only seeks to inflame the jury. It improperly suggests that the alleged victims were allegedly underpaid and Ms. Daedone's mother received payment for a "no-show job" are somehow related to the defendants allegedly conspiring to commit forced labor.

Lastly, the government incorrectly states above that "[i]n addition to being charged with conspiring to violate 18 U.S.C. 1589(a), the defendants are also charged with violating 18 U.S.C. § 1589(b)." To be clear, the defendants have not been charged with any substantive crime, but rather have been charged with a sole count of conspiracy to commit forced labor.

6

The government's evidence related to Ms. Daedone's and Ms. Cherwitz's financial conditions should be precluded as such evidence is unrelated to the alleged forced labor conspiracy.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:   /s/
Kayla C. Bensing
Kaitlin T. Farrell
Nina C. Gupta
Sean M. Fern
Assistant U.S. Attorneys
(718) 254-7000