

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| KCB/KTF/NCG/SMF<br>F. #2018R01401 | *271 Cadman Plaza East*<br>*Brooklyn, New York 11201* |

May 20, 2025

By ECF

The Honorable Diane Gujarati

      Re:    United States v. Cherwitz, et al.
                  Criminal Docket No. 23-146 (DG)

Dear Judge Gujarati:

      The government respectfully submits this renewed motion to permit the expert testimony of Dr. Chitra Raghavan, who the government previously noticed as an expert witness in coercive control. See ECF No. 148. For the reasons described below and in the government's opposition in response to defendants' motion to exclude expert testimony, ECF No. 180 ("Gov't Opp."), and in light of the defendants' opening statements and cross-examination at trial thus far, the Court should allow Dr. Raghavan's testimony on coercive control tactics. Such testimony is highly relevant, reliable, and will assist the trier of fact in understanding the evidence.

      The Court previously provisionally granted the defendants' motion to exclude expert testimony of Dr. Raghavan, finding that it could not conclude at that time that "any of the proffered testimony would help the trier of fact to understand the evidence or to determine a fact in issue." Nov. 15, 2025 Tr. at 21. The Court further noted that it could not conclude that the probative value of the testimony would not be substantially outweighed by the factors set forth in Rule 403, but stated, "[i]t may become appropriate, however, for me to revisit this issue during trial. Certain testimony or argument may change the 401 and/or 403 analysis." Id.

      Now that the trial has begun, the defendants have made clear that a central part of the defense theory is that because victims in this case had the ability to leave OneTaste, they were not forced to perform any labor under serious harm or threats of serious harm. See, e.g., ECF No. 326 (Defendants' Supplemental Jury Charge); May 6, 2025 Tr. at 37 ("I want to . . . talk about what this case is really about. It boils down to this, freedom to stay or freedom to go."). Putting aside that the elements of the charged crime do not require the government to prove that any victims were unable to physically leave OneTaste, such a defense theory underscores the importance of calling an expert witness to testify regarding means of psychological coercive control tactics that were used against the victims in this case.

Additionally, certain government witnesses have testified that they felt "brainwashed" by the defendants. Tr. 379-80, 1201. In response, defense counsel repeatedly asked one of the witnesses for the "scientific term" and "accepted definition" of brainwashing, and the witness responded that she was not an expert. Tr. 803. Additionally, one witness testified regarding coercion, and defense counsel referred to it as "psychobabble" when questioning the witness. Tr. 1560. Finally, at least two witnesses testified that they were both love-bombed at OneTaste, and defense counsel asked them on cross examination to explain love bombing, suggesting that it was "like middle schoolers get love bombed." Tr. 1204, 1230. Defense counsel's questions have opened the door to expert testimony on these issues and coercive control tactics generally. Moreover, numerous government witnesses have testified that they have found it difficult to explain the concepts of coercive control. See, e.g., Tr. 1125 (noting "the thinking" was "hard to describe"); 1608 ("It's so subtle, the coercion"). Accordingly, expert testimony is critical to provide the jury with definitions for these concepts as psychological harm that have already been introduced to the jury and belittled by the defense.

Such testimony is particularly helpful to the jury because, as the expert witness would testify, coercive control methods are invisible tactics—they may not be obvious to those outside of the relationship. But successful coercive control tactics can lead to a state of psychological entrapment, whereby victims may find it difficult to leave perpetrators, even if they are not physically restrained. See ECF No. 148-1 at 6. The Second Circuit and district courts have repeatedly found that this type of testimony is both relevant and helpful in forced labor conspiracy cases. See, e.g., United States v. Zhong, 26 F.4th 536, 555 (2d Cir. 2022) (holding that expert testimony is appropriate in forced labor conspiracies where, "[f]or example, perpetrators of forced labor may encumber workers by . . . making the workers less likely to seek help and more likely to fear the consequences of leaving their company's employ" because "expert testimony may assist jurors in putting these practices into perspective when they otherwise would have difficult doing so"); United States v. Ray, 20-CR-110 (LJL), Dkt. No. 287 at 21 (S.D.N.Y. Jan. 11, 2022) (allowing similar expert testimony "to help a jury understand a common set of conduct experience by victims or the actions normally taken by those committing certain crimes to seduce their victims"); United States v. Torres, No. 20-CR-608 (DLC), 2021 WL 1947503, at *7 (S.D.N.Y. May 13, 2021) (holding that expert testimony on coercive control will help the jury understand the "psychological dynamic often seen in abusive relationships that leads an abuse[d] victim to behave in counterintuitive ways, such as by declining to take opportunities to leave an abusive situation or by expressing gratitude to an abuser").

