**Ballard Spahr LLP**

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

May 24, 2025

*Via ECF*

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    <u>United States v. Nicole Daedone and Rachel Cherwitz, 23-CR-146</u>

Dear Judge Gujarati:

    The parties jointly submit this letter as a supplement to the joint requests to charge filed on December 9, 2024 and April 16, 2025. *See* Joint Requests to Charge, Dkt. No. 223, and Supplemental joint requests to charged, Dkt. No. 381.

I.    <u>Defense Request – Freedom of Religion Instruction</u>

    As set forth in the defendants' May 19, 2025 motion (Dkt. No. 381), the government continues to elicit testimony and evidence concerning OneTaste's philosophy through Daedone's teachings and ideology to suggest that they were brainwashed. The prosecution has not even concealed its theory of the case, that is, Daedone's teachings taught them to consent to everything because her teachings constituted a religious practice. The government argued:

> I think, as your Honor understands, our theory of the case is that the defendants put some the testifying witnesses, our victims, in psychological distress and also taught them concepts that taught them basically to consent to everything and to be willing to engage in certain sexual activities that even at the time they would have viewed as something they wouldn't consent to, but they did so because they were taught this was a philosophy or a religious practice that was good for them, and if they continued to do it they would reach enlightenment. This all goes to the psychological aspect of how the labor is forced. So this is a first hand account from the defendant's own words showing a flavor or an example of those sorts of teachings. (Tr. R. 190:22-191:10)

Honorable Diane Gujarati
May 24, 2025
Page 2

Time and time again, and over Defendants' objection, the government elicited testimony from its witnesses about Daedone's teachings on sex, orgasmic meditation, victimhood, and aversion practice (to name a few) which was then followed by testimony that those teachings were the reason the witness consented to conduct they otherwise would not have. (*e.g.* Tr. R. 259:1-11; 213:9-16; 1733:25-1734:9; 2306: 12-24) Witnesses expressly agreed that it was Daedone's *ideas and teachings* that were the reason they agreed to engage in certain sexual conduct.

Admission of such evidence violates the defendants' First Amendment right to religious freedom, and should not be considered by the jury in determining whether the defendants are guilty of the forced labor charge. Accordingly, the defense requests that the Court instruct the jury as follows:

> **You have heard evidence about certain spiritual beliefs, philosophies, teachings, and practices. The defendants are not on trial for their views, and you cannot consider such evidence in determining whether the government has met its burden. Specifically, the First Amendment guarantees to all persons in the United States the right to freedom of speech, freedom of religion, and freedom of association. Because of these constitutional guarantees, no one can be convicted of a crime simply on the basis of her beliefs, her expression of those beliefs, or her associations. Thus, in considering whether the government sustained its burden of proof, you may not consider any personal feelings you might have about such beliefs, teachings, and practices or the defendants' religion or spirituality.**

The government has repeatedly elicited testimony concerning OneTaste's teachings and spiritual beliefs. For example, the government has shown the jury clips of Nicole Daedone's teachings, elicited testimony concerning priests and priestesses, and shown videos of certain practices. Accordingly, the jury needs to be instructed that they cannot decide this case based on their own views of such practices. This instruction is based in the First Amendment, and supported by numerous cases. *U.S. v. Hale*, No. 03-CR-11, 2004 WL 5372837 (N.D. Ill. 2004) (providing instruction that the First Amendment also protects the right of individuals to maintain and express their beliefs, no matter how unpopular); *U.S. v. Ammon Bundy, et al.*, No. 3:16-cr-00051-BR., 2016 WL 9819346 (D. Or. 2016) (instructing the jury that defendants' political beliefs are not on trial, and that the defendants cannot be convicted based on unpopular beliefs); *U.S. v. Juraboev et al.*, No. 1:15-CR-00095, 2019 WL 11901576 (E.D.N.Y. 2019); *United States v. Kaziu*, 559 F. App'x 32, 35 (2d Cir. 2014); Model Federal Jury instructions, 2.92b.

