

303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

April 25, 2025

**VIA ELECTRONIC FILING**
Hon. Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  *U.S. v. Cherwitz, et al.*, No. 23-CR-146 (DG)

Dear Judge Gujarati:

The government's proposed expert testimony in its entirety is inadmissible pursuant to Fed. R. Evid. 702, because the concepts of coercive control and coercive control tactics are drawn from research and studies on intimate partner violence and relationships between sex trafficking victims and their traffickers or "pimps." As Dr. Raghavan's report reflects, these concepts have never been applied in the context of organizational or "cult-like" settings which evades definition in any event. Whether coercive control tactics can be effectively utilized by a *community* or *organization* - as opposed to a discrete abuser with whom the alleged victim has a personal and intimate relationship - has never faced nor survived a *Daubert* challenge. Although Dr. Raghavan's report generally states that coercive control tactics can be used in a variety of contexts, she does not flesh out this opinion and cites to no data or research that examines how these concepts occur in "cult-like" environments, particularly those that are devoid of violence or threats of violence. In fact, the only support Dr. Raghavan points to is a "student thesis" written in August 2023 in which the student author noted that her paper was the *first* application of "coercion control to cultic study." Feliciano, Sarah Elena (2023). *An Application of the Coercive Control Framework to Cults. A Thesis Submitted in Partial Fulfillment of the Requirements for the Degree of Master of arts in Forensic Mental Health Counseling,* John Jay College of Criminal Justice, pg. 1. The student author further observed that "although coercive control is employed in various abusive contexts, subtle but important differences can exist between these contexts." *Id.* at pg. 9.

Simply put, Dr. Raghavan's expert opinions cannot be reliably applied to the circumstances of this case where the complainants have testified that they were compelled or "brainwashed" into certain conduct based on the teachings and ideas of Ms. Daedone which were "mutually enforced" by a community of like-minded people. (*see, e.g.,* Tr. R. 830, 1080, 1668, 1901-1902; 2401-2402). Some witnesses testified about the "system" that Ms. Daedone created and that the "system" was the source of the coercion. (Tr. R. 1081, 1204, 2305-2306, 2322-2323, 2348, 2923, 3073) Although the witnesses have used words



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

such as manipulation and isolation, they have all expressed that these tactics were employed from an organization or community rather than the specific conduct of the Defendants which makes the coercive control definitions and their application to the current fact pattern inapt – at least based on available research. This is particularly so where many of the alleged victims had virtually no one-on-one contact with Ms. Daedone herself. (Tr. R. 171, 2979, 2882) Dr. Raghavan's research underscores that coercive control tactics are effective in large part because of the nature of the relationship between the victim and her abuser. The relationship between the complainants and the Defendants and/or OneTaste are significantly different than those between intimate partners and traffickers and their victims (who often have their own intimate relationships). At the very least, applying concepts of coercive control to organizational settings with "cult-like" qualities must be tested for reliability at a robust *Daubert* hearing where the defense has a fair opportunity to cross-examine Dr. Raghavan and call its own expert witnesses on this complex and novel theory.

If Dr. Raghavan's expert opinion survives a *Daubert* challenge, Defendants will present testimony from two separate experts. Dr. Daniel Kreigman who will testify about organizational behavior, characteristics of a cult, and how coercive control tactics like those studied in intimate partner relationships cannot be reliably applied to the organizational settings. Dr. David Ley will testify about the scientific effects and benefits of Orgasmic Meditation (which is highly relevant to the question of whether OneTaste can be viewed as a cult and generally to rebut the government's characterization of OM as nothing more than a sexual activity) and will testify that there remains no well-validated, normed assessment to objectively or consistently measure coercive control.

A.  **Dr. Raghavan's Expert Opinions Regarding Coercive Control Have Never Been Applied In the Setting Presented Here or In the Context of the Unique Relationships between the Complaining Witnesses and the Defendants. For that Reason, Her Opinions Must be Precluded In Their Entirety. At the Very Least, This New Application Must Be Tested at a Vigorous *Daubert* Hearing.**

Federal Rule of Evidence 702 requires that expert testimony is based on sufficient facts or data, the testimony is the product of reliable principles and methods; and the expert reliably applies the principles and methods to the facts of the case. Expert testimony must be relevant and must rest on a reliable foundation. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597 (1993); *Riegel v. Medtronic,* 451 F. 3d 104, 127 (2d Cir. 2006).

