**Ballard Spahr LLP**

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

May 26, 2025

*Via ECF*

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>United States v. Rachel Cherwitz and Nicole Daedone, 23-CR-146</u>

Dear Judge Gujarati:

The parties submit this joint motion concerning potential testimony by the government's upcoming witness, ▮▮▮▮▮▮.

<u>Defendants Position</u>:

As discussed in Court on May 23, 2025, the government may elicit testimony concerning potential hearsay statements of Ayries Blanck through Ms. ▮▮▮▮ on the ground that such statements are not being offered for their truth, but for the effect such statements had on this witness. Tr. 3206 at 7-24. For the reason set forth below, if such statements are permitted, the defense should be permitted to introduce *Giglio* material for purposes of impeachment. Due to the extensive impeachment evidence described below, however, the introduction of evidence concerning Blanck will lead to a trial within a trial, and therefore, the Court should preclude such testimony on 403 grounds.

I. <u>Legal Standard</u>

Federal Rule of Evidence 806 provides that "when a hearsay statement . . . has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Such evidence includes material the government has disclosed pursuant to *Giglio v. United States*, 405 U.S. 150 (1972). *See, e.g.*, *United States v. Jackson*, 345 F.3d 59, 70–71 (2d Cir. 2003) (holding that for *Giglio* material, a "witness" includes both a testifying witness and non-testifying hearsay declarant whose out-of-court statement the government seeks to

Honorable Diane Gujarati
May 26, 2025
Page 2

admit at trial). Indeed, courts in this Circuit have held that, when one party seeks to introduce a hearsay statement at trial, the introduction of that testimony opens the door for the other party to impeach the hearsay declarant using *Giglio* material, even when the hearsay declarant does not testify. *United States v. Uvino*, 590 F. Supp. 2d 372, 374–76 (E.D.N.Y. 2008). ("By permitting any impeachment evidence that would be admissible had the declarant testified, Rule 806 renders Rule 608's impeachment rules applicable to a declarant's out-of-court statements." (internal quotation marks omitted)).

II.   Argument

   A.   The Defense should be Permitted to Introduce *Giglio* material related to Ayries Blanck Should Hearsay Statements Be Permitted

The defendants should be permitted to use *Giglio* material to impeach Blanck's credibility if the government elicits Blanck's hearsay statements. Specifically, the government claimed that it may introduce testimony concerning the fact that Blanck made "a lot of complaints" during reconciliation telephone calls, to which neither Cherwitz nor Daedone were a party, to demonstrate the effect that Blanck's complaints had on the witness. Tr. at 3206: 6-24. Any testimony concerning hearsay from those telephone calls about Blanck's complaints would open up the door to *Giglio* material related to Blanck. The purpose of the testimony would be to demonstrate the impact that the complaints had on the witness. Given that Blanck fabricated evidence for this trial and created fake journals detailing her complaints at OneTaste, the jury is entitled to know about these facts, so that it can fully weigh and assess how the witness claims she felt at the time, and whether her feeling would have changed had she known about Blanck's veracity. *See Uvino*, 590 F. Supp. 2d at 375–76.

This scenario is similar to that of *Uvino*. *Id.* There, Judge Weinstein held that the defendants could introduce a Federal Bureau of Investigation ("FBI") agent's report to "attack the veracity of the exclamations of the hearsay declarants." *Uvino*, 590 F. Supp. 2d at 375–76. More specifically, the court permitted the defendants to read into evidence portions of the report that were inconsistent with the hearsay declarant's statements that the court admitted via a tape recording as excited utterances. *Id.* at 374–76. The court reasoned that "[e]vidence of prior dishonest acts of the declarants . . . is admissible so that the jury can weigh it in considering whether the exclamations of the alleged victims heard on the tape were in part or whole a fabrication." *Id.* at 375. *See also United States v. Friedman*, 854 F.2d 535, 570 (2d Cir. 1988) (specific issues of whether a declarant's past conduct may actually "cast doubt on the credibility of [his] statements," must be determined by comparing the circumstances of the past conduct with those surrounding the hearsay statements admitted into evidence. (citing *United States v. Serna*, 799 F.2d 842, 850 (2d Cir.1986).

