**Ballard Spahr LLP**

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

June 1, 2025

*Via ECF*

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   United States v. Nicole Daedone and Rachel Cherwitz, 23-CR-146

Dear Judge Gujarati:

Per the Court's request, defendants Rachel Cherwitz and Nicole Daedone are filing a proffer of the relevance of David Hutchison's testimony. The below summarizes the testimony Ms. Cherwitz and Ms. Daedone will seek to elicit from Mr. Hutchison during their case-in-chief. The government's response follows.

**Defense Proffer**

As background, Mr. Hutchison is a sales and performance trainer, and he teaches a sales model known as "STEP-UP." He provided sales training for OneTaste employees and volunteers from approximately 2015 to 2017. Importantly, these OneTaste employees included Anthia Gillick and Michal Neria, two of the witnesses the government called during its case-in-chief.

Ms. Neria testified that she "participated in training in the coaching program," where she learned "how to sell OneTaste courses" through the "STEP-Up Method." *See* Tr. at 2737:6–12. Similarly, Ms. Gillick testified that OneTaste flew her to San Francisco to complete sales training with Tony Robbins and "one of the head salespeople." *See* Tr. at 3932:4–8. This "head sales[person]" was David Hutchison. Ms. Gillick was then permitted, on direct examination, to testify to the sales tactics she learned in these sessions. For example, Ms. Gillick testified that she learned to "find out something that was like a very deep personal pain point in someone's life . . . that they felt like very overwhelmed by. And then you would kind of dig into that and amp that up and ask them questions like: What would you do if that never changed?" *Id.* at 3932: 9–14. Ms. Gillick also explained that following these training sessions, she had an "exploratory session" with Ms. Cherwitz where they employed these sales

Honorable Diane Gujarati
June 1, 2025
Page 2

tactics: "it was functionally an hour-long version of, like, take people to your pain process that I described earlier." *Id.* at 4012:12–14. Ms. Gillick confirmed that these sales tactics were "the basis of all sales at OneTaste." *Id.* at 4012:25. Ms. Gillick provided the STEP-UP sales presentation to the government, which Mr. Hutchison used to train the OneTaste sales team. *See* 3500-AG-27; ONETASTE 000168254–315. The government marked that sales training presentation as a government exhibit, which it used to attempt to refresh Mr. Kandell's recollection about the STEP-UP method. *See* GX3163; Tr. at 3680:5 –25, 3682:3–16.

Calling Mr. Hutchison to the stand during Ms. Cherwitz and Ms. Daedone's case-in-chief is critical to the defense. Mr. Hutchison will provide context for the jury regarding his sales teachings and methodology, which, as explained above, the government sought to elicit from its own witnesses. The government has elicited testimony about this sales methodology that is misleading, suggesting there is something nefarious about a sales team trying to discuss "pain" with a potential client. But there is not, and the defense will call Mr. Hutchison to make that key point.

Mr. Hutchison will testify about the sales methods that he taught to the OneTaste sales team, including to Ms. Gillick and Ms. Neria. The "STEP-UP" model stresses the importance of showing interest in a potential client and discussing with the potential client their concerns and needs, so that the salesperson can best discuss how to address a potential client's needs. More specifically, Mr. Hutchison teaches that addressing a potential client's pain or problem motivates them to seek help, which creates the opportunity for a company to offer a unique solution to the issue. Mr. Hutchison's testimony thus is directly relevant to the jury's understanding of OneTaste's sales, especially where the government has repeatedly elicited testimony suggesting that its tactics were somehow improper. To effectively present a defense, the defense must be permitted to rebut the government's allegations regarding OneTaste's sales methods. Accordingly, the Court should permit Ms. Cherwitz and Ms. Daedone to call Mr. Hutchison to the stand during their case-in-chief.

**Government Response**

The Court should not permit the defendants to offer the testimony of a purported sales trainer, Mr. Hutchison, who provided one-off presentations to OneTaste's sales team. While Mr. Hutchison may be able to recount what was said and what he meant during those presentations, that hearsay testimony has no relevance to the defendants' conduct or decision-making or even the sales practices of the defendants or witnesses at issue in this case.

Mr. Hutchison's testimony is irrelevant under Rule 401. There is a fundamental disconnect between the abstract content of a sales presentation and how, if at all, that content is actually implemented in a real-world, high-pressure sales environment. What matters in this case is not what Mr. Hutchison may have or even intended to convey, but how Ms. Neria and Ms. Gillick actually understood and applied—or misapplied—those teachings

Honorable Diane Gujarati
June 1, 2025
Page 3

in the specific context of OneTaste's sales operations. Any suggestion that a presentation by Mr. Hutchison accurately reflects the behavior and understanding of individual sales team members, who were groomed and trained by Rachel Cherwitz for the entirety of their time at OneTaste, is speculative at best.

