1

```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NEW YORK
 2
      - - - - - - - - - - - - - - - - X
 3
      UNITED STATES OF AMERICA,      : 23-CR-00146-DG-JAM
 4                                   :
                                     :
 5                                   : United States Courthouse
            -against-                : Brooklyn, New York
 6                                   :
                                     :
 7     RACHEL CHERWITZ, et al.,      : Tuesday, April 22, 2025
                                     : 11:00 a.m.
 8            Defendants.            :
                                     :
 9                                   :
                                     :
10    - - - - - - - - - - - - - - - - X
          TRANSCRIPT OF CRIMINAL CAUSE FOR PRETRIAL CONFERENCE
11             BEFORE THE HONORABLE JOSEPH A. MARUTOLLO
                 UNITED STATES MAGISTRATE JUDGE
12
                      A P P E A R A N C E S :
13
      For the Government: JOHN J. DURHAM, ESQ.
14                        United States Attorney
                          Eastern District of New York
15                        271 Cadman Plaza East
                          Brooklyn, New York 11201
16                   BY:  KAYLA C. BENSING, ESQ.
                          NINA C. GUPTA, ESQ.
17                        KAITLIN T. FARRELL, ESQ.
                          SEAN M. FERN, ESQ.
18                        Assistant United States Attorneys

19    For Defendant       BALLARD SPAHR LLP
      Cherwitz:             1675 Broadway, 19th Floor
20                          New York, New York 10019
                       BY: CELIA COHEN, ESQ.
21                          MICHAEL P. ROBOTTI, ESQ.
22    For Defendant       BONJEAN LAW GROUP, PLLC
      Daedone:              303 Van Brunt Street, 1st Floor
                            Brooklyn, New York 11231
23                     BY:  JENNIFER A. BONJEAN, ESQ.
                            KELSEY H. KILLION, ESQ.
24
25    Court Reporter:  Nicole J. Sesta, RPR, RMR, CRR
      Proceedings recorded by computerized stenography.  Transcript
      produced by Computer-aided Transcription.
```

2

1                    (In open court.)

2          THE COURTROOM DEPUTY:  Criminal cause for a pretrial

3    conference, Docket No. 23-CR-146, United States versus

4    Cherwitz, et al.  Would the parties please state your

5    appearances, starting with the government.

6          MS. BENSING:  Good morning, Your Honor.  Kayla

7    Bensing, Kaitlin Farrell, Nina Gupta, and Sean Fern, along

8    with paralegal specialists Liam McNett and Marlane Bosler for

9    the government.

10         THE COURT:  Good morning.

11         MS. COHEN:  Good morning, Your Honor.  Celia Cohen

12   and Michael Robotti on behalf of Rachel Cherwitz.

13         THE COURT:  Good morning.

14         MS. BONJEAN:  Good morning, Your Honor.  Jennifer

15   Bonjean, B-O-N-J-E-A-N, on behalf of Ms. Daedone.

16         MS. KILLION:  Good morning, Your Honor.  Kelsey

17   Killion, K-I-L-L-I-O-N, on behalf of Ms. Daedone, as well.

18         THE COURT:  Good morning, everyone.  Again, I'm the

19   magistrate judge assigned solely for jury selection in this

20   matter.  The parties have already consented twice to

21   magistrate judge jurisdiction here for purposes of jury

22   selection.

23         The purpose of today's proceeding is just to go

24   through what that jury selection will look like.  I appreciate

25   that we have done this with some of you already, but in light

3

1    of the change to Ms. Cherwitz's representation, I thought it

2    would make sense to walk through what I'll be doing and we can

3    talk about any issues, and hopefully there are none.  So

4    hopefully this should be a pretty brief conference this

5    morning.

6            First, just as logistical information, a reminder,

7    the jury selection will commence at 9:30 a.m. on May 5, 2025,

8    in this courtroom, 4B South.  I would just ask that counsel be

9    here early, by about 9:00.  I intend to start promptly.  In

10   terms of the process itself, I'm just going to go through what

11   I'm going to be saying, frankly, as I said previously.  So

12   first, we would call 40 prospective jurors to sit in the jury

13   box and the first row of the gallery area.  We'll have enough

14   chairs to ensure that that's possible.

15           I'll then read the names of the prospective jurors,

16   1 through 40.  There will be placards set up so that you'll

17   know where each person is sitting.  The person sitting in

18   chair one will have a placard saying one, two, three, and so

19   forth.  I'll then talk about the importance of jury service,

20   and that only if they have an extraordinary personal hardship

21   that prevents them from serving in the case will that be a

22   reason to raise that with the Court, but that the hardship

23   needs to be extraordinary for the prospective juror to be

24   excused.

25           I will then introduce the case.  I would note that

4

1   Judge Gujarati will preside over the trial, that the trial is

2   likely to begin the next day, that would be on May 6th.  The

3   trial is likely to last approximately six weeks, and that my

4   understanding is that the schedule will be from 9:30 a.m. to

5   5:30 p.m., with breaks in the morning and the afternoon.

6          As discussed at the last jury selection conference a

7   few months ago, it will be a jury of 12 persons and 6

8   alternate jurors.  I'm going to note that the criminal

9   prosecution is brought on behalf of the government by U.S.

10  Attorney John Durham.  I would like to just identify the lead

11  AUSA.  Is that Ms. Bensing?

12          MS. BENSING:  Yes, Your Honor.

13          THE COURT:  And then, as I discussed at the last

14  conference, I would ask Ms. Bensing to identify the people at

15  counsel table.  Then I would note -- and that would be the

16  only communication that the government would have with the

17  prospective jurors in this setting.

18          Then I would note that there are two defendants,

19  Ms. Rachel Cherwitz and Ms. Nicole Daedone.  I would say

20  that -- again, I would ask the lead counsel for each side to

21  identify the people at their table.  So Ms. Cohen I would ask

22  you to rise and introduce yourself, and introduce those with

23  you at counsel table.  And then, Ms. Bonjean, I would ask you

24  to rise and introduce those at counsel table.

25          Again, as with the government, that would be the

5

1    only communication you have directly in this setting with the

2    prospective jury.  I would note a little bit further about the

3    fact that this prosecution is brought in the name of the

4    United States, and that does not entitle the government to any

5    greater or lesser consideration than any party that appears in

6    court.

7              I'll then talk through the voir dire process.  And I

8    won't go into all that detail today, but I will explain what

9    that process looks like, what that inquiry involves, and to

10   really emphasize that the prospective jurors need to answer my

11   questions carefully and honestly, and that if at any point

12   they are not comfortable answering in front of others, they

13   can come to sidebar, which will be in this area right over

14   here to my left.  Then I would ask my deputy to administer the

15   oath.

16             By the way, while we're talking about sidebar, I

17   think I had asked this the last time.  On the defendants'

18   side, Ms. Cherwitz and Ms. Daedone, are you also planning

19   physically to come to sidebar or only counsel?

20             MS. COHEN:  Yes, Your Honor.

21             MS. BONJEAN:  Yes, Your Honor.

22             THE COURT:  Again, just as a logistical matter, I'll

23   get to this in a few minutes, but when we're at sidebar,

24   again, I would be the only person speaking to the prospective

25   juror.  But if there's an issue, I would ask the juror to step

6

1   aside and talk to the attorneys, and I'll ask follow-up

2   questions as necessary.

3           I will note that the charges in this case, in a

4   criminal case, are set forth in an indictment entitled United

5   States versus Rachel Cherwitz and Nicole Daedone.  I would

6   note that an indictment is a document.  It's a formal method

7   of accusing a defendant of a crime.  It is not evidence of any

8   kind against any defendant.  I would then summarize the case

9   as follows.

10          I would say that the defendants in this case are

11  Nicole Daedone and Rachel Cherwitz.  Both defendants are

12  charged with one count of forced labor conspiracy in violation

13  of Title 18 U.S.C. Sections 1589(a) through (b), 1594(b), and

14  3551.  I would note that the defendants deny the charges, have

15  pleaded not guilty, and are presumed innocent.

16          I would then go through the government's burden that

17  each defendant is presumed to be innocent, and that the

18  defendants have no burden.  I would then indicate that the 40

19  people whose names have been called would make up our

20  prospective jury panel at this point, but I would encourage

21  Ms. Bonjean had asked also at the last conference that

22  everyone in the room pay attention, even if they're not in one

23  of the 40 seats because they should be making mental notes if

24  any of the answers to any of my questions would be yes.  And

25  I'll be asking -- most of the questions will be yes or no

7

1  questions.

2          So then I would start asking general questions and,

3  again, if the answer is yes, I would have them raise their

4  hand.  And if I have follow-up questions I might ask them to

5  come to sidebar, depending on the nature of the question or

6  the answer.

7          So first I would ask general questions, which would

8  involve knowledge of court participants, whether that means

9  the attorneys, the parties, and whether there's anything about

10  the charges that were described that would make it difficult

11  for the prospective juror to be fair and impartial.

12          I would then go through the ability to serve and to

13  emphasize that only where serving on a jury would be extremely

14  burdensome, either because of an unavoidable conflict or

15  because of a serious difficulty, would that be a factor that

16  would need to be raised.  I would have all of those

17  discussions at sidebar.  So if people do have issues, they can

18  talk about it at sidebar and we would address that as

19  necessary.

20          I would also ask if anyone has difficulty speaking,

21  reading, or understanding English, as well as whether anyone

22  has a disability or a mental or physical condition that would

23  make it difficult for them to sit as a juror in this case.

24          Next I would talk through principals of law.  I

25  would go through the several fundamental legal principles that

8

1    apply to this and every criminal case.  I would talk about the

2    defendants presuming to be -- is presumed to be innocent, and

3    whether anyone is not able to accept and apply this principle

4    of law.  Similarly, I talk through the government bearing the

5    burden, the right of the defendant to remain silent and not

6    having to testify, as well as the fact that the role of the

7    jury is to decide the facts, and that also that all persons

8    are entitled to equal treatment under the law regardless of

9    race, national origin, ethnic background, immigration status,

10   sex, or age, and whether anyone would have any difficulty

11   following that instruction.

12          Next I would turn to whether anyone, and when I say

13   anyone I mean the prospective juror, a family member, or a

14   close friend, has taken any courses in the law, attended law

15   school, or worked for a lawyer or a law firm or a judge or a

16   courthouse.

17          After that I would ask about whether the prospective

18   juror or a family member or a close friend ever worked for or

19   had business dealings with any law enforcement agency.  I

20   would include, specifically, the United States Department of

21   Justice, the U.S. Attorney's Office for the Eastern District

22   of New York, the FBI, among other agencies.

23          I would ask if any of them have opinions or beliefs

24   concerning law enforcement officers that would make it

25   difficult for you to be fair and impartial in this case.  I

9

1   would also emphasize that you may hear testimony from or about

2   law enforcement witnesses in this case, and that they would be

3   instructed that their testimony is not entitled to any greater

4   or lesser weight than that of any other witness simply because

5   they're law enforcement officers.  I would ask if anyone would

6   not be able to follow that instruction.

7           Next, I would ask if any of the prospective jurors

8   have ever been accused of a crime, charged with a crime, or

9   subject to a criminal investigation.  I would ask for any

10  responses I would have them come to sidebar.  I would also ask

11  whether they or any of their family members or close friends

12  have ever been a party to any legal action, participated in a

13  lawsuit in any capacity, including a divorce proceeding, a

14  landlord tenant case, car accident.  I'd also have them come

15  to sidebar on that end, as well.

16          Next, I would ask if any of them, any of the

17  prospective jurors, their family members or close friends have

18  ever been the victim of or a witness to a crime.  Again, I

19  would have them come to sidebar if their answer is in the

20  affirmative.  I would also ask whether they, whether the

21  prospective juror, family members, or close friends, have ever

22  been subject to sexual harassment, sexual abuse, or any other

23  kind of sexual misconduct.  Again, if they answer by raising

24  their hands, I would have them come to sidebar.

25         Next, I will hand out a sheet that lists the

1  potential witnesses and the individual entities and other

2  locations that will be mentioned at trial.  I'll talk about

3  that in a few minutes in more detail.  But similar to what I

4  said at the prior jury selection conference, that will

5  basically encompass all the names that will be uttered during

6  the trial, and if anyone knows anyone on those lists, or

7  anything about those terms that might affect their ability to

8  be fair and impartial in this case.

9          And I'll give the parties, obviously, time after my

10  discussion here to raise any issues, so I'll go through the

11  entire proposed script.  But next I would go through case

12  specific questions.  These are questions that have been

13  amended based on the last conference in this case.  It's

14  related to jury selection.

15          So first I would ask, and I would say, that this

16  case deals with a health and wellness organization called

17  OneTaste.  I would ask, has anyone ever heard about, watched

18  anything about, or read related to OneTaste or orgasmic

19  meditation, which is a form of meditation typically involving

20  the methodical stroking of a woman's genitals for a period of

21  15 minutes.  If so, please come to sidebar.

22          Next, I would ask, have you, any of your family

23  members, or your close friends ever participated in OneTaste

24  or a OneTaste event or orgasmic meditation.  If so, please

25  come to sidebar.  I would then ask have you, any of your

11

1  family members, or your close friends ever had any training

2  in, worked in, participated in any of the following areas or

3  subject matters, self help, wellness, substance abuse or

4  addiction counseling, trauma, or sexual abuse counseling,

5  meditation, adult entertainment, or sex work.  And then, if

6  so, please come to the sidebar.

7          I would then ask, you may hear or see evidence in

8  this case regarding sexual acts involving bondage, discipline,

9  dominance submission, BBSM, and sex acts in which people are

10 engaging in relationships with multiple sexual partners.  Is

11 there anything about receiving or hearing such evidence that

12 would prevent you from being a fair and impartial juror in

13 this case and then if so, please come to sidebar.

14         I would then ask that you may hear or see evidence

15 in this case referring to cults.  Is there anything about

16 receiving or hearing such evidence that would prevent you from

17 being a fair and impartial juror in this case.  And if so,

18 please come to sidebar.

19         And then lastly in this section on case specific

20 questions, I would ask this case involves allegations of

21 forced labor.  Have you, any of your family members, or your

22 close friends ever been a victim or otherwise involved in an

23 incident involving forced labor, unpaid work, unpaid overtime,

24 or litigation involving improper conduct at a place of

25 employment.  If so, please come to sidebar.

12

1          Next, I would ask a more general question.  Do any

2    of you hold religious beliefs that would prevent you from

3    passing judgment on another person.  I then would have a final

4    question in this portion of the jury selection that I would

5    ask if there's any other reason why you could not sit on this

6    jury and render a fair and impartial verdict based on the

7    evidence presented to you and the judge's instructions of the

8    law.  I would then ask the attorneys to come to sidebar to see

9    if they have any additional questions for anyone.

10          I would also ask if the attorneys have any

11   challenges for cause at that point.  Next, I would go into the

12   background questions for each person.  And similar to what I

13   discussed at the last conference, I will go through about

14   eight questions in which there will be answers provided for

15   each prospective juror.  So those questions would involve the

16   following:

17          First, where do you live, do you own or rent, how

18   long have you lived there.  Second, what schooling have you

19   had, and if there's college or an advanced degree, where did

20   you receive your degree, what area.  Third, are you employed

21   outside of the home.  If you're retired or unemployed, where

22   did you last work.

23          Fourth, do you live with anyone and how are they

24   employed.  Fifth, what do you do in your free time, any

25   hobbies or special interests or any organizations to which you

13

1    belong.  Sixth, what is your source for news, are there any
2    newspapers, magazines, or TV programs that you regularly read
3    or watch.  Seventh, have you ever served on a jury and then I
4    go through how many times; if they say yes, whether it was
5    federal or state, if it was grand jury, how long ago was it,
6    civil or criminal and the like.  I would ask, without telling
7    us what the verdict was, whether they were able to reach a
8    verdict.

9          Eighth, I would ask if selected as a juror in this
10   case would you keep an open mind until all the evidence and
11   arguments have been presented and then decide the case fairly
12   and impartially based only on the evidence presented at trial
13   and the law as the Court explains it to you.  I'll then ask,
14   again, for a sidebar for the attorneys to raise any additional
15   questions, as necessary.  I would ask, again, at sidebar if
16   there are any additional challenges for cause.

17         Then I would take a break.  We would then do the
18   peremptory challenges.  What I would ask is for the defendants
19   to stay in the courtroom.  I would ask the government to come
20   to the jury room.  We would have peremptory challenges charts
21   that my deputy will hand out at that point to make the process
22   a little easier.

23         And then eventually I'd have the defendants come
24   into the jury room, as well, with the government attorneys,
25   and we would then go through the peremptory strikes and I

1  confirm whether the jury was acceptable.  We'd return here and

2  I'd excuse the names of those who were not selected.

3          And then my understanding is that the trial itself

4  would then start the following day.  That may be subject to

5  change, so just plan accordingly, but my understanding is it

6  would be the following day.  And that would be the end of it.

7  Obviously I'd gather information from the jurors that we would

8  need.  That's my general overview.

9          Before I go and discuss further the parties'

10  submissions concerning the names of individuals, entities, and

11  places, any questions, comments at this point?  Let me hear

12  first from the government.

13          MS. BENSING:  Thank you, Your Honor.  I just have

14  one clarification question.  So there will be the 40 jurors

15  who we're trying to get a group that we'll then do strikes on.

16  Will the rest of the group that day be sitting in the back?

17          THE COURT:  The plan right now is for as many people

18  as possible to fit in the back, as well.  But I appreciate

19  that there may be a large number of people here.  So we will

20  at minimum have the 40 in the well area, in this portion of

21  the courtroom, that will be seated and hopefully as many seats

22  as possible from the prospective venire that would be in the

23  back, as well.  If there's not room for them though, for the

24  prospective juror members, frankly what I think will end up

25  happening is that I'm just going to have to repeat myself a

15

1   few times.

2        MS. BENSING:  Your Honor, on that point I'm

3   wondering if it would make sense to have an overflow courtroom

4   for spectators just so that we can keep the jury selection

5   moving and we can fit more folks on the venire panel inside

6   the courtroom itself, so the Court isn't having to repeat

7   itself and we can move a little bit faster.

8        THE COURT:  At this stage I'm going to deny your

9   request for an overflow courtroom, but I take your point.

10  However, again, I plan to move this as efficiently as possible

11  and to the extent I need to repeat myself, I will.  I have

12  obviously allotted time for the full day, but I think given

13  where things are we'll try to move this as efficiently as

14  possible.

15       MS. BENSING:  Thank you, Your Honor.

16       THE COURT:  Let me hear first from Ms. Cohen.  Do

17  you need a minute to consult with one another?

18       MS. COHEN:  Yes, Your Honor.

19       (Pause.)

20       MS. COHEN:  Thank you, Your Honor.  So of course we

21  weren't here as counsel the last time, but I've just been

22  reviewing the transcript.  We would stand on our same

23  objection regarding the instruction about cult, because right

24  now I think that is an open issue.  We object to the use of

25  that at trial at all.

16

1          And so, if that is precluded, obviously we would not

2     want that instruction to the potential jurors.  We think it's

3     prejudicial.

4          THE COURT:  Just to be clear, for the record, that

5     was the question that said you may hear or see evidence in

6     this case referring to cults.  Is there anything about

7     receiving or hearing such evidence that would prevent you from

8     being a fair and impartial juror in this case?

9          MS. COHEN:  Yes, that is the question.

10          THE COURT:  Are you proposing a different question

11     or is it at this point you just want that question eliminated?

12          MS. COHEN:  Yes.  We would say right now that we

13     want it eliminated.  Of course it depends on the ruling from

14     Judge Gujarati.  If there is going to be evidence of this

15     introduced at trial, which we would object to, then we would

16     want to think about whether we would want the instruction or

17     not, not instruction, I'm sorry.  We would want the

18     questioning.

19          THE COURT:  I think on that particular issue that

20     may be something where we can address that morning of the jury

21     selection.  At that point, if there's rulings made by that

22     point, we can address that as necessary.  I think that also

23     emphasizes further the need for everyone to be here at 9:00

24     and then we can figure any last minute issues out.

25          MS. BONJEAN:  Your Honor, may I elaborate first, if

17

1      that's okay, on behalf of Ms. Daedone?

2              THE COURT:  Sure.

3              MS. BONJEAN:  I want to be very clear.  We did move

4      to preclude the use of the word cult during the course of this

5      trial on the grounds that there's no accepted definition of

6      the word cult.  It is prejudicial.  People just bring their

7      own ideas of what a cult is.

8              Judge Gujarati did indicate that she was not going

9      to preclude the government out of -- she wasn't -- at that

10     juncture, she was not going to preclude the government from

11     using the word cult without more context.  So she sort of

12     tabled the issue.  I don't know if she will revisit it.  We

13     may ask her to do so.  But I want to be clear, it was not

14     clear at the time that she intended to revisit it before

15     trial.

16             I think it was based on that at our last conference

17     before the Court that it's sort of a mixed bag for us.  We

18     want to stand on our objection on the basis that this should

19     not be a word that's introduced at this trial at all.  But if

20     it's going to be, then obviously it concerns us that we would

21     want to explore potential jurors' views about it.

22             So I think just where I would like to leave it from

23     Ms. Daedone's perspective is I do think we will attempt to

24     revisit it with the Court, with Judge Gujarati, perhaps, get a

25     clear ruling.  If she indicates that she still is not going to

18

1    make a ruling about the use of the word, I think we would

2    maybe have a tweak to the instruction, something along the

3    lines more of there may be witnesses who use the word cult, or

4    something along the lines that does not give any impression to

5    this jury that this is a cult, that there is some accepted

6    definition of the word cult.  So I think I just want the

7    record to be clear on what our perspective is on that.

8            THE COURT:  Let me hear from the government.

9            MS. BENSING:  Thank you, Your Honor.  Yes.  This was

10   something that was briefed at length in the parties' motions

11   in limine.  There's a clear ruling from the Court that

12   witnesses at the trial can use the word cult in a colloquial

13   sense.  And so I think that's where things are left.

14           I do anticipate that there will be witness testimony

15   using the word cult, although the government does not intend

16   to present expert testimony that OneTaste or the defendants'

17   organization was, in fact, a cult.  So I appreciate Ms.

18   Bonjean's clarification, because I do think the District Court

19   has ruled on this.

20           I will also note, for the record, that it was Ms.

21   Bonjean's -- the Court added this question at Ms. Bonjean's

22   request.  It was actually a defense request to add this

23   question, but the government doesn't object to it.

24           THE COURT:  Is there any objection from the

25   government to adding -- to changing the following sentence

1    that says:  You may hear or see evidence in this case

2    referring to cults to, there may be witnesses who use the word

3    cult?

4            MS. BENSING:  Perhaps the Court could say there may

5    be testimony using the word cult.  I think that would be more

6    neutral.  I will also note it's not just testimony, because

7    the defendants themselves use the word.  And so the government

8    anticipates that there will be exhibits in which the

9    defendants themselves use the word cult.

10           THE COURT:  Any response on the defense side?

11           MS. BONJEAN:  Again, I want to make the record

12   clear, so that there is no allegation of waiver or forfeiture

13   at some later point if we were to get there, which I don't

14   anticipate we will.  But if we were, I want the record to be

15   very clear that we are only requesting and conceding to

16   inquiry about cults because it's premised on the

17   understanding, at least at this juncture, that Judge Gujarati

18   may allow such testimony.

19           We objected to that in our motions in limine.  The

20   Court denied the motion in limine, although I don't think she

21   ruled that the word cult could be used.  I think she more

22   tabled it.  I think Ms. Bensing and I may disagree about how

23   that ruling came out, but that's neither here nor there.

24           I just want the record to be very clear that if the

25   word cult was not being used at trial, we would not be asking,

20

1    obviously, for this Court to instruct the jury on their belief

2    systems around cults.  We would not need to explore that issue

3    if Judge Gujarati was precluding such testimony.

4            So this will be an issue obviously later on because

5    we stand strongly on our view that given the fact that cults

6    do not have clear definitions, this is not a -- and there

7    are -- there is such a great level for potential prejudice

8    because of preconceived views about what cult means.  It's

9    intrinsically perceived as pernicious and that there is the

10   probative value of allowing a witness to testify about that is

11   greatly overweighed by the prejudicial fact.

12           Now, I understand this Court isn't here to revisit

13   Judge Gujarati's rulings on that, but I do want the record to

14   be clear that our concession or my request about exploring

15   that is based on a ruling that we disagree with.

16           MS. BENSING:  May I propose one alternative

17   formulation for the parties to consider?

18           THE COURT:  Sure.

19           MS. BENSING:  Maybe the Court could say there may be

20   witnesses or exhibits that refer to the word cult.

21           THE COURT:  Any objection to that on the defense

22   side, with the caveat that you're maintaining your objections

23   and the record is clear?

24           MS. COHEN:  Yes.

25           MS. BONJEAN:  No objection to that based on that

21

1   condition.

2        MS. COHEN:  Yes, agreed.  No objection with

3   maintaining the objections as we've raised already overall.

4        THE COURT:  Unless things change, I would then say,

5   there may be witnesses or exhibits that are referred to the

6   word cult.  Is there anything about receiving or hearing such

7   evidence that would prevent you from being a fair and

8   impartial juror?  Anything else on the defense side?

9        MS. COHEN:  Not at this time, Your Honor.

10       MS. BENSING:  Can I just raise one other thing about

11   the gallery?  Will there be like a dedicated space for

12   spectators and then a dedicated space for the venire?

13       THE COURT:  The goal will be to, again, at minimum

14   have the 40 prospective jurors here past the doors right in

15   the front here.  As a practical matter, I will try to do that

16   but I will also be very conscious of the fact that no one

17   should be contacting or communicating with any prospective

18   juror.  That goes, obviously, on all sides.  There should be

19   no communication with any prospective juror.  So we will plan

20   accordingly.

21       MS. BENSING:  Your Honor, obviously, if there are

22   both spectators or prospective jurors in the back of the

23   courtroom, the government's concern is that if folks are

24   talking amongst themselves, the prospective jurors could

25   overhear.  And so I just want to make sure the Court would

22

1   address that.

2          THE COURT:  Yes, we will address that.  Also, I

3   would add for purposes of restroom breaks, and the like, I

4   would have at least the parties here can use the restrooms in

5   the back behind the courtroom as necessary.  But we would be

6   very vigilant about that and there should be no note passing

7   or communications with any prospective jurors, of course.

8          MS. BONJEAN:  Just one other issue, Your Honor.  The

9   witness list and the references to people and places may have

10  modified slightly.  I'm not 100 percent sure.

11         THE COURT:  Let me actually touch on that now.  So

12  in January we had, at that point, the most updated list of

13  names, entities, and places, which we updated on our end.

14  What I'm going to do is I'm going to -- we've updated it on

15  the Court's side.  We're going to provide counsel via email

16  after this conference with the current document, which

17  includes not only the edits that were proposed in January but

18  also the new counsel and no references to the prior counsel.

19         I'm going to order the parties by Friday to provide

20  any proposed edits to my chambers by email, so that way we can

21  have these documents printed and ready to go.  We've also,

22  just in terms of the logistics on that, we're sensitive to the

23  fact that we don't want just papers lying around.  We would

24  have my deputy would hand the papers to each of the

25  prospective jurors and if they were to leave, for instance, if

23

1  juror number two was excused, or prospective juror number two

2  was excused, we would get that paper back from that person.

3          Now, I also fully appreciate that there may be

4  changes to this list in the days to come.  But obviously, to

5  the extent possible, we would want as much advance notice, as

6  I'm sure you would as well, as to what the names are so we can

7  print these out and have them ready to go that morning so

8  there will be no delays.

9          We'll email the attorneys with that document, and if

10  you could just send an updated version to make it as easy as

11  possible.  Frankly, if you could put those edits and track

12  changes just so we can see what you've edited or deleted, I

13  don't foresee any controversy for any of the names, absent a

14  potential issue with any witnesses, for motions and things

15  like that.  Otherwise, I don't see any issues here.

16          Anything further at this point?

17          MS. BENSING:  Not from the government.  Thank you,

18  Your Honor.

19          MS. COHEN:  Not from the defense or for Ms.

20  Cherwitz.

21          MS. BONJEAN:  And not on behalf of Ms. Daedone.

22  Thank you.

23          THE COURT:  We'll put a minute entry afterwards.

24  We'll formally set the jury selection for 9:00 a.m. on

25  May 5th.  So everyone will come here at 9:00.  We'll actually

24

1    have the prospective jurors coming in at 9:30, but we'll deal

2    with any last minute issues at 9:00.  See you on May 5th.

3              MS. BENSING:  Thank you, Your Honor.

4

5              (Proceedings concluded at 11:43 a.m.)

6              -  -  -  -  -  -  -  -  -  -  -  -  -  -  -  -

7

8              I certify that the foregoing is a correct transcript

9    from the record of proceedings in the above-entitled matter.

10

11   */S/ Nicole Sesta, RMR, CRR*
     *Court Reporter/Transcriber*

12

13   *April 24, 2025*
          *Date*

14

15

16

17

18

19

20

21

22

23

24

25