# Ballard Spahr LLP

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Celia Cohen
Tel: 646.346.8002
Fax: 212.223.1942
cohenc@ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottiM@ballardspahr.com

June 2, 2025

*Via ECF*

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: United States v. Nicole Daedone and Rachel Cherwitz, 23-CR-146

Dear Judge Gujarati:

While we recognize the Court ruled on defendants Rachel Cherwitz and Nicole Daedone's motion for a judgment of acquittal, we are filing this motion to make a written record. No rational trier of fact could find that either Ms. Cherwitz or Ms. Daedone is guilty of the forced labor conspiracy charge against them. Indeed, the evidence that the government presented in its case-in-chief is insufficient to sustain a conviction for forced labor conspiracy. *See* Fed. R. Crim. P. 29. Additionally, the government has not introduced any evidence of an overt act in furtherance of the alleged conspiracy committed after April 3, 2018, which runs afoul of the five-year statute of limitations for forced labor conspiracy. Lastly, the government's attempted application of 18 U.S.C. §§ 1589 and 1594(b) is unconstitutional because the statutory definition of "serious harm" fails to provide the defendants with fair warning about conduct that the statutes prohibit and also seeks to punish the defendants for their free exercise of religion. To avoid violating the First Amendment and the Fifth Amendment's Due Process Clause, this Court should narrowly interpret the statutory language, and conclude the government has failed to meet its burden under the statute's proper construction. For the foregoing reasons, the Court should enter a judgment of acquittal.

## I. Legal Standard

Federal Rule of Criminal Procedure 29 provides that a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The test for sufficiency is whether, "after viewing the evidence in the light most

Honorable Diane Gujarati
June 2, 2025
Page 2

favorable to the government and drawing all reasonable inferences in its favor, [the Court] determine[s] that no rational trier of fact could have concluded that the Government met its burden of proof." *United States v. Glenn*, 312 F.3d 58, 63 (2d Cir. 2002) (internal quotation marks omitted). It is not enough for the government to introduce evidence "at least as consistent with innocence as with guilt." *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994) (quoting *United States v. Mulheren*, 938 F.2d 364, 372 (2d Cir. 1991)).

While the Court must "defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony," *Glenn*, 312 F.3d at 64 (internal quotation marks omitted), a jury does not have the "power to enter an unreasonable verdict of guilty," *Jackson v. Virginia*, 443 U.S. 307, 318 n.10 (1979). Ultimately, "if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *Glenn*, 312 F.3d at 70 (internal quotation marks omitted).

## II. The Government Did Not Introduce Sufficient Evidence that the Defendants Conspired to Commit Forced Labor in Violation of 18 U.S.C. § 1594(b)

The government failed to establish beyond a reasonable doubt that Ms. Cherwitz or Ms. Daedone conspired to commit forced labor. To prove this claim, the government must demonstrate that Ms. Cherwitz and Ms. Daedone entered into an agreement with themselves and others to "obtain[] the labor or services of a person" through physical force or threats of force, serious harm or threats of serious harm, abuse or threats of abuse, and schemes "intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a). "To sustain a conspiracy conviction, the prosecution must prove beyond a reasonable doubt that the person charged with conspiracy knew of its existence and knowingly joined and participated in it." *United States v. Valle*, 807 F.3d 508, 515–16 (2d Cir. 2015). Additionally, the government must prove that Ms. Cherwitz and Ms. Daedone "possessed the specific intent to commit the offense that was the object of the conspiracy," *id.*, and that they benefitted financially from the labor or services, 18 U.S.C. § 1589(b).

The government has not met its burden of proof here. While the government called 13 witnesses who testified, *inter alia*, to alleged abuse and psychological manipulation they experienced at OneTaste, it failed to introduce any evidence of an agreement between Ms. Cherwitz, Ms. Daedone, or other alleged unindicted co-conspirators, to obtain the alleged victims' labor or services. Witnesses testified to Ms. Daedone's teachings, their views of her as OneTaste's leader, and their willingness to do whatever she asked to stay close to her. *See, e.g.*, Tr. at 213:2–3; *id.* at 4117:18–22. They also testified that Ms. Cherwitz pushed people to do sales, and on certain occasions told them to have sex to clear up the "tumescence." *See, e.g.*, *id.* at 290:10–18; *id.* at 1695:17–1696: 9. But there was no evidence that Ms. Daedone and Ms. Cherwitz agreed to a scheme to force these witnesses to labor. Indeed, the witnesses admitted that they were willing and never informed either of the defendants that they did not want to perform these acts. *See, e.g.*, *id.* at 1634:6–8; *id.* at 1930:2–6. The witnesses also testified that they went to OneTaste to explore

Honorable Diane Gujarati
June 2, 2025
Page 3

sexuality and to have their boundaries pushed. *See, e.g.*, *id.* at 2479:1–8; *id.* at 3074:24–3075:1. The witnesses could have left at any time, and therefore there is no evidence that Ms. Daedone and Ms. Cherwitz agreed to some kind of psychological manipulation to "force" them to do labor, nor could they have anticipated that they could have had such influence on these witnesses. And Robert Kandell, the co-founder of OneTaste and alleged co-conspirator, testified that there was no such agreement. *See id.* at 3458:9–23; *id.* at 3516:6–15.

Further, the government has not provided sufficient evidence to prove that Ms. Cherwitz and Ms. Daedone sought to engage in the forced labor or services of the government's witnesses through "serious harm" or threats of "serious harm." *See Valle*, 807 F. 3d at 511 ("Yet we must not forget that in a free and functioning society, not every harm is meant to be addressed with the federal criminal law."). In fact, the witnesses testified to the contrary—that they could leave (and did in fact leave) either employment at OneTaste or the broader community associated with OneTaste's teachings and practices at any time. *See, e.g.*, Tr. at 884:23–25; *id.* at 3104:5–7; *id.* at 3460:12–14; *id.* at 3466:13–18. Thus, a jury could not find that either Ms. Cherwitz or Ms. Daedone conspired to commit forced labor in violation of § 1594(b).

A. <u>Ms. Cherwitz and Ms. Daedone Did Not Conspire to Compel Labor Through "Serious Harm" or "Threats of Serious Harm"</u>

To establish forced labor under § 1589, the government "must first show that the threat of harm was sufficiently serious and, second, that the defendant had the requisite scienter, i.e., that the employer intended to cause the victim to believe that she would suffer serious harm . . . if she did not continue to work." *United States v. Tegete*, 2023 U.S. Dist. Lexis 43034, at *25 (S.D.N.Y. Mar. 14, 2023) (internal quotation marks omitted). The court in *Tegete* further explained that the cases finding threats of harm sufficiently serious to establish forced labor typically involve:

> squalid or otherwise intolerable living conditions, extreme isolation (from family and the outside world), threats of inflicting harm upon the victim or others (including threats of legal process such as arrest or deportation), and exploitation of the victim's lack of education and familiarity with the English language, all of which are used to prevent vulnerable victims from leaving and to keep them bound to their captors.

*Id.* (quoting *Muchira v. Al-Rawaf*, 850 F.3d 605, 618–19 (4th Cir. 2017)). Further, being shunned from an organization or warning of being shunned is not sufficient to constitute serious harm. *See Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012).

Here, the government has not proven that Ms. Cherwitz and Ms. Daedone agreed to compel labor through "serious harm" or "threats of serious harm." First, the government introduced no evidence of physical violence or threats of physical violence. In fact, the witnesses testified to the contrary. *See, e.g.*, Tr. at 888:15–18 ("I do not recall anyone being threatened with physical violence when they wanted to leave the Warehouse, and I was not threatened with physical

Honorable Diane Gujarati
June 2, 2025
Page 4

violence when I wanted to leave the Warehouse."); *id.* at 2821:22–24 ("Q: So no one was threatening you, right? A: No. No, they did not come from threat. It came from a desire to heal.").

Second, with no evidence of physical violence or threats of physical violence, the government sought to introduce evidence of "serious harm" and "threats of serious harm" in the form of psychological manipulation and other tactics such as shunning, brainwashing, ostracizing OneTaste employees, or fear of losing social status within OneTaste. *See, e.g.*, *id.* at 373:15–17 ("It was abundantly clear to me that if I were to really leave, that I would not -- that that would be a very permanent decision and that I would not be welcomed back with open arms."); *id.* at 3386:2–13 ("Q: . . . You testified that one means of using manipulation for the promotion of labor was use of threats. What did you mean by that? A: We believed that, you know, your power, your path to God was through your orgasm, was through your practice, through your attention and loyalty to the organization. You could fear losing that. You could fear losing that social status. It was kind of, like, a high school clique situation gone bad, and you could lose, you know, being closer to the cool kids, you could be outcasted, you could lose position. There was just a -- there was a lot of social pressure to do what the organization wanted you to do."); *id.* at 2762:2–9 ("A: I was, you know, I was kicked out. One of the biggest fear[s] was to get kicked out of the group, to be told that you are not worthy of being here, or that they don't want you. So to be ostracized and also humiliated like, I was only one kicked out at that event, so I felt like everybody knew that I did something wrong. I also felt really anxious. I felt cut off from everybody."); *id*. at 379:21–380:4 ("I was fully in it and brainwashed. . . . I didn't see the world as it was anymore. I saw it only through the lens of OneTaste."); *id.* at 2321:7–12 ("[O]ne of the primary ways in which were . . . driven to do things that were asked of us was through fear tactics. . . . [P]rimarily the threat of ostracization, like professionally and socially."); *id.* at 1122:2–5 ("It was all about me. And it was me alone, no one would talk -- it was, again, one of these experiences of, like, just humiliation and shame and being shunned and oh, no.").

Simply put, this evidence does not prove "serious harm" or "threats of serious harm" As defined in the statute. None of the purported threats of harm here involved subjecting anyone to intolerable living conditions, extreme isolation, or exploitation. And any threat of being cut off from OneTaste or losing status within OneTaste does not constitute a threat of serious harm as a matter of law. In addition, none of the alleged victims were young, inexperienced, or uneducated. *See Muchira*, 850 F.3d at 620 (the court found insufficient evidence on the grounds that the alleged victim "was not an especially vulnerable victim" as "[s]he was not young, inexperienced, or brought to this country illegally" and "was well aware of the Saudi cultural rules and expectations related to her employment"). Under the objective component of the statute's definition of "serious harm," the prosecution cannot obtain a conviction by "rely[ing] upon some [subjective] hidden emotional flaw or weakness unknown to the" defendants. *Id.* at 618.

Further, assuming *arguendo* that the evidence of shunning, brainwashing, and the like qualify as psychological harm, there is no evidence that the defendants *intended* to use such alleged harm or threatened harm to make the alleged victims *remain* OneTaste employees. The scienter element under the statute is that a defendant intended to force a defendant to remain – not to make them miserable or to leave. *See Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1031 (7th

Honorable Diane Gujarati
June 2, 2025
Page 5

Cir. 2024) ("[T]he statute also has a scienter requirement: the defendant (here the Salvation Army) must intend that the worker believe that serious harm would befall one who refused to work."); *see also United States v. Bradley*, 390 F.3d 145, 155 (1st Cir. 2004), *judgment vacated on other grounds by*, 545 U.S. 1101 (2005); *Muchira*, 850 F.3d at 617, 620; *Schneider v. OSG, LLC*, No. 22CV7686AMDVMS, 2024 WL 1308690, at *7 (E.D.N.Y. Mar. 27, 2024).

> B. <u>The Alleged Victims Chose to Work at OneTaste and Were Free to Leave At Any Time</u>

Prior to and throughout trial, the defense made plain its theory that Ms. Cherwitz and Ms. Daedone did not conspire to commit forced labor because the alleged victims chose to work for OneTaste or participate or volunteer in its programs, including programs of a monastic character, and were free to leave at any time. *See, e.g.*, Joint Proposed Jury Instr., Dkt. No. 326 at 2; Tr. at 37:13–16; ("It boils down to this, freedom to stay or freedom to go."); Tr. at 55:11–13 ("These were people who had freedom to do and go as they wished. And these people chose to become part of the OneTaste community, at least for a period of time."); Tr. at 4262:5–6 ("Q. And did you feel that the staff house was a monastery? A. Yes."). Courts have held in cases with analogous facts that choosing to stay does not "establish[] a genuine issue of fact regarding whether [the witnesses] were [v]ictims of forced-labor violations." *Headley*, 687 F.3d at 1180–81; *see also Muchira*, 850 F.3d at 621–22 ("[A]s the district court noted, '[w]hile the 'house rules' may have made [Muchira's] life more onerous and less pleasant than it otherwise might have been, the evidence is insufficient to establish that those 'house rules' ever prevented [Muchira] from doing what she ultimately did do – terminate her employment' and walk away."); *Taylor*, 110 F.4th at 1031 (stating that it was implausible that a person would not have felt free to leave a program where participants "could have regained both the ability to do other work, as well as the ability to access their cell phones and the internet, by leaving the program early, which they were always free to do").

Here, the record similarly demonstrates that the alleged victims chose to work for OneTaste and were free to leave at any time. For example, Rebecca Halpern testified that she "absolutely" chose to be at OneTaste. Tr. at 589:16–18 ("Q: And that's because you did choose to be at OneTaste, because you wanted to change and grow, right? A: Absolutely."). Other witnesses testified similarly. *See, e.g.*, *id.* at 3462:13–15 ("Q: And while you were there, you woke up every day and chose to be a part of OneTaste, correct? A: That is correct."); *id.* at 1902:5–13 ("Q: Your participation in the New York community was a decision you made all on your very own, right? A: Yes."); *id.* at 2491:3–7 ("Q: No one forced you to do work trade; correct? A: No. Q: No one forced you to move into 1080; correct? A: No. Q: You wanted to be there; correct? A: I did."); *id.*at 2230:21–23 ("Q: And you chose, based on whatever suggestions you received, to spend your time at OneTaste, correct? A: Correct."); *id.* at 2889:18–22 ("Q: So you understood when you signed up for OneTaste that it was a sexual wellness company, correct? A: Yes. Q: That's the reason you went there, right? A: Yes.").

Similarly, the witnesses at trial testified that they were free to leave. During Lyndsi Keves's cross-examination, for example, she testified to the following:

Honorable Diane Gujarati
June 2, 2025
Page 6

> Q: You always had the ability to leave OneTaste at any time; right?
> A: Yes.
> Q: And when you stayed it was because you chose to stay; correct?
> A: Yes.

*Id.* at 3108:22–3109:2.  Again, others testified to the same.  *See, e.g.*, *id.* at 884:23–25 ("Q: . . . So at the Warehouse you were free to come and go as you pleased?  A: Yeah."); *id.* at 3460:12–14 ("Q: And if you don't want to get pushed, you can leave, right?  A: Yes."); *id.* at 3466:13–18 ("Q: Is it fair to say that anyone who had a bad experience could walk out the door and not come back?  A: Yes.  Q: And that applies for both students and employees, correct?  A: Yes."); *id.* at 666:22–24 ("Q: But again, you left that second introductory course and no one made you stay, right?  A: Correct."); *id.* at 870:18–25 ("Q: So you left OneTaste, right?  A: Yes.  Q: You made the choice to leave OneTaste, correct?  A: Yes.  Q: And that was an option you had throughout your time at OneTaste, correct?  A: Yeah."); *id.* at 1386:15–18 ("Q: And at that point you could have left and never come back to OneTaste if you wanted, right?  A: I could have."); *id.* at 1925:10–12 ("Q: And no one stopped you, no one tried to stop you from leaving, right?  A: No one tried to stop me from leaving."); *id.* at 2919:14–16 ("Q: Right. It felt emotional leaving, but nothing obstructed you from leaving, right?  A: Once we made the decision, nothing obstructed us.").

Ultimately, because the overwhelming evidence demonstrates that OneTaste employees were free to leave at any time and the government has not provided any evidence to the contrary, no reasonable trier of fact could find Ms. Cherwitz and Ms. Daedone guilty of conspiracy to commit forced labor.  Thus, the Court should grant Ms. Cherwitz and Ms. Daedone's request for a judgment of acquittal.

        C.    <u>Judgment of Acquittal Is Appropriate Because the Government's Evidence of the Alleged Sexual Servicing of Reese Jones Is Insufficient for a Finding that Ms. Cherwitz and Ms. Daedone Are Guilty of Forced Labor Conspiracy</u>

Judgment of acquittal is also warranted because (i) the government has not demonstrated that Ms. Cherwitz and Ms. Daedone forced OneTaste employees to engage in the sexual servicing of Reese Jones; and (ii) the government has introduced no evidence connecting Ms. Cherwitz to such sexual servicing.  While several witnesses testified at trial that they engaged in sexual acts with Mr. Jones, many testified that they enjoyed working for Mr. Jones, they never complained to Ms. Cherwitz or Ms. Daedone, or it was an "opportunity" to service Mr. Jones.  *See, e.g.*, *id.* at 1136:7–12; *id.* at 1615:11–14; *id.* at 3629:13–15; *id.* at 3664:2–9.  Further, none of the testimony involved Ms. Cherwitz directing this activity.  As such, the government has not proven any forced labor scheme with respect to the sexual servicing of Mr. Jones at the direction of Ms. Cherwitz and the Court should grant Ms. Cherwitz's request for a judgment of acquittal.

Honorable Diane Gujarati
June 2, 2025
Page 7

### III. The Government Has Not Introduced Any Evidence Within the Five Year Statute of Limitations for Forced Labor Conspiracy

The ten-year statute of limitations set forth in 18 U.S.C. § 3298 does not apply to forced labor conspiracy under 18 U.S.C. § 1594. Rather, the applicable statute of limitations for forced labor conspiracy is five years pursuant to 18 U.S.C. § 3282. The government has failed to introduce evidence of an overt act in furtherance of the conspiracy during the five years preceding the indictment. The statute of limitations thus bars this indictment.

"When interpreting a code provision related to a statute of limitations, [courts] adhere to the principle that criminal limitations statutes are to be liberally interpreted in favor of repose." *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) (internal quotation marks omitted) (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970)).

> This rule comports with the policy rationale behind such statutes by (1) protecting individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time, (2) minimizing the danger of official punishment because of acts in the far-distant past, and (3) encouraging law enforcement officials promptly to investigate suspected criminal activity.

*Id.*

Section 1594 was amended in 2008 to include forced labor conspiracy—two years after § 3298's enactment in 2006. Therefore, when Congress implemented the ten-year statute of limitations in § 3298 for conspiracy to commit certain non-capital offenses, Congress could not have intended that statute to apply to § 1594's conspiracy provision because it did not yet exist. Further, had Congress intended for the ten-year statute of limitations to apply to forced labor conspiracy under § 1594 following its 2008 amendment, it could have easily amended § 3298 to reflect this intention, by specifically adding § 1594 into § 3298. It did not do so. The absence of any such amendment or clarification indicates that Congress did not intend to extend the statute of limitations to ten years for forced labor conspiracy pursuant to § 1594. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("This fact only underscores our duty to refrain from reading a phrase into the statute when Congress has left it out. Where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

According to § 3282, the default statute of limitations for non-capital offenses is five years unless "otherwise expressly provided by law." 18 U.S.C. § 3282. Since § 3298 does not "expressly provide" for the ten-year statute of limitations to apply to § 1594, the five-year limitation should prevail. The term "expressly provided" indicates that any extension of the statute of limitations beyond the default requires clear legislative language. *See Kozeny*, 541 F.3d at 171. Not only is that express language absent here concerning § 1594, but also it is clear Congress did *not* intend § 3298 to apply to § 1594's conspiracy charge, since that conspiracy charge did not exist when Congress enacted § 3298 in 2006. Given that Congress did not amend § 3298 to specifically

Honorable Diane Gujarati
June 2, 2025
Page 8

include forced labor conspiracy under § 1594 when it enacted § 1594 in 2008, the five-year statute of limitations should be presumed for forced labor conspiracy under the provision.

Even if there was sufficient evidence to prove a conspiracy to commit forced labor prior to April 3, 2018, the government has not proven that any acts in furtherance of the alleged conspiracy occurred after that date. Accordingly, the indictment in this case was not within the applicable statute of limitations, and this motion should be granted on that ground alone.

Alternatively, if the Court determines that this is a factual issue for the jury, *see United States v. Aiyer*, 470 F. Supp. 3d 383, 412 (S.D.N.Y. 2020), Ms. Cherwitz and Ms. Daedone request that the Court include a specific question to the jury on the verdict form as to whether the government has proven an act in furtherance of the conspiracy after April 3, 2018.

IV. **As a Matter of Law Defendants Are Not Guilty of Forced Labor Conspiracy When § 1589(b) Was Not in Effect Until 2009 and One Cannot Conspire to Commit a Reckless Act**

The defendants cannot as a matter of law be guilty of forced labor conspiracy pursuant to § 1589 when no such crime existed until 2009. Any application of the conspiracy statute to conduct that preceded June 2009 would violate the *ex post facto* clause. *United States v. Monaco*, 194 F. 3d 381, 386 (2d Cir. 1999) (holding that if it is possible that a jury could convict exclusively on the pre-enactment conduct, an *ex post facto* violation would occur).

*Ex post facto* problems aside, the defendants cannot be guilty of forced labor conspiracy pursuant to § 1589(b) when a defendant cannot agree to commit an act recklessly. *But see United States v. Feola,* 420 U.S. 671, 693–94 (1975) (holding that the parties to the conspiracy agreed to commit an act that was criminal, regardless of such extraneous but jurisdictionally factors as who the victim happened to be). *Feola* left open the question of "whether it is fair to punish parties to an agreement to engage intentionally in apparently innocent conduct where the unintended result of engaging in that conduct is the violation of a criminal statute." *Id.* at 691.

Here, without forced labor, there is ostensibly no illegal conduct involved. Under the forced labor statute, any agreement to benefit from a venture without the attendant fact is simply the operation of any normal business. The act of two or more people agreeing to start a for-profit business that involves hiring others to perform labor is, plainly, "apparently innocent conduct." It is only the knowledge that this labor is to be forced that converts it into a potentially criminal act. Indeed, in the civil enforcement context, a forced labor conspiracy requires an agreement to "violate the prohibition on forced labor." *Paguirigan v. Prompt Nursing Emp't Agency LLC*, 286 F. Supp. 3d 430, 440 (E.D.N.Y. 2017) (citing *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014)). Without knowledge of forced labor occurring, Ms. Cherwitz and Ms. Daedone cannot have conspired to benefit from such labor. To hold otherwise is the equivalent of saying that Ms. Cherwitz and Ms. Daedone agreed to benefit from apparently innocent conduct with the unintended result of engaging in criminal conduct. *See Feola*, 420 U.S. at 691. Without awareness of the attendant fact of forced labor, there could be no unlawful

Honorable Diane Gujarati
June 2, 2025
Page 9

agreement to benefit from forced labor in violation of § 1594(b) because Defendants would not have known the essential objective of the conspiracy—an agreement to commit an unlawful act.

In sum, the structure of the forced labor conspiracy statute allows for a conviction when Ms. Cherwitz and Ms. Daedone agreed to benefit from participating in some venture, which, on its face, constitutes "apparently innocent" conduct, *id.*, without knowledge of an essential objective of the conspiracy: violation of the prohibition on forced labor. Accordingly, the Court should grant Ms. Cherwitz' and Ms. Daedone's motion for judgment of acquittal on the grounds that they did not have awareness of the attendant fact of forced labor and, therefore, there could be no unlawful agreement to benefit from forced labor in violation of § 1589(b).

## V. The Court Should Exclude Any Evidence of Alleged Co-Conspirator Statements, Because the Government Has Not Met Its Burden of Proof to Admit Such Evidence

"[S]tatements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence of [certain] . . . prerequisites." *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993). To properly admit these statements, the court must find that (i) there was a conspiracy, (ii) its members included the declarant and the party against whom the statement is offered, and (iii) the statement was made both (a) during the course of and (b) in furtherance of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987). "[T]he judge must determine, when all the evidence is in, whether in his view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence independent of the hearsay utterances." *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969). If the government does not meet its burden, the court "either should instruct the jury to disregard the statements, or, if those statements were so large a proportion of the proof as to render a cautionary instruction of doubtful utility, should declare a mistrial." *Tracy*, 12 F.3d at 1200 (internal quotation marks omitted).

Here, the Court should find that the government has not met its burden under *Bourjaily* to properly introduce its evidence the Court admitted subject to connection. During its case-in-chief, the Court specifically admitted six pieces of evidence subject to connection, and the government repeatedly introduced other hearsay statements as supposed co-conspirator statements. *See* GX3501-7; GX4504-B; GX4504-C; Tr. at 1119:10–20:8; *id.* at 1296:4–20; *id.* at 1328:6–17. The government has not met the *Bourjaily* standard with regard to this evidence because, under the totality of the evidence admitted at trial, the government has not proven that (i) there was a conspiracy; (ii) the members included the declarant and the party against whom the statements are offered; (iii) the statements were made during the course of the conspiracy; and (iv) that the statements were made in furtherance of the conspiracy. *See Bourjaily*, 483 U.S. at 175. Simply because individuals were executives at OneTaste during the alleged conspiracy's time period does not mean they were co-conspirators. Nor was every business conversation about OneTaste during that time period "in furtherance" of the conspiracy. Yet, that is the view the government has taken here. The Court should preclude the evidence the government sought to admit as co-conspirator

statements.  When that evidence is excluded, it further reinforces the conclusion that this Court should grant Ms. Cherwitz and Ms. Daedone's motion for a judgment of acquittal.

**VI.** **Judgment of Acquittal Is Required Because, as Applied in this Case, the Statutory Definition of "Serious Harm" Failed to Provide the Defendants with Fair Warning that Their Conduct Was Against the Law, and the Prosecution Also Is Seeking to Apply the Statute in a Manner that Punishes the Free Exercise of Religion**

The government's attempted application of 18 U.S.C. §§ 1589 and 1594(b) is unconstitutional, as applied, because the statutory definition of "serious harm" did not give the defendants fair warning that their alleged conduct violated the statute.  To avoid violating the First Amendment's free expression and freedom of religion clauses and the Fifth Amendment's Due Process Clause, this Court should narrowly interpret the statutory language and enter a judgment of acquittal.

Although a "facial" vagueness challenge to a criminal charge may be properly raised in a pretrial motion to dismiss the indictment, an as-applied vagueness challenge must be raised in a Rule 29(a) motion because it depends on the prosecution's evidence of a defendant's alleged specific conduct related to charged offenses.  *See United States v. Phillips*, 690 F. Supp.3d 268, 292-93 (S.D.N.Y. 2023); *see also United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.).

    A.    The Government's Application of 18 U.S.C. §§ 1589 and 1594(b) Violates the Fifth Amendment's Due Process Clause

The government's application of §§ 1589 and 1594(b) violates the Fifth Amendment's Due Process Clause because the statutes are vague as applied in that manner.  The Supreme Court has identified three separate rationales for invalidating vague criminal statutes under the Due Process Clause: (i) they deprive citizens of fair notice of what is unlawful; (ii) they encourage arbitrary enforcement of the law by executive branch officials and arbitrary application of the law by judges and juries; and (ii) they violate the separation-of-powers doctrine by leaving it to the judicial branch to give meaning to a statute's vague terms in authoritative judicial decisions.  *See* David Kwok, *Is Vagueness Choking the White-Collar Statute*, 53 Ga. L. Rev. 495, 500–01 (2019); Carissa Byrne Hessick, *Vagueness Principles*, 48 Ariz. St. L.J. 1137, 1140–44 (2016).

The statutes at issue here, 18 U.S.C. §§ 1589 and 1594(b)[1]—are unconstitutional as applied to Ms. Cherwitz and Ms. Daedone for all three reasons.  In particular, if §§ 1589(a) and (c) are applied as the government contends they should be, they are unconstitutionally vague.  These

---

[1] The defendants' due process vagueness challenge primarily is directed at the language of § 1589, as § 1594(b) simply provides a basis for convicting a defendant for conspiring to violate § 1589.

Honorable Diane Gujarati
June 2, 2025
Page 11

statutory terms and definitions did not provide an "ordinary person" with fair notice that the statute applied to the defendants' alleged conduct reflected in the indictment's allegations and the government's evidence at trial claiming, amongst other things, emotional and psychological abuse, "brainwashing," economic abuse, and publish shaming. *See, e.g.*, Tr. at 106:3–5; *id.* at 169:18–19; *id.* at 790:21–791:4; *id.* at 1015:4–9; *id.* at 1121:8–1122:5; *id.* at 2321:12–18; *id.* at 2686:24.

Such alleged conduct, as detailed above, significantly differs from the type of conduct at issue in other cases in which courts have found valid applications of § 1589. *See, e.g.*, *United States v. Raniere*, No. 20-3520-cr, 2022 WL 17544087, at *2 (2d Cir. Dec. 9, 2022) ("At trial, the Government presented evidence that [the victim] was required to produce 'collateral,' including in the form of sexually explicit videos of herself, letters in which she falsely accused her father of sexual abuse, and credit card authorization forms, which she feared would be released if she failed to comply with [the] directives [to perform labor or services]. . . . . There is therefore no basis for overturning the forced labor or forced labor conspiracy convictions."); *United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010) (defendant engaged in non-consensual physical abuse to coerce the victim to perform forced labor); *United States v. Calimlim*, 538 F.3d 706 (7th Cir. 2008) (defendants engaged in both physical restraint and credible threats of deportation to coerce the victim to perform forced labor). In those cases, unlike here, § 1589's plain language put the defendants on fair notice that their conduct was subject to criminal prosecution.

Section 1589—including its definition of "serious harm—cannot be constitutionally applied to criminalize the conduct here. The statute's language is simply too vague to have put the defendants on fair notice that they could be *criminally prosecuted as felons* and face many years in prison for such alleged conduct. In particular, two provisions in the statute are vague as applied to the alleged conduct here: (i) § 1589(c)(1) (criminalizing the use of the law or legal process "in *any manner* or for *any purpose* for which the law was not designed" to obtain labor or services) and (ii) § 1589(c)(2) (criminalizing "*any harm* . . . including psychological, financial, or reputational harm, that is *sufficiently serious*, under *all the surrounding circumstances*, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm"). Such statutory language is so broad, indeterminate, and ill-defined that it does not give an ordinary person sufficient warning that the alleged conduct of the defendants was criminalized by those provisions. It also encourages arbitrary enforcement by law enforcement officers, prosecutors, and juries—as evidenced by the charges in this case. Further, such statutory language necessarily requires courts, on a case-by-case basis to give sufficiently specific meaning to the indeterminate language. *Cf. Johnson v. United States*, 576 U.S. 591, 597 (2015) ("We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause [of 18 U.S.C. § 924(e)(2)(B)][2] both denies

---

[2] The "residual clause" provides that "the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another* . . . ." 18 U.S.C. § 924(e)(2)(B) (emphasis added).

fair notice to defendants and invites arbitrary enforcement by judges."). For these reasons, the statute is vague as applied in this case, in violation of the Due Process Clause.

  B. <u>The Government's Application of 18 U.S.C. §§ 1589 and 1594(b) Violates the First Amendment</u>

  A First Amendment "as-applied" vagueness challenge to a statute's application looks at a defendant's charged conduct arguably involved at least some expression or association (religious or otherwise) protected by the First Amendment. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 803 (1984). In a related manner, a statute is "overbroad" under the First Amendment if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008). The standard for an "as-applied" First Amendment challenge is no different than the standard for a "facial" challenge, although the focus of the challenge is on the specific charged conduct or associational activity. *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010). A First Amendment vagueness analysis is even more demanding of a statute than a due process vagueness analysis. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012); *see also Local 8027, AFT-N.H., AFL-CIO v. Edelblut*, 651 F. Supp. 3d 444, 460 (D.N.H. 2023) ("Because their extracurricular speech is plausibly entitled to First Amendment protection, a rigorous vagueness review is required.").

  The charges in the indictment are both vague and overbroad under the First Amendment, at least as applied to the specific charges here, because, as the evidence at trial showed, the alleged conduct was inextricably linked to religious or spiritual beliefs, expressions, and associations. The entire philosophy and practices of orgasmic mediation ("OM") are rooted in religion and spirituality. Indeed, the name "OneTaste" is taken from a key tenet of Tantric Buddhism. *See* Louise Child, Tantric Buddhism and Altered States of Consciousness 30 (2007); Tr. at 817:10–13; Tr. at 1888:25, 1889:1–2; Tr. at 2770:10–19; Tr. at 3476:1–3.

  The defendants' vagueness challenge is even more compelling considering that they are solely charged under 18 U.S.C. § 1594(b)—which does not even require an overt act and, instead, only requires *a mere agreement* by at least two persons to violate § 1589. *See Paguirigan v. Prompt Nursing Employment Agency LLC*, 286 F.Supp.3d 430, 440 n.6 (E.D.N.Y. 2017) ("Title 18 U.S.C. § 1594(b) does not have an overt act requirement." (citing *United States v. Pascacio-Rodriguez*, 749 F.3d 353, 362 n.42 (5th Cir. 2014))). The First Amendment applies with even more force because the only crime charged in the indictment is an alleged "meeting of the minds" *without any action required*. The danger of an overbroad application of § 1589 is increased when no conduct pursuant to the agreement is required. *See generally* Steven R. Morrison, *Conspiracy Law's Threat to Free Speech*, 15 U. Pa. J. Const. L. 865 (2013).

  Finally, in addition to being vague and overbroad under the First Amendment's free exercise clause, the statute, as applied here, violates the defendants' constitutional right to the free exercise of religion. *See generally United States v. Ballard*, 322 U.S. 78, 87 (1944) ("The Fathers of the Constitution were not unaware of the varied and extreme views of religious sects, of the

Honorable Diane Gujarati
June 2, 2025
Page 13

violence of disagreement among them, and of the lack of any one religious creed on which all men would agree. They fashioned a charter of government which envisaged the widest possible toleration of conflicting views. . . . The religious views espoused by respondents might seem incredible, if not preposterous, to most people. But if those doctrines are subject to trial before a jury charged with finding their truth or falsity, then the same can be done with the religious beliefs of any sect."). The Free Exercise Clause protects religious or spiritual relationships – even ones considered extreme by the vast majority of people or contrary to traditional western religions – and prohibits governmental resolution of ecclesiastical disputes turning on matters of "religious doctrine or practice." *Sanders v. Casa View Baptist Church*, 134 F.3d 331, 336 (5th Cir. 1998) (citing *Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 449–50 (1969)). Because the practices and beliefs that the government is seeking to criminalize in this case include religious or spiritual practices and beliefs within the meaning of the First Amendment, it would violate the Free Exercise Clause to permit this case to proceed to jury for its deliberation about the charges. At the very least, this Court should narrowly interpret the statute in order to avoid violating the First Amendment.

## VII. Conclusion

For the reasons set forth above, Ms. Cherwitz and Ms. Daedone respectfully request that the Court grant their motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

Dated:   Brooklyn, New York
         June 2, 2025

Respectfully submitted,

/s/CELIA A. COHEN
/s/MICHAEL P. ROBOTTI
Celia A. Cohen
Michael P. Robotti
*Counsel for Rachel Cherwitz*
Ballard Spahr LLP
1675 Broadway, 19th Floor
New York, NY 10019
212-223-0200

/s/JENNIFER BONJEAN
/s/KELSEY H. KILLION
Jennifer Bonjean
Kelsey H. Killion
*Counsel for Nicole Daedone*
Bonjean Law Group, PLLC

Honorable Diane Gujarati
June 2, 2025
Page 14

303 Van Brunt Street, 1st Floor
Brooklyn, NY 11231
718-875-1850