UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------x

23-CR-146(DG)

UNITED STATES OF AMERICA,

United States Courthouse
Brooklyn, New York

-versus-

June 09, 2025
9:00 a.m.

RACHEL CHERWITZ AND NICOLE DAEDONE,

Defendants.

--------------------------------x

TRANSCRIPT OF CRIMINAL CAUSE FOR TRIAL
BEFORE THE HONORABLE DIANE GUJARATI
UNITED STATES DISTRICT JUDGE

APPEARANCES

For the Government: UNITED STATES ATTORNEY'S OFFICE
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: KAYLA BENSING, ESQ.
KAITLIN FARRELL, ESQ.
NINA GUPTA, ESQ.
SEAN FERN, ESQ.
Assistant United States Attorneys

For Defendant Cherwitz: BALLAD SPAHR LLP
1675 Broadway
New York, New York 10019
BY: CELIA COHEN, ESQ.
MICHAEL P. ROBOTTI, ESQ.
KELLY LIN, ESQ.
SCHUYLER LA BARGE, ESQ.
KELLY LENAHAN-PHAHLERT, ESQ.

(Continued on next page.)

(APPEARANCES CONTINUED)

For Defendant Daedone: BONJEAN LAW GROUP PLLC
30 Van Brunt Street
Brooklyn, New York 11231
BY: JENNIFER A. BONJEAN, ESQ.
KELSY KILLION, ESQ.

Also Present: LIAM McNETT, Paralegal
U.S. Attorney's Office
MARLANE BOSLER, Paralegal
U.S. Attorney's Office

GALILA ASSEFA, Paralegal
Bonjean Law Group

KAMILLE SIMONS, Paralegal
Ballard Spahr

Court Reporter: Rivka Teich, CSR, RPR, RMR, FCRR
Phone: 718-613-2268
Email: RivkaTeich@gmail.com

Proceedings recorded by mechanical stenography. Transcript produced by computer-aided transcription.

(In open court.)

THE COURTROOM DEPUTY: All rise. United States of America against Rachel Cherwitz and Nicole Daedone.

Is the Government ready.

MS. BENSING: Yes. Kayla Bensing, Kaitlin Farrell, Nina Gupta and Sean Fern. We're joined by paralegal specialists Liam McNett and Marlane Bosler. Good morning, your Honor.

THE COURT: Good morning.

MS. COHEN: Celia Cohen, Michael Robotti, Kelly Lin, Schuyler La Barge on behalf of Rachel Cherwitz.

THE COURT: Good morning.

MS. BONJEAN: Good morning, your Honor. Jennifer Bonjean, Ashley Cohen, Soph Moazed and Galila Assefa on behalf of the defendant Ms. Daedone.

THE COURT: Where did your co-counsel go?

MS. BONJEAN: She had to get back to Montana.

THE COURT: I wanted to note that it was very clear that even though she did not have a speaking role she was working very hard. You can pass that along to her, it did not go unnoticed.

MS. BONJEAN: I apologize, I should have mentioned earlier --

THE COURT: You don't have to tell me. I was just wondering if she was coming back or not. You can extend to

her that I noticed that she was working very hard.

This jury is prompt, as always, and they are all here. I actually think I will bring them out to say good morning and let them know that they can continue their deliberations.

Of course everyone at Ms. Cherwitz's table is working very hard, but you're still here.

MS. COHEN: Kelly Lenahan-Phahlert had to go back to Philly and --

THE COURT: Then you can also let her know I noticed she was working very hard.

MS. COHEN: Rich Hobbs as well.

THE COURT: Yes.

(Jury enters the courtroom.)

THE COURT: Everyone may be seated.

Good morning to the members of the jury. It's nice to see everybody. I hope everyone had a relaxing and peaceful weekend. You're all here, so you may resume your deliberations. We are here, but I think the same as Friday, if you're still deliberating at 1:00 o'clock to 2:00 o'clock hour we won't be available to take any notes, but other than that we are around today. Please continue your deliberations.

(Jury exits the courtroom.)

THE COURT: We'll just email if there is anything from the jury; otherwise, we're in recess.

(Brief recess.)

(In open court.)

THE COURT: We have another jury note, I marked Court Exhibit 16. Let me read the note it says:

Questions. Email/chat/text between Nicole, Michelle/Wright/Yia end of 2013/2014.

Then the next request says:

Rob Kandell/testimony regarding employee status and wages.

The third request says: Rob Kandell testimony regarding Reese Jones handlers interaction/Michelle Wright, Maddie, Yia and Alicia Price with Nicole D. Thank you. It's signed by juror number seven.

I'm sure the parties haven't had a chance to fully consider what they think is responsive to this note. If you want to tell me anything now; if not, I'll give you time to do that.

MS. BENSING: We need a little more time.

MS. COHEN: We're working on it.

MS. BONJEAN: We're working on it.

THE COURT: Somebody email Mr. D'Agostino when you're ready.

And I should also say that the alternates were here this morning in their separate room. Okay, we'll go for a recess.

(Brief recess.)

(In open court.)

THE COURTROOM DEPUTY: All rise.

THE COURT: So I know the parties spent quite a bit of time and reached agreement on almost everything with respect to what the jury is asking for. There is one objection and I can hear the Government out on that now, which is about pages 3612, just page 3612 line one through 15.

MS. BENSING: Yes, your Honor. So I think those portions pertain to an agreement that came into evidence and it was reading out a portion of that agreement. From the Government's perspective that does not fall within Robert Kandell's testimony regarding employee status and wages.

THE COURT: I'll hear from Mr. Robotti.

MR. ROBOTTI: I think that's from the employee handbook.

THE COURT: I think it is.

MR. ROBOTTI: From the perspective of the defense, this is responsive to the jury's note which asked for testimony from Robert Kandell about employees' status. This portion of the handbook is explaining the status of these employees at the company, which is they are at-will.

In addition, we note on page 3440 which is out of direct examination of Ms. Bensing, that they are submitting back to the jury Mr. Kandell does reference that the employees

are at-will. So this is directly responsive to that explaining, what at-will means in the context of OneTaste.

THE COURT: Do you want to respond?

MS. BENSING: Well, I think the line that he's taking about is: Even if they are an at-will employee can lead to backlash issues and attention from state agencies.

Again, the Government thinks this is far afield from what the jury is requesting.

THE COURT: I take the Government's point on this, but it is testimony of Robert Kandell regarding employee status, so I do think that I will be sending it back to the jury.

I think that was the only issue that the parties disagreed on; is that correct?

MS. BENSING: Yes.

MR. ROBOTTI: That's correct.

MS. BONJEAN: Yes.

THE COURT: Let's go through the tedious process of me reading to you what I'm going to send to the jury. Pay close attention because I'll ask you to confirm at the end. And of course, I'll let you look at the documents -- of course you produced the documents, but I think there were a few that got changed at the end and I want to make sure everybody sees what is going to the jury.

Defense Exhibit 3EA will go to the jury.

Then, transcript page 3422 line 18 to 3424 line 16.

Page 3425 line one to 3428 line four.

Page 3432 line eight to 3433 line two.

Page 3433 line seven to 3437 line 11.

Page 3437 line 23 to 3443 line one.

Page 3520 line 12 to 3523 line eight.

Page 3523 line 14.

Page 3524 lines one through 16.

Page 3525 line four to 3527 line six.

Page 3527 line 15 to 3528 line 17.

Page 3528 line 20 to 3529 line one.

And then the part the Government objected to that I am going to send back, 3612 lines one through 15.

I think I'm going to say it slightly different for the next one because it's a broader range, same numbers, but the way you've broken up is strange.

Page 3313 lines one through five and page 3313 line eight to 3316 line nine.

Page 3272 lines one through seven, lines 11 through 19, and lines 23 through 25.

Page 3295 lines six through 13.

Page 3346 lines 12 through 15.

Page 3367 line 21 to 3368 line two.

Page 3628 lines three through 21.

Again I'm going to break this up a little

differently, listen carefully.

Page 3629 lines 13 through 17, and line 20.

And page 3629 line 25 to 3630 line 24.

Then page 3663 line nine to 3664 line three.

And finally, page 3664 line nine.

Did I get that all correct?

MS. BENSING: I believe so, your Honor.

MS. BONJEAN: Can you read the last one again, your Honor?

THE COURT: 3663 line nine to 3664 line three, and 3664 line nine.

MS. COHEN: That's because of those objections.

THE COURT: Yes. I think originally you hadn't redacted them out.

MS. COHEN: That's right.

MS. BONJEAN: I think that's right. If I can have one second to confirm here?

THE COURT: Then the pages 3313 I read that correctly, correct?

MS. COHEN: Yes, you did.

THE COURT: We're going to give you the pages to physically look at so there is no confusion.

We gave Ms. Cohen the hard copy so you can take a look.

(Brief pause.)

THE COURT: I want to confirm on the record that everybody, of course with the exception of the one portion of the transcript that the Government did not want to go back that I am sending back, does everybody agree that I read the numbers out correctly and that what I handed you that will go back to the jury, the hard copies, is what everybody intends to go back to the jury?

MS. BENSING: Yes, your Honor.

MS. COHEN: Yes, your Honor.

MS. BONJEAN: Yes.

THE COURT: Okay. So I think we'll get it to the jury now and we'll recess. Everybody can stay close by.

(Brief recess.)

THE COURTROOM DEPUTY: All rise.

THE COURT: Everyone may be seated.

As you know we have received a note. I marked it Court Exhibit 17. We'll give you a copy of it but it says simply: We have reached a verdict.

Mr. D'Agostino, you can show the original note.

The note is not signed, but that is not required. If anybody wants to be heard on that you can be heard.

MS. BENSING: No, your Honor.

MS. COHEN: No, your Honor.

MS. BONJEAN: No, your Honor.

THE COURT: I have not obtained the form yet. I do

not know what the verdict is, but whatever the verdict is, I expect that there will be silence when the jury is here, when the jury is returning the verdict, and when the verdict is announced. I do not want noise. It's not respectful. It's distracting. I want everybody to be on notice of that now, including the public in the gallery.

Government, have all required victim notifications been made?

MS. BENSING: Yes, your Honor.

THE COURT: I am going to actually bring the alternates out and they will be sitting in that first bench here in the well. If I can ask, I think it's the FBI agents, to maybe just move down a bit. Thank you. And once the alternates are here, we'll bring in the jury.

While we're waiting, would the parties like me to poll the jury after I read the verdict Government?

MS. BENSING: No, your Honor.

MS. COHEN: Yes, your Honor.

MS. BONJEAN: Yes.

(Alternates enter the courtroom.)

THE COURT: And the Marshal will bring the jury in.

(Jury enters the courtroom.)

THE COURT: Everyone may be seated.

Members of the jury, I have received a note indicating that the jury has reached a verdict. I'm going to

ask the foreperson -- and that's number seven, correct?

THE FOREPERSON: Yes.

THE COURT: Has the jury unanimously agreed on its verdict? I'm not asking what it is, has the jury unanimously agreed on its verdict?

THE FOREPERSON: They have.

THE COURT: Will you please hand the verdict form to my deputy, Mr. D'Agostino. I'm marking the verdict form Court Exhibit 18.

Mr. D'Agostino can you come up here for a moment, please.

The verdict will now be published; that is, read aloud in open court. I ask that the jurors please pay close attention as the verdict is published because you will be asked momentarily about what is about to be read to you; that is, the jury will be polled, each juror will be asked individually whether the verdict as it has been published constitutes that juror's individual verdict in all respects.

Mr. D'Agostino will now read the verdict.

THE COURTROOM DEPUTY: As to the charge of forced labor conspiracy how do you find the defendant Rachel Cherwitz, guilty or not guilty?

THE COURT: Number seven should answer.

THE FOREPERSON: We find her guilty.

THE COURTROOM DEPUTY: As to forced labor conspiracy

how do you find the defendant Nicole Daedone, guilty or not guilty?

THE FOREPERSON: We find her guilty.

THE COURT: The jury will now be polled. Again, you're being asked whether the verdict as it has been published constitutes your verdict in all respects.

Mr. D'Agostino, will you please poll the jury.

THE COURTROOM DEPUTY: Juror number one, is that your verdict?

JUROR NO. 1: Yes.

THE COURTROOM DEPUTY: Juror number two, is that your verdict?

JUROR NO. 2: Yes.

THE COURTROOM DEPUTY: Juror number three, is that your verdict?

JUROR NO. 3: Yes.

THE COURTROOM DEPUTY: Juror number four, is that your verdict?

JUROR NO. 4: Yes.

THE COURTROOM DEPUTY: Juror number five, is that your verdict?

JUROR NO. 5: Yes.

THE COURTROOM DEPUTY: Juror number six, is that your verdict?

JUROR NO. 6: Yes.

THE COURTROOM DEPUTY: Juror number seven, is that your verdict?

JUROR NO. 7: Yes.

THE COURTROOM DEPUTY: Juror number eight, is that your verdict?

JUROR NO. 8: Yes.

THE COURTROOM DEPUTY: Juror number nine, is that your verdict?

JUROR NO. 9: Yes.

THE COURTROOM DEPUTY: Juror number ten, is that your verdict?

JUROR NO. 10: Yes.

THE COURTROOM DEPUTY: Juror number eleven, is that your verdict?

JUROR NO. 11: Yes.

THE COURTROOM DEPUTY: Juror number twelve, is that your verdict?

JUROR NO. 12: Yes.

THE COURTROOM DEPUTY: The jury has been polled.

THE COURT: Mr. D'Agostino, please file and record the verdict.

Is there anything that the parties wish to raise to me at sidebar before I discharge the jury? Government?

MS. BENSING: No, your Honor.

THE COURT: Counsel for Ms. Cherwitz?

MS. COHEN: No, your Honor.

THE COURT: Counsel for Ms. Daedone?

MS. BONJEAN: No, your Honor.

THE COURT: Do the parties believe that it is appropriate for the jury to be discharged at this time?

MS. BENSING: Yes, your Honor.

MS. COHEN: Yes, your Honor.

MS. BONJEAN: Yes.

THE COURT: Members of the jury and the alternates, jury service is important and the Court recognizes that it isn't always convenient. You were an attentive and respectful jury and this was a lengthy trial. Thank you for your service.

The trial has now concluded and you are dismissed as jurors. I would, however, would like to come back to the jury room to give you my personal thanks again, and that would include the alternates as well. If you wouldn't mind waiting a few minutes in the jury room for me, all 17 of you, it would be my honor to come and really thank you for being jurors on this somewhat lengthy trial.

With that, again, all of the jurors including the alternates are dismissed as jurors.

(Jury exits the courtroom.)

THE COURT: Everyone may be seated. I know there are matters that we need to take up. I think it's probably

ideal if everybody has a few minutes to regroup. So I'm going to speak to the jury for a few minutes. I obviously don't offer any opinions to the jury and I don't pry into their deliberations, it is simply to thank them for their service because jurors make sacrifices to sit on any case, especially a long case.

We will just recess and then there will be some matters to take up. You're welcome to -- I think it's better to stay in the courtroom, but if you feel you need to get some air and come back in ten minutes, that's fine as well.

(Brief recess.)

THE COURTROOM DEPUTY: All rise.

THE COURT: Okay. There are a few things we need to take up at this time.

I'm going to schedule the sentencings in this case for Ms. Cherwitz on September 25 at 10:00 a.m. and Ms. Daedone September 26 at 10:00 a.m. That's September 25, 2025 for Ms. Cherwitz; September 26, 2025 for Ms. Daedone, both at 10:00 o'clock in the morning.

Does any party wish at this time to be heard on bail status? I'm also willing to give the parties until tomorrow at 10:00 a.m. to be heard as to bail status, if the parties request that. Government?

MS. BENSING: Your Honor, the Government did have an opportunity to speak with some of the defense attorneys while

the Court took a brief recess. Obviously the Government's concern has been and continues to be with the victims in this case, but the Government is not seeking remand at this time.

THE COURT: The Court is considering all options at this time and paying particular attention to the governing statutes. So do the parties want to be heard now or wait until 10:00 o'clock tomorrow morning.

MS. BENSING: We can wait until 10:00 o'clock tomorrow morning.

THE COURT: Ms. Cohen?

MS. COHEN: Either way, we can be heard now or --

MS. BONJEAN: If the Court would like a letter brief for 10:00 a.m. we can do that.

THE COURT: Okay. Everybody should be aware of the relevant statute here. So I think it makes sense, if the defense wants to be heard I will hear from you either at ten tomorrow or you can put in something before that if you wish --

MS. BONJEAN: Yes.

THE COURT: -- on the issue of bail versus remand.

Let me ask, though, what is the -- I have the bail paperwork somewhere of course -- what are the current conditions? I'm interested in knowing about the co-signers. I believe at least one co-signer at some point was a co-conspirator, in the Government's view.

MS. BENSING: Mr. Rathnathicam.

THE COURT: Yes.

MS. BENSING: Yes, your Honor, we can double check the status of that. I want to make sure what we have is current. Let us triple check that. I believe on Ms. Daedone's bond I believe there are at least three suretors. But let me --

THE COURT: I think her mother is one.

MS. BENSING: I'm not sure if -- okay. There was some switch at some point.

THE COURT: Somebody sold a property.

MS. BENSING: That's why I'm hesitating, I want to make sure we have the accurate information for the Court.

THE COURT: Okay. Is there anything else the parties think we need to take up at this time before tomorrow at 10:00 a.m?

MS. BENSING: Does the Court want to set a schedule for post-trial briefing?

THE COURT: The schedule is set by the rule. If anybody is seeking an extension of that they can seek an extension. I can hear you out on that now or tomorrow as well.

MS. BENSING: I think it's up to the defense.

MS. BONJEAN: We'll raise it all at once tomorrow, your Honor.

THE COURT: That's fine. Again, we're going to have a proceeding on bail tomorrow and you can raise any other requests in terms of a schedule for briefing. I am not interested in really an extended schedule, obviously I'll consider a reasonable request though.

For today, until we meet at ten tomorrow, all of the conditions on which each of the defendants were released up until now continue to apply. The penalties for violating the conditions can be severe. And I set the sentencing dates, and of course, failure to appear for sentencing also carries with it serious consequences. But in the short-term we will be reconvening tomorrow at 10:00 a.m.

One moment, please.

Again, I'll remind the Government of the importance of making sure that any victim notification requirements are complied with, including as to the issue of bail status.

MS. BENSING: Yes, your Honor, we plan to speak to them shortly.

(Continued on next page.)

THE COURT: Anything else to take up before tomorrow morning? Government?

MS. BENSING: No, your Honor.

MS. COHEN: No, your Honor.

MS. BONJEAN: No, your Honor.

THE COURT: Okay. Thank you all. We are adjourned until ten tomorrow.

(Proceedings adjourned at 4:32 p.m. to resume on June 10, 2025 at 10:00 a.m.)