Because the defense's theory is that the victims were not forced to provide labor, as they were always free to leave OneTaste, Dr. Raghavan's testimony is highly relevant and probative under Rules 401 and 403. And as described above and in the Gov't Opp., courts have routinely found such testimony to be relevant, helpful, and not unduly prejudicial in forced labor conspiracy cases. Indeed, Dr. Raghavan has reviewed no evidence in this case and has never spoken with any of the victims. Her testimony would be limited to general background regarding coercive control tactics, and she would not opine as to whether the government's witnesses were compelled to remain at OneTaste. Additionally, any Rule 403 concerns are minimized here, where, as noted above, certain witnesses have already testified that they felt "brainwashed," "love-bombed," or felt that coercive tactics were used against them. Given that these concepts are already before the jury, expert testimony to define these concepts would assist the trier of fact.

**Defense Position**

As already argued in Defendants' motion in limine [ECF Doc. No. 167] and at a corresponding pre-trial hearing, the government's proposed expert testimony must be excluded pursuant to Fed. R. Evid. 702. Defendants adopt and incorporate their prior written arguments, including that expert testimony concerning "coercive control tactics" is not based on any reliable methodology in the context of organizations and that Dr. Raghavan is not qualified to testify about the application of such tactics in an organizational setting rather than in an interpersonal relationship in any event. *See, e.g.*, *United States v. Truitt*, 938 F. 3d 885 (7th Cir. 2019) (affirming the District Court's exclusion of expert testimony regarding "charismatic groups" that indoctrinate its members for lack of scientific reliability and expertise). At the very least, a *Daubert* hearing would be necessary to determine whether Dr. Raghavan's testimony in the context of an organization like OneTaste is reliable. The Court will also need to revisit the admissibility and scope of potential expert testimony from defense experts Dr. David J. Ley and Dr. Daniel Kreigmann which presently remains undecided.

Even if the government's proposed expert testimony is generally reliable, it will not aid the trier of fact in deciding the ultimate issues in the case. The complaining witnesses have testified at length that they felt coerced to provide labor and services to OneTaste through tactics such as manipulation, isolation, surveillance, fearmongering, grooming, shunning, shaming, and an overabundance of attention ("love-bombing"). Over Defendants' objection, the witnesses have testified that they were "brainwashed" or were "indoctrinated," that they lost their sense of reality, and that their entire identities were enmeshed with OneTaste which prevented them from following their own moral compasses. Consistent with Dr. Raghavan's expert report, the complaining witnesses have defined the alleged coercive tactics identified by the report (along with a few others), have testified with specificity about how those tactics were used by Defendants and upper management of OneTaste, and have described the effects of those tactics. Frankly, it seems like all the complaining witnesses have become experts in coercive control tactics and are more than capable of explaining to a jury what caused them to engage in certain labor and services. Dr. Raghavan's testimony adds little to the equation. Indeed, such expert testimony would only serve to unfairly bolster the testimony of the witnesses.

The government claims that Dr. Raghavan's expert testimony on coercive control tactics is necessary now that it is clear that Defendants' theory of defense is that the complainants were free to leave OneTaste. Defendants have maintained from day one that no crime was committed and that the complainants were not forced or coerced into any labor, including sexual labor. *See, e.g.*, Nov. 15, 2024 Tr. at 17–23 ("[T]he witnesses here were all grown individuals with jobs and not jobs within—all within OneTaste but were free to come and go. These were not people that weren't doc—you know, who didn't have papers that allowed them to leave the country if they needed to."). The government's argument that it only came to understand the defense after hearing opening statements is disingenuous.[1] Similarly, defense counsel's cross examination of

---

[1] Indeed, in multiple pre-trial meetings with the U.S. Attorney's Office as well as in multiple pre-trial filings, the defense specifically explained their theory of this case. *See, e.g.*, Mot. to Exclude Gov's Proffered Expert Witness, Dkt. No. 167 at 18–21; Joint Supp. Requests to Chart, Dkt. No. 326 at 2–9.

one witness asking her to define "brainwashing" did not open the door to Dr. Raghavan's testimony, since Dr. Raghavan's expert report does not define the term "brainwashing" or discuss it. If Dr. Raghavan is a qualified expert on coercive control tactics, she is likely to agree that there is no scientifically accepted definition of "brainwashing." This is a colloquial term that the witnesses should have been precluded from using in the first instance. Defense counsel had no choice but to cross examine on the concept, since the witnesses' self-diagnosing testimony was allowed over Defendants' objection. To the extent the government *now* seeks to elicit testimony from Dr. Raghavan on the non-scientific and highly controversial concepts of brain washing or mind-control, Defendants must be afforded the opportunity to present expert testimony that rebuts these concepts.

    In sum, Dr. Raghavan did not examine any of the complainants and cannot offer any expert testimony about whether the Defendants: (1) used coercive control tactics; and (2) what effect if any those tactics had on the complainants. To the extent the government seeks to educate the jury on these concepts, the tactics identified by the witnesses are within the average ken of a juror and the witnesses have done a fine job of educating the jury themselves about the so-called coercive control tactics and their effects. Accordingly, the government's motion to reconsider should be denied.

    Respectfully submitted,

    JOSEPH NOCELLA, JR.
    United States Attorney

By:   /s/
    Kayla C. Bensing
    Kaitlin T. Farrell
    Nina C. Gupta
    Sean M. Fern
    Assistant U.S. Attorneys
    (718) 254-7000