Honorable Diane Gujarati
May 24, 2025
Page 3

      While there is support for such an instruction in cases charging material support, those cases are materially different from the instant case. *Compare Kaziu*, 599 F. App'x at 35. In those types of cases, the defendants are on trial for specific acts of violence, and the Court's instructions merely clarify that the defendants are not on trial for their beliefs. *See Juraboev et al.,* (instructing the jury that the First Amendment's freedom of religion protects an individual's right to believe, profess, practice and exercise whatever religious doctrine he chooses, and that the jury may not convict the defendant solely for exercising his religious beliefs). In contrast, here, there is specific evidence being elicited concerning spiritual beliefs and practices, and thus the jury needs to be instructed that it cannot consider its personal beliefs about the defendant's teachings or practices in determining whether the defendants committed the crime charged. [1]

---

[1] The defense also intends to request revised language on the knowledge and Intent instruction to include a good faith instruction, as we indicated to the Court yesterday, and will file a joint request on this point tomorrow. *See* Request 3 at Dkt. No. 223. The defense intends to request the following: "The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind. In determining what a person knew or what a person intended at a particular time, you may consider any statements made or acts done by that person and all other facts and circumstances received in evidence that may aid in your determination of that person's knowledge or intent. A defendant does not possess the requisite knowledge or intent if she acted in good faith, or held an honest belief that her actions (as charged in a given count) were proper and not in furtherance of any unlawful activity." *See United States v. Litvak*, 808 F.3d 160, 189 (2d Cir. 2015); *see also United States v. Chaudhri*, 134 F.4th 166, 186-7 (4th Cir. 2024) (to avoid running afoul of the First Amendment in the context of "threats" made in a forced labor case, the government must prove that the defendants possessed the requisite mens rea when they made the threats) (citing *Counterman v. Colorado*, 600 U.S. 66, 74-79)(2023)).

Honorable Diane Gujarati
May 24, 2025
Page 4

**Government Response**

As the government has repeatedly argued—and as the Court has already found—the defendants' arguments that the jury should not consider testimony and evidence concerning OneTaste's use of purported spiritual practices to direct individuals to, among other things, perform sexual acts and go into debt, is meritless. The law is squarely to the contrary. See, e.g., ECF Nos. 182 at 7-9; 381 at 3-6.

Because the defendants are wrong as a matter of law, the defendants' proposed instruction, in asserting that "you cannot consider such evidence in determining whether the government has met its burden," is also plainly wrong. Nor do the defendants own citations to their proposed instructions even support such a statement. Rather, the Court should instruct the jury, consistent with Kaziu, 559 F. App'x at 35, that:

> You can consider evidence of the defendants' spiritual beliefs, philosophies, teachings and practices in considering whether the government has established the elements of the charged conspiracy, including the defendants' motive or intent. However, the defendants are not on trial for having such views or beliefs and such evidence cannot act as a substitute for proof beyond a reasonable doubt of the elements of the crime charged.

Kaziu, 559 F. App'x at 35 (ruling that the First Amendment does not "prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent" and approving jury instructions in a case where "political beliefs were introduced to prove the mens rea element of the charged crime" where jury was instructed that the defendant was "not on trial for having extremist religious views or political views, and [that such evidence cannot] act as a substitute for proof beyond a reasonable doubt of the elements" (internal quotation marks and citations omitted)).

Further, specific reference to the First Amendment is not appropriate here, contrary to the defendants' proposed instruction. Indeed, the defendants, in proposing that the Court define First Amendment concepts to the jury, cite to model jury instructions for violations of 18 U.S.C. § 2339B, which prohibits providing material support to designated foreign terrorist organizations. See Model Federal Jury Instructions, § 2.92b. But that statute specifically provides "[n]othing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States." 18 U.S.C. § 2339B(i). Thus, the model jury instructions for § 2339B necessarily includes an instruction pertaining to that specific statutory language (that is not found in the forced labor statute). Even there, the instruction does not go so far as to say that "you cannot consider such evidence," as the defendants propose. Rather, it expressly indicates that the First Amendment is not a defense to a criminal charge. See Model Federal Jury Instructions, § 2.92b. Notably, it does not appear that the district court in Kaziu specifically cited to the

Honorable Diane Gujarati
May 24, 2025
Page 5

First Amendment.  See United States v. Kaziu, No. 12-1026-cr, ECF No. 98, at GA083, GA127-28 and GA170 (2d Cir.) (government appendix citing underlying instructions in Kaziu subsequently approved by the Second Circuit); Kaziu, 559 F. App'x at 35 (approvingly citing to same).

Here, because the defendants are wrong as a matter of law, the Court should instruct the jury with the government's proposed formulation, which is drawn directly from the Second Circuit's language in Kaziu.

II.      Defense Request – Jury Instruction on Shunning

The defense previously requested this instruction, however, in light of the testimony concerning "shunning", the defense further requests that the jury be instructed that shunning does not constitute serious harm.  The government has repeatedly elicited testimony from witnesses about "shunning," which has a specific religious meaning.  *See Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012).  The government's introduction of this word necessitates an instruction clarifying that, under First Amendment free exercise and association principles, "shunning" does not constitute serious harm.  Furthermore, the concept of shunning has been given in cases where the organization is not a religion.  *See Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1031 (7th Cir. 2024); *see also Menocal v. Geo Group, Inc.*, 635 F.Supp.3d 1151, 1189 (2022) (courts must "distinguish between improper threats or coercion and permissible warnings of adverse but legitimate consequences." Menocal, 635 F. Supp. 3d at 1189–90 (quoting *Headley*, 687 F.3d at 1180).  Accordingly, the defense requests that the Court add the bolded language below to the Adverse but Legitimate Consequences Instruction set forth in the Supplemental joint requests to charged, Dkt. No. 381:

Honorable Diane Gujarati
May 24, 2025
Page 6

>In addition, when considering whether a Defendant made "threats of serious harm" to the witness, you should consider that adverse but legitimate consequences or threats of adverse but legitimate consequences incident to an employment relationship do not constitute serious harm or threats of serious harm. Some warnings by an employer to an employee can be legitimate. Warnings of legitimate but adverse consequences of an employee's actions, standing alone, are not sufficient to violate the forced labor statute. It is for you to determine whether the statements made by the defendants to the alleged victim were legitimate warnings, or threats as I just defined that term to you.
>
>Also, in consideration of whether the Defendants conspired to make threats of serious harm to any individual, you should consider whether such alleged threats were covered by the First Amendment to the Constitution, which permits individuals who no longer wish to associate with someone, to lawfully make that choice to not associate. **For example, "shunning"—i.e., threats of being cut off from one's religious or spiritual community—is protected by the First Amendment to the Constitution. Shunning is an adverse but legitimate consequence of leaving one's religious or spiritual community and does not constitute serious harm.**

The Ninth Circuit analyzed "shunning" by a religious organization in a forced-labor case and concluded that threats of "shunning"—or "los[ing] contact with friends, family, or each other" is a legitimate consequence of leaving one's employment with a religious community—and is therefore not serious harm. *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012) ("A church is entitled to stop associating with someone who abandons it."). The government has injected the concept of shunning into the trial in a way that directly ties it to relevant and persuasive case law—and has therefore necessitated an instruction about shunning.

Critically, a religious or spiritual community can be a church for Free Exercise purposes even if it its doctrine is a "conglomeration" of various beliefs and practices, "none of which would be considered religious practices standing alone." *Dettmer v. Landon*, 799 F.2d 929, 931-32 (4th Cir. 1986) (rejecting that contrary argument by the government in holding that the Church of Wicca is a religion because it "occupies a place in the lives of its members parallel to that of more conventional religions"); *see also Stewart v. Richardson*, No.

15 CV 9034 (VB), 2016 U.S. Dist. LEXIS 178809, at *15-16 (S.D.N.Y. Dec. 27, 2016) (holding that a prisoner's Wiccan faith was a religion for purposes of RLUIPA).

As the U.S. Supreme Court and the Second Circuit have repeatedly emphasized, "'an expansive conception of religious belief' is appropriate." *Equal Opportunity Emp't Comm'n v. United Health Programs of Am., Inc.*, 213 F. Supp. 3d 377, 395 (E.D.N.Y. 2016) (quoting Patrick v. LeFevre, 745 F.2d 153, 158 (2d Cir. 1984)); *Fowler v. Rhode Island*, 345 U.S. 67, 70 (1953) ("[I]t is no business of courts to say that what is a religious practice or activity for one group is not religion under the protection of the First Amendment."); Frazee v. Ill. Dep't Emp't Sec., 489 U.S. 829, 834 (1989) ("[W]e reject the notion that, to claim the protection of the Free Exercise Clause, one must be responding to the commands of a particular religious organization.").

Indeed, in *United Health Programs*, this Court agreed with the EEOC that a program called Onionhead, which the employer created as a conflict-resolution tool, was a religion for the purposes of Title VII. Conducting a thorough analysis of longstanding precedent regarding the "expansive conception of religious belief," the Court's holding was based on, among other things, the fact that the employer's communications about Onionhead involved discussions about "God, spirituality, demons, Satan, divine destinies, miracles, higher guidance teachings, and a grail," they included many references to "spirituality" and "spiritual language," and the creator of Onionhead was referred to as a "spiritual advisor." *United Health Programs of Am., Inc.*, 213 F. Supp. 3d at 400–02. Very similar characteristics have been elicited by the government in testimony about OneTaste, and render OneTaste a religion for the purposes of the forced labor statute.

Furthermore, the concept of shunning is not limited to religious organizations. For example, in *Taylor*, 110 F.4th at 103, the Seventh Circuit held that it is not a TPVA violation for an organization to discontinue allowances or components that are part of its program and "may also remind the participants that leaving the program results in the cessation of the benefits of the program." Accordingly, the Court should include this instruction.

**Government Response**

The government opposes the entirety of the defendants' proposed Adverse but Legitimate Consequences instruction for the reasons already set forth in the parties' joint supplemental requests to charge, ECF No. 326. Further, the government opposes the defendants' novel instruction as to "shunning"—an instruction that it appears no court has ever given (or at least to which the defendants have provided no citations).

As an initial matter, as the government has already argued, that Daedone misappropriated aspects of many world religions to make her teachings more "theatrical," Tr. 2040, or lend credibility to the meditative sexual practices that she rebranded and marketed, does not render OneTaste a religion entitled to First Amendment protection. Thus, this case

Honorable Diane Gujarati
May 24, 2025
Page 8

is already readily distinguishable from <u>Headley</u>, which pertained to a recognized church, <u>see</u> <u>Headley</u>, 687 F.3d at 1174, and the remainder of the defendants' cited authority, which relies on the free exercise of religion. This case pertains to the defendants' actions in running OneTaste, which the defendants have repeatedly described throughout trial as a wellness start-up for-profit company. <u>See, e.g.</u>, Tr. 46, 959.

However, more fundamentally, the defendants' apparent efforts to rebrand as some kind of religion midway through this criminal trial is far removed from what this Court should instruct the jury as to the elements of forced labor conspiracy. The defendants' novel instruction purportedly exemplifying an "adverse but legitimate consequence," and with inappropriate reference to the First Amendment, finds no support in the law and would serve only to inject significant confusion in this Court's instructing the jury.

III.    <u>Joint Request – Jury Instruction on Dates Approximate</u>

The parties respectfully request that the Court instruct the jury as to the dates in the Indictment being approximate as follows:

> The Indictment refers to the criminal offense happening "in or about" and "between" certain dates. The proof does not need to establish with certainty the exact date of an alleged offense, and the Government does not have to prove that the Defendants committed the acts that are charged throughout the entire time period. Rather, it is sufficient if the evidence establishes beyond a reasonable doubt that an offense was committed during any part of the charged time frame.

<u>See, e.g.</u>, <u>United States v. Asainov</u>, 19-CR-402 (NGG), ECF No. 168-2 at 9 (E.D.N.Y.); <u>United States v. Wang</u>, 22-CR-230 (DC), ECF No. 103 at 36 (E.D.N.Y.) (noting the jury need not find that the defendant committed the crime of acting as an agent of a foreign government during the entire time period specified in the indictment and need only find that the defendant acted as an agent "at any time within that period").

IV.    <u>Joint Request – Jury Instruction on Immunized Testimony</u>

The parties respectfully request that the Court instruct the jury as to statutory immunity of a witness as follows:

> You have heard the testimony of a witness who has testified under a grant of immunity from this court. What this means is that the testimony of the witness may not be used against him in any criminal case, excepted in a prosecution for perjury, giving a false statement, or otherwise failing to comply with the immunity order of this court.

Honorable Diane Gujarati
May 24, 2025
Page 9

      Such testimony should be scrutinized by you with great care and you should act upon it with caution. If you believe it to be true, and determine to accept the testimony, you may give it such weight, if any, as you believe it deserves.

See Model Federal Jury Instructions, § 7-8 (as modified).

                                Respectfully submitted,

                                /s/Celia Cohen
                                /s/Michael Robotti
                                *Counsel for Rachel Cherwitz*
                                Ballard Spahr LLP

                                /s/Jennifer Bonjean
                                *Counsel for Nicole Daedone*
                                Bonjean Law Group, PLLC

Case 1:23-cr-00146-DG-RML   Document 389   Filed 05/24/25   Page 9 of 9 PageID #: 7243