As a preliminary matter, Dr. Raghavan clearly possesses sufficient expertise to testify about coercive control tactics used by *individuals* in the context of intimate partner violence and sex-trafficking relationships. However, the government seeks to apply this expert opinion in a context that has not been sufficiently studied or tested and certainly has



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

not faced a *Daubert* challenge, that is, coercive control in the context of an organization that has characteristics of a cult (a word that has no accepted definition). As Dr. Raghavan has written, coercive control tactics were first studied in the context of intimate partner violence. Raghavan, C., & Doychak, K. (2015). *Trauma-coerced bonding and victims of sex-trafficking: Where do we go from here?* International Journal Emergency Mental Health and Human Resilience, 17, 583, 587. Drawing from the intimate partner violence literature, scholars like Dr. Raghavan have made the case for applying coercive control concepts to sex-trafficking relationships since sex-trafficked women and their traffickers often have relationships that bear strong similarities to other intimate partner relationships. *Id.* Even this comparison is a relatively new one. It is an altogether different thing to apply these concepts to the type of relationships that existed between the complainants and the Defendants and the organization of OneTaste, which according to the government is a "cult" or has "cult-like" features. Indeed, many of the complainants in this case had virtually *no* direct contact with Ms. Daedone and point only to her teachings and ideas as the coercion that forced them to engage in labor or services that they otherwise would not have. Just by way of example, Michal Neria had only a couple of interactions with Ms. Daedone but when asked about her claims of coercion, she stated the following:

> Q. Okay. And I just want to get this straight, it's your testimony that Nicole's ideas is the reason you did everything that you did for an entire nine months at OneTaste; is that right?
>
> A. Yes. (Tr. R. 2934-2935)

This Court need look no further than Dr. Raghavan's own expert report to understand exactly how unprecedented and unreliable her opinion is in the instant context. The only data or support she cites is one of her own student's Masters' thesis entitled *An Application of the Coercive Control Framework to Cults. A Thesis Submitted in Partial Fulfillment of the Requirements for the Degree of Master of Arts in Forensic Mental Health Counseling.* This paper (which was never published in any peer-reviewed scholarly publication) openly concedes, "[t]his is the first application of coercion control to cultic study of its kind, with strong implications for improved communication between cult researchers." *Id.* at pg. 1. The methodology employed by this Masters' candidate amounted to interviewing 54 former "cult members" who were interviewed about their experiences and based on their own self-reporting disclosed whether "coercive control tactics" were used within the cult. Notably however, the author acknowledged that important differences can exist when applying these concepts in other contexts. *Id.* at pg. 9. She observed that "cult-like" organizations are very different structures than are intimate partner relationships or



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

relationships between traffickers and their victims because it is the "collective group" that is typically employing the tactics rather than one or a handful of abusers. *Id.* at 22-23.

Putting aside the problem of defining cult and the question of whether OneTaste can be considered a cult, a single Masters' thesis discussing the application of the coercive control tactics to an organization falls far short of providing sufficient data on which Dr. Raghavan can make reliable conclusions about the application of coercive control tactics in circumstances like those in this case. Separately, Dr. Raghavan is not an expert on "cults." As Defendants' experts would point out, because she cannot reliably testify that OneTaste meets the definition of cult, her testimony about coercive control tactics in a cult-like setting would invariably mislead the jury.

Each area of inquiry proposed by the government is improper. First, Dr. Raghavan's testimony defining coercive control tactics is irrelevant because the definitions were created for an entirely different context and relationship. Such definitions have never been reliably applied to an organizational setting where the relationships at issue are not akin to those in an intimate partner scenario. The government's reliance on cases involving the use of technical terms utilized in financial settings is inapposite, because in each of those cases, the definitions of financial terms were appropriately applied to the circumstances of the financial crime at issue in the case. Defendants do not quarrel with the general proposition that definitional terms can be an aid to the jury, but here those terms are misleading because they have never been applied in the circumstances of this case.

The government's reliance on *United States v. Zhong,* 26 F. 4th 536 (2d Cir. 2022) is inexplicable where the issue raised was not whether coercive control tactics can be applied to an organization setting. In fact, in *Zhong,* the Second Circuit cautioned on the use of expert testimony that intruded on the jury function. That risk is very real in this case. Allowing testimony of definitions of these tactics is highly misleading, because it signals to the jury that the definitions, in fact, apply in this setting, which is a question that has never been subject to the rigors of a *Daubert* hearing.

Just by way of example, one coercive control tactic identified by Dr. Raghavan is sexual coercion /abuse which "occurs when the victim resists unsuccessfully, does not give consent, or is complied under duress, which results in forced compliance." [Raghavan report at pg. 3] This definition has not been applied to scenarios like those at issue here where the complainants largely admit that they did *not* resist sexual activity or even that they consented under duress. Rather, they universally claim that they consented to sexual activity because they were "brainwashed" (a word that evades definition and has no accepted meaning). It would be improper and highly prejudicial to define this alleged coercive control tactic to the jury where the *definition* itself was created in the context of intimate partner violence and not the organization setting at issue here – a radically different scenario. At the very least, a *Daubert* inquiry would be necessary to allow any



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

definitional testimony because it simply has not been determined whether the definitions apply in the setting of this case.

With respect to the second area of inquiry, Dr. Raghavan's testimony that "coercive control tactics" may be used in different settings is again misleading and frankly irrelevant, because she cannot point to data or research that supports the opinion that the coercive control model has been reliably applied to an organization like OneTaste which Dr. Raghavan knows nothing about in any event. She did not examine OneTaste or its characteristics and has no idea what type of organization it is. Dr. Raghavan will presumably testify generally about the *relationship* between the abuser and the abused since her research focuses on this piece of the puzzle when examining how coercive control works, but the relationships at issue in this case are unique and there simply is no data from which to conclude that coercive control works the same in the context of OneTaste as it does in other types of settings that she has actually studied.

Lastly, it would by wildly improper to allow Dr. Raghavan to testify about the psychological effects of "coercive control tactics" since there is no data about this subject matter in the context of an organization like OneTaste which may or may not be a "cult" depending on who is defining it.

**B.     The Proposed Expert Testimony On the Coercive Control Tactics Will Not Serve As an Aid to Jury.**

As already discussed in the parties' joint letter filed at ECF Dkt. No. 385, the "coercive control tactics" about which Dr. Raghavan will testify are all concepts that the average jury is capable of understanding on his or her own. *United States v. Mejia,* 545 F. 3d 179, 194 (2d Cir. 2008). Indeed, such words as surveillance, manipulation, exploitation, isolation, intimidation, deprivation, and degradation are all words that are known by the jury and do not actually have a different meaning in the context of this case. Notably, the witnesses themselves have described these tactics and explained their effect on them. The government simply wants to interfere with the jury's application of those words to the facts of this case and bolster the witnesses' credibility by using an expert to tell the jury *how to apply those concepts* and *to credit the witnesses' narratives*. For the reasons stated above, Dr. Raghavan's testimony does not satisfy Fed. R. Evid. 702. That aside, the government will not be deprived of the ability to argue that these allegedly coercive tactics were used to overcome the witnesses' free will since the concepts are within the ken of the average juror and the witnesses themselves testified to the use of these tactics and how they impacted them. As this Court has pointed out on a number of occasions, the witnesses have used certain words colloquially and there is no reason that the jurors cannot consider their use of such words as manipulation, isolation, shaming etc. with their ordinary definitions.



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

**C.  If Necessary, Defendants Will Present the Testimony of Dr. Kreigman and Dr. Ley at the *Daubert* Hearing and at a Trial.**

Since it is clear that the government is offering expert testimony that has never been applied to a remotely similar context, a *Daubert* hearing is necessary to establish that the testimony is the product of reliable principles and methods, and that Dr. Raghavan reliably applied the principles and methods to the facts of the case.

If this Court permits Dr. Raghavan to testify about the types of settings in which coercive control tactics can be used, including "organizational or community settings," the Defendants must be afforded the opportunity to present expert testimony on the organizational or community settings that have cult-like characteristics. After all, the government's witnesses have been permitted to refer to OneTaste as a cult repeatedly which the jury will not have forgotten when hearing testimony from Dr. Raghavan. It should be noted that the government did not object to Dr. Kreigman's proposed testimony except as to any opinion about whether OneTaste is or is not a cult – an opinion Defendants do not intent to elicit.

Although Dr. Raghavan is not a cult expert and has done no original research on cults, she points to cult literature in her report as the basis for some of her opinions, which would clearly open the door to expert testimony about: (1) definitions of cult characteristics; (2) distinctions between cults and pernicious cults; and (3) application of cult characteristics. Dr. Kreigman will testify about these concepts and will further testify about some of the tactics used in cult-like organizations that has direct overlap with Dr. Raghavan's testimony, namely concepts around manipulation/exploitation. Dr. Kreigman will also testify that there is no accepted definition for "brainwashing" or "mind control", which Dr. Raghavan herself would presumably agree. Indeed, in the aforementioned Master's thesis on which Dr. Raghavan heavily relies, the student author cites authority which acknowledges that the term brainwashing "lacks in scientific credibility" and that such terms are "detrimental and disruptive to the advancement of cultic study." Feliciano at pg. 8. A jury must have the tools to assess whether OneTaste qualifies as a pernicious cult when deciding whether coercive control tactics have been utilized in that setting.

Dr. David Ley's testimony is also necessary. First, Dr. Ley will testify about the scientific research that shows the benefits of Orgasmic Meditation ("OM"), including as a legitimate and science-based trauma protocol. This testimony is relevant for several reasons, including to refute the government's theory that OM was simply a sexual act used as a service to financially enrich OneTaste and the Defendants. The government will invariably deny that it has taken this position, but the Court need only review AUSA Fern's opening statement to recognize the argument as specious. AUSA Fern referred to the practice of OM as a "genital rubbing course" that was forced on complainants, and most of



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

the witnesses have defined the OM practice as a "sexual service" at the prompting of the government.

Equally important, Dr. Ley's testimony about the science behind OM is relevant evidence on the question of whether OneTaste is actually a cult (as Dr. Raghavan will suggest and as witnesses have testified to). One characteristic of a cult is that the group's beliefs are not based on direct experience or testable ideas, but solely on faith in authoritative declarations. OneTaste's primary tenet was the practice of OM which *every* individual had the ability to directly experience. That the practice of OM is backed up by science makes it less likely that OneTaste's belief system is based only on authoritative declarations as would be present in a cult. Frankly, OneTaste has more empirical proof for its core tenet than does the religion of Christianity. Again, by putting the organizational aspects of OneTaste into issue as the government has repeatedly done, Defendants must be afforded the opportunity to refute these theories. As a reminder, Defendants moved to preclude discussion of cults and brainwashing which was overruled. Having opened the door to these concepts, Defendants cannot be denied the chance to refute them.

Dr. Ley will also testify about concepts around "grooming" and coercive control which are offshoots of the concept of grooming (e.g. manipulation, exploitation, surveillance, indoctrination, normalization, isolation). As this Court knows, some witnesses used the word "groomed" or "grooming" in their testimony and many of them explained that they were "trained" to engage in activity they did not want to do. As an example, Michelle Wright testified in response to questions about whether a writing she made during the relevant time reflected her feelings at the time, she testified:

> I believe what I said is that that is not the whole picture of how I felt at that time, I think I especially if it was something I was sending to Nicole, like I was very much curating how and what I was writing because I really wanted her to see me in a particular light, as we were I think at that time, I had been at OneTaste for many years. So I had *already been groomed and trained to present, act, feel like a very specific way.* (Tr. R. 2585-2586)

In short, Dr. Ley will testify about the challenges in defining and measuring such coercive control concepts and that there remains no well-validated, normed assessment to objectively or consistently measure coercive control.

In sum, this Court should deny the government's motion for reconsideration where Dr. Raghavan's expert opinions have not been applied to the setting at issue in this case. At the very least, this Court must conduct a *Daubert* hearing where these complex and novel issues can be assessed in a fact-finding inquiry.



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

Respectfully submitted,

/s/JENNIFER BONJEAN
*One of the attorneys for Nicole Daedone*
Bonjean Law Group, PLLC
303 Van Brunt Street, 1st Floor
Brooklyn, NY 11231
718-875-1850

/s/CELIA A. COHEN
/s/MICHAEL P. ROBOTTI
Celia A. Cohen
Michael P. Robotti
*Counsel for Rachel Cherwitz*
Ballard Spahr, LLC
1675 Broadway, 19th Floor
New York NY 10019
212-223-0200