Like in *Uvino*, the Court here should permit the defendants to introduce *Giglio* material to attack hearsay declarants' credibility. For example, if the testifying witness claims that Blanck's statements caused the witness to take certain action, the defense should be permitted to introduce evidence that Blanck repeatedly lied to the government and admitted to fabricating journals. This evidence is relevant because the witness may not have taken the same action had she known that Blanck was untrustworthy and fabricated information about her time at OneTaste. And without the ability to attack the hearsay declarant's credibility, the jury will be left with the impression that the complaints were true, and that one or both of the defendants directly caused Blanck's complaints.

Furthermore, the government intends to elicit testimony that Blanck was told to take certain action (Tr. at 3202: 5-20)—certain action that many individuals described in signed declarations in a separate legal proceeding as action that Blanck herself initiated and wanted to take. In fact, these signed declarations contradict what the government claims the witness will testify about. Thus, the defense should be permitted to offer material to impeach this testimony. *See Chavez-DeRemer v. Sarene Servs., Inc.,* 2025 U.S. Dist. LEXIS 72571, *7 (E.D.N.Y. 2025) ("The doctrine of 'impeachment by contradiction, which operates as a limited exception to Rule 608(b),' 'provides that when a witness puts certain facts at issue in his testimony, the [opposing party] may seek to rebut those facts, including by resorting to extrinsic evidence if necessary.'" (quoting *United States v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010)); *Friedman v. Rehal*, 618 F.3d 142 (2d Cir. 2010); *United States v. Pastor*, 419 F. Supp. 1318, 1324 (S.D.N.Y. 1975); 1 Weinstein's Evidence Manual § 12.01[4] (2024). Accordingly, the defendants' ability to impeach a hearsay declarant, like Blanck, with *Giglio* material is critical to the defense and the defendants' ability to paint a fair picture to the jury.

B. <u>Testimony Concerning Ayries Blanck should be Precluded</u>

Furthermore, the government should not be permitted to use other witnesses as a means to introduce testimony concerning Ayries Blanck. By injecting Blanck into this trial, the government will be creating a side show with the evidence that the defense will seek to introduce to counter Blanck's statements. Rule 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. If the government is permitted to introduce Blanck's hearsay statements into this trial, it will open the door to mountains of evidence demonstrating that Blanck lied when she was at OneTaste, and that she subsequently lied to the government and fabricated evidence both for Netflix and for this trial. Overall, this will be highly prejudicial and confusing to the jury, and will cause a trial within a trial. *See United States v. Aboumoussallem,* 726 F.2d 906, 912–13 (2d Cir.1984) (affirming exclusion of otherwise relevant similar act evidence under Rule 403 on the ground that confusion and delay caused by likely trial within a trial would have substantially outweighed

Honorable Diane Gujarati
May 26, 2025
Page 4

probative value of evidence). Accordingly, the government should be precluded from introducing any hearsay evidence concerning Blanck even if it claims that it is not being offered for its truth.

The Government's Position:

The government has already indicated that it does not intend to elicit Ayries Blanck's hearsay statements through the upcoming victim-witness. See Trial Tr. 3201-3213. Thus, there is no "hearsay declarant's" credibility to attack, which undermines the entire premise of the defendants' motion. The upcoming victim-witness lived and worked with Ms. Blanck and defendant Cherwitz, and observed Cherwitz and other OneTaste staff members' treatment of Ms. Blanck. The victim-witness will thus testify about her observations as a percipient witness. The government intends to elicit from the victim-witness statements Cherwitz made to Ms. Blanck, which are non-hearsay statements by a party-opponent, see Fed. R. Evid. 801(d)(2)(A), and statements other OneTaste staff members made to Ms. Blanck, which would be offered not for their truth but for the fact that they were said to Ms. Blanck and the subsequent effect such exchanges had on the victim-witness. The government will also elicit testimony about the victim-witness's observations of (i) Ms. Blanck's physical appearance and (ii) Ms. Blanck's reaction to certain events, such as crying or yelling (not including Ms. Blanck's statements). The victim-witness will also testify about participating in phone calls facilitated by OneTaste's Reconciliation Council with other OneTaste New York staff as instructed by Rachel Cherwitz (we intend to only elicit at a high level the topic of the discussions and not their substance), the victim-witness's observation of Ms. Blanck leaving OneTaste, and the effect Ms. Blanck's departure had on the victim-witness. The government will also elicit from the victim-witness testimony about her own reasons for departing OneTaste.

Although the government intends to avoid statements made by Ayries Blanck altogether for simplicity's sake, to the extent any Blanck statements were to come in for a non-truth purpose such as to show why the victim-witness took a certain action, that does not implicate Federal Rule of Evidence 806. Rule 806 and the related caselaw cited by the defense only address statements admitted under a hearsay exception for their truth. See Fed. R. Evid. 806 ("When a **hearsay statement** . . . has been admitted in evidence, the credibility of **the declarant** may be attacked . . . by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, **inconsistent with the declarant's hearsay statement**, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain." (emphasis added)); Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence **to prove the truth** of the matter asserted in the statement." (emphasis added)); see United States v. Friedman, 854 F.2d 535, 570 (2d Cir. 1988) ("Rule 806 does not set forth a test of

Honorable Diane Gujarati
May 26, 2025
Page 5

probative value but rather states generally the type of evidence that may be used to undermine **hearsay declarations**." (emphasis added)); United States v. Uvino, 590 F. Supp. 2d 372, 374 (E.D.N.Y. 2008), as amended (Dec. 19, 2008) ("The individuals are **hearsay declarants** whose excited utterances and statements have been admitted via the tape." (emphasis added)).

Given the government's intention to steer clear of Ayries Blanck's hearsay statements (and the defense's ability to make related objections during the witness's testimony), the government does not anticipate that the defense will have opportunity to impeach Ms. Blanck through introduction of her Giglio material, much less turn these proceedings into a mini-trial of Ms. Blanck.

The victim-witness's observations of Ms. Cherwitz's treatment of Ms. Blanck, and the aftermath of Ms. Blanck's departure, are highly probative evidence of the charged conspiracy. Ms. Blanck's post-conspiracy dishonest conduct[1] is wholly irrelevant to the question of what the victim-witness personally observed and the effect it had on the victim-witness during the time of the conspiracy. Further, attempting to admit evidence of Ms. Blanck's post-conspiracy conduct to determine whether the victim-witness would have taken a different action, as the defense suggests above, is neither relevant (because the victim-witness necessarily did not know about such conduct at the time) nor proper grounds for cross examination (because it calls for rampant speculation). Nor will the "jury be left with the impression that [Ms. Blanck's complaints] were true," because the government will not be eliciting the substance of those hearsay complaints for their truth and because it is axiomatic that juries are presumed to follow limiting instructions, which could easily be given here. Excluding all the victim-witness's testimony on this highly probative topic on the remote chance that the Court may admit some statement of Ms. Blanck's for its truth—which, again, the government will not seek—is tantamount to killing a mosquito with a cannon. The request to wholesale exclude such relevant and probative testimony should be denied.

Respectfully submitted,

/s/Celia Cohen
/s/Michael Robotti
*Counsel for Rachel Cherwitz*
Ballard Spahr LLP

---

[1] And, of course, it is not uncommon for someone to be both a victim of abuse and dishonest. Indeed, a keystone of the case is that the defendants groomed vulnerable, complicated individuals.

Honorable Diane Gujarati
May 26, 2025
Page 6

/s/Jennifer Bonjean
*Counsel for Nicole Daedone*
Bonjean Law Group, PLLC