Moreover, the paucity of testimony in this case on this subject weighs against allowing Mr. Hutchison to introduce testimony as to what he intended to convey through his lectures. For instance, Ms. Neria simply testified that she participated in a training called the "Step-Up Method" but that defendant Cherwitz also took Ms. Neria "under her wing and told [Ms. Neria] she would make [Ms. Neria] a great saleswoman." Tr. 2737. On cross-examination, the entirety of Ms. Neria's testimony on this subject is as follows:

> Q: All right. And you talked briefly about the set-up [*sic*] sales model. Do you remember that?
> A: Step up.
> Q: I'm sorry. Step-up Sales Model. And that's a sales model that's developed by outside consultants, right?
> A: Who OneTaste hired during the Coaching Program to teach us about Step-up, yea.
> Q: Yes, okay. And that the goal there is to help people solve the issues that they're facing, right?
> A: That's a very nice way of putting it.
> Q: And it's – the Step-up Sales Model, in fact, was a model used by other companies other than OneTaste, correct?
> A: The only experience that I have with it is in OneTaste, so I don't know.

Tr. 2861. The defendants' raising this topic on cross-examination does not somehow transform it into relevant testimony for a third-party sales trainer.

Similarly, Ms. Gillick simply testified that she was trained to "tak[e] someone to their pain" and that she understood this to mean that one would "find out something that was like a very deep personal pain point in someone's life, like that was – that was current and that they felt like very overwhelmed by. And then you would kind of dig into that and amp that up and ask them questions like: What would you do if that never changed?" Tr. 3932. Ms. Gillick continued: "[O]nce I . . . figured out what the pain point was, I would like . . . turn it up and ask some questions like: How . . . would you feel if that never changed? And then the next step was to like offer them the solution to letting that change, which was the [OneTaste] course." Tr. 3933. Ms. Gillick also testified to OneTaste's practice of having her track personal information about sales leads, like getting a divorce or having a crush, in Salesforce, that would help close a sale. Tr. 3931. To the extent the defendants wished to introduce the effect of Mr. Hutchison's presentations for their effect on these witnesses, they

Honorable Diane Gujarati
June 1, 2025
Page 4

should have cross examined these witnesses on such topics.  They should not now be permitted to introduce external, irrelevant hearsay testimony.

      Moreover, at least based on defense counsel's proffer, Mr. Hutchison was not an employee of OneTaste; he was an external contractor with no evident understanding of the company's internal sales culture, customer base, or the intense performance pressures its leadership imposed on their employees.  According to defense counsel's proffer, his training was not tailored to OneTaste's operational reality and was delivered in a one-time format without any follow-up, supervision or measurement of its impact.  Critically, Mr. Hutchison had no role in monitoring, managing or evaluating the conduct of the sales team following his presentation.  He cannot speak to how his content was received, interpreted or applied by the sales staff, much less the witnesses in this case, nor can he offer any insight into the team's culture or compliance with his teachings.  His lack of firsthand knowledge—other than to say what he meant by "pain"—renders his testimony both speculative and unreliable.  Thus, the defendants appear to be using Mr. Hutchison's testimony to construct a compliance façade and thereby use the fact of training as a legal shield—arguing that because training occurred, misconduct could not have followed.  But this is a non sequitur: mere existence of training on a sales strategy used by other companies is not evidence of actual compliance with those teachings or good faith conduct by OneTaste.

      What is relevant in this case is the testimony from individuals who were actually involved with OneTaste regarding OneTaste's high-pressure environment and escalating sales quotas, and, more particularly, Daedone's and Cherwitz's involvement in sales vis-à-vis their employees and volunteers, who were performing sales labor for them.  See, e.g., Tr. 4012 (Ms. Gillick explaining that she discussed the "pain" process with defendant Cherwitz).  Allowing Mr. Hutchison's testimony to be admitted—given his lack of personal knowledge about how his trainings were implemented and understood within the company—

Honorable Diane Gujarati
June 1, 2025
Page 5

would give the jury a misleading impression of the company's sales practices and risk significant confusion of the issues. See Fed. R. Evid. 403.

                              Respectfully submitted,

                              /s/CELIA A. COHEN
                              /s/MICHAEL P. ROBOTTI
                              Celia A. Cohen
                              Michael P. Robotti
                              *Counsel for Rachel Cherwitz*
                              Ballard Spahr LLP
                              1675 Broadway, 19th Floor
                              New York, NY 10019
                              212-223-0200

                              /s/JENNIFER BONJEAN
                              /s/KELSEY H. KILLION
                              Jennifer Bonjean
                              Kelsey H. Killion
                              *Counsel for Nicole Daedone*
                              Bonjean Law Group, PLLC
                              303 Van Brunt Street, 1st Floor
                              Brooklyn, NY 11231
                              718-875-1850