UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

\- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 23-CR-146(DG)

Plaintiff , :

United States Courthouse
-against- : Brooklyn, New York

RACHEL CHERWITZ and
NICOLE DAEDONE, :

May 20, 2025
Defendant. : 9:30 a.m.

\- - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR FURTHER JURY TRIAL
BEFORE THE HONORABLE DIANE GUJARATI and a JURY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: JOSEPH NOCELLA, JR.
Interim United States Attorney
BY: KAITLIN T. FARRELL
KAYLA C. BENSING
NINA C. GUPTA
SEAN M. FERN
Assistant United States Attorneys
271 Cadman Plaza East
Brooklyn, New York 11201

For Defendant Cherwitz: BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, New York 10019
BY: CELIA COHEN, ESQ.
MICHAEL P. ROBOTTI, ESQ.
KELLY LIN, ESQ.
SCHUYLER LA BARGE, ESQ.
KELLY LENAHAN-PFAHLERT, ESQ.

(Appearances continued on the next page.)

Court Reporter: Stacy A. Mace
Official Court Reporter

Appearances: (Cont'd)

For Defendant Daedone: BONJEAN LAW GROUP, PLLC
303 Van Brunt Street, 1st Floor
Brooklyn, NY 11231
BY: JENNIFER A. BONJEAN, ESQ.
KELSEY KILLION, ESQ.

Also Present:

Liam McNett, Paralegal, US Attorney's Office
Marlane Bosler, Paralegal, US Attorney's Office

Galila Assefa, Paralegal, Bonjean Law Group

Kamille Simons, Paralegal, Ballard Spahr

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

---

Court Reporter: Stacy A. Mace, RMR, CRR, RPR
Official Court Reporter
United States Courthouse, Room N377A
225 Cadman Plaza East
Brooklyn, New York 11201
smacerpr@gmail.com

(In open court; jury not present.)

THE COURTROOM DEPUTY: All rise.

(Judge DIANE GUJARATI entered the courtroom.)

THE COURTROOM DEPUTY: The Honorable Diane Gujarati is now presiding.

You may be seated.

Your Honor, this is United States of America against Rachel Cherwitz and Nicole Daedone.

Is the Government ready?

MS. BENSING: Yes.

Kayla Bensing, Kaitlin Farrell, Nina Gupta and Sean Fern, joined by Paralegal Specialist Liam McNett, Marlane Bosler, and FBI Special Agent Tricia Quintero.

Good morning, Your Honor.

THE COURT: Good morning, all.

MS. COHEN: Good morning, Your Honor.

Celia Cohen, Michael Robotti, Kelly Lin, Schuyler LaBarge, Kelly Lenahan -- ah, I practiced this last night -- Lenahan-Pfahlert -- I did it -- and Kamille Simons, all on behalf of Rachel Cherwitz.

THE COURT: Good morning, everyone.

MS. COHEN: Good morning.

MS. BONJEAN: Good morning, Your Honor.

Jennifer Bonjean, Kelsey Killion and Ashley Cohen, on behalf of Ms. Daedone. Along with our paralegal, Galila

Assefa.

THE COURT: Good morning, everybody.

Everyone may be seated.

We have a jury situation. Juror Number 6 reached out to Mr. D'Agostino. She is sick with what she thinks might be a stomach bug or virus. She thinks she could be better tomorrow and is going to try to go to the doctor later today to get checked out and will update Mr. D'Agostino later today.

I am going to leave the bench and give the parties a few minutes to consult with their -- with each other, the defense attorneys to consult with their client, and to let me know your collective thoughts on this.

So, we take -- I will take a brief pause and ask you to consult with each other.

Again, it's Juror Number 6, thinks she has a stomach bug or virus and thinks she could be better tomorrow and is going to try to go to the doctor today to get checked out.

Okay. So we'll recess very briefly.

(Recess taken.)

THE COURTROOM DEPUTY: All rise.

(Judge DIANE GUJARATI entered the courtroom.)

THE COURTROOM DEPUTY: You may be seated.

THE COURT: Okay. We are back on the record. Everybody is here.

I will hear from the parties on the juror issue.

MS. BENSING: So, Your Honor, we've discussed and I think the parties are inclined to see what happens with this juror today.

Certainly, if the juror is still sick tomorrow, the Government would prefer to proceed. I think the defense is unsure about their position with respect to tomorrow, but I think for today the parties agree that it could be prudent to hang onto our alternates.

We do, just so the Court knows, we do still anticipate resting towards the end of next week, so within the -- the four weeks that we had initially told the Court. Some of this does depend on some of these authentication witnesses as the Court is aware, so I say that with a little bit of hesitancy, but we are moving. And I understand from the defense that they anticipate that their case will be shorter than two weeks.

So, in terms of the overall length of the trial, I just wanted to let the Court know that update.

THE COURT: Thank you.

I'll hear from the defense attorneys now.

Ms. Cohen.

MS. COHEN: Sure, Your Honor. We agree with everything Ms. Bensing said.

We would like to assess the situation tomorrow. We understand if it's longer than a day, it creates issues and we

could assess that, but I think right now given that, you know, the timing of things, that we're on -- on target, not to be over what we anticipated. And we can use today to work out, hopefully, some things that we've been talking through with the Government, which could help as well.

THE COURT: Ms. Bonjean.

MS. BONJEAN: Yes, Your Honor.

I think we're all in agreement we don't want to delay things, but one day is probably worth giving up in light of the fact that she was a chosen juror. And if it's not going to be much -- if it's not going to be longer than that, then, you know, I think we -- and hopefully it won't be -- we can assess tomorrow. But I think we're all in agreement on that.

We can put the day to good use, I can assure the Court of that.

THE COURT: Okay. And I take it that doesn't mean filing more motions?

MS. BONJEAN: No. But I do owe the Government a response on their request for reconsideration on the expert issue, so that is one thing --

THE COURT: Okay. That's something that hasn't been filed, though, with the Court yet.

MS. BONJEAN: Correct.

THE COURT: Okay.

MS. BONJEAN: That being the case --

THE COURT: That's fine.

MS. FARRELL: Beyond that, Your Honor, Mr. Pelletier filed a motion to quash, and the Government anticipates --

THE COURT: Where did he file that?

MS. FARRELL: I don't know if it was ever filed. It was sent to your deputy.

THE COURT: That's not a filing.

MS. FARRELL: Great. Well, then -- we have our response prepared.

THE COURT: That's not a filing. It's not a filing. So, I haven't gotten any filing.

MS. FARRELL: Great. Well, we -- we have a response prepared when he files it and we will do so promptly.

THE COURT: And the subpoena is for him or for Mr. Williams?

MS. FARRELL: Both of them. He is, I understand, moving to quash both of them.

It -- it revisits the issue of the privilege that we teed up for Your Honor. So anyway, I just wanted to let you know that.

THE COURT: Are you talking about work product or attorney-client?

MS. FARRELL: They're now asserting attorney-client for the first time. We're not clear what the basis is, but

that is in his letter.

THE COURT: Okay. If there is a filing, it will be addressed.

I am not particularly enthusiastic about not having trial today, but given that all parties are in agreement that they want to wait a day and see if Juror Number 6 is feeling better, I will grant that, essentially, joint request and not excuse Juror Number 6.

I am glad that the parties feel that they are on track; however, the estimate has always seemed too long to me. And based on the way things are coming in, it still seems too long to me, frankly. I think that it's, again, not really so much an issue of the content, but the pace. And there's still some fumbling with exhibits and not having copies and things like that. So, it has gotten better since the beginning of trial, but I don't think anyone should be patting themselves on the back for keeping this case to six weeks necessarily.

So, I think things could be moving along. And, again, not trying to curtail anyone from making valid, you know, arguments or objections or presenting evidence they think is relevant, but it really is the way in which it is being done.

So I will grant the request that we not have the jury, you know, sitting today, so we won't have trial today.

Do the parties want me to tell the jurors anything

specific about today?

I could bring them out and tell them that, you know, with apologies from the Court, we will not be having trial today because a juror is sick. It is our hope and expectation that we'll be able to continue tomorrow.

I can hear the parties out on this, or I could just have Mr. D'Agostino go back and say: We won't be sitting today. Somebody is sick. We'll see you tomorrow.

MS. BENSING: Your Honor, I think from the Government's perspective as long as -- one reason why I think this could be prudent to do today is that I don't want there to be additional jurors indicating that they are sick and then thinking that they may be excused.

So, I do think it's important that we inform the jury that we're not sitting today because we are waiting for a juror who is sick, so that they understand that they will still be expected to come back. But I don't have any preference in terms of how the Court conveys that to the jury. I'd be fine with Mr. D'Agostino doing it.

THE COURT: Ms. Cohen.

MS. COHEN: Yes. We think Ms. Bensing's proposal is fine. That makes sense.

I did have that thought, that we want them to know how serious it is that they're paying attention and, you know, that we understand it will just be a day.

THE COURT: Okay. But you're fine with Mr. D'Agostino just telling them that?

MS. COHEN: Oh, yes. I think either -- yes, I think that's fine.

THE COURT: And, Ms. Bonjean.

MS. BONJEAN: We're fine. I do think it needs to be conveyed.

THE COURT: Somebody is sick and so we have to wait.

MS. COHEN: Yes.

MS. BONJEAN: Yes.

THE COURT: And we will be back tomorrow.

MS. COHEN: Yes.

THE COURT: Okay. I think that's what Mr. D'Agostino will convey, that we are not -- you know, thank you all for coming today, being here. We are not going to be having trial today because a juror is sick. We will see everyone tomorrow.

Okay. We'll do that.

Let me -- actually, Mr. D'Agostino, could you go take care of that now just because I do feel badly that they came here on time and these folks are waiting.

There is a couple of other issues to take up.

So, two motions were filed last night, one by defendants and one by the Government.

Defendants' motion to strike certain evidence and

argument, which was filed at ECF Number 381 is denied. I referenced the topic of jury instructions recently. In addition, the Government mentioned that it would not oppose a jury instruction with respect to defendants' espoused belief. To the extent that any party seeks a jury instruction, that party can propose one in a joint filing.

The other motion filed last night was the Government's motion to admit certain evidence, namely financial evidence. That motion is filed at ECF Number 382. I need to spend more time with that motion. And again, it was filed last night. And I will address that at a later time, recognizing that the Government has anticipated that the evidence it is seeking to elicit from witnesses and through exhibits could come as early as Friday. So, I will revisit that issue now with the benefit of more time today.

Is there anything else right now that we need to take up?

It sounds like the parties have to talk to each other about a few things .

MS. BENSING: Your Honor, I just wanted to flag for the Court that we have passed up a binder to the Court for a witness who I anticipate will testify this week, Robert Kandell.

THE COURT: Yes.

MS. BENSING: There are a large number of exhibits

that we intend to admit through this witness, principally communications.

I -- I don't know that -- the Court may not be surprised to hear that we may not be able to reach agreement on some of these exhibits, and so I just wanted to flag that for the Court.

THE COURT: Okay. What kind of communications, with whom?

MS. BENSING: E-mails principally that this witness is a party to, as well as some text message communications that this witness is a party to.

THE COURT: And with whom?

MS. BENSING: In some cases with the defendants. In most cases with the defendants, and in some cases with Reese Jones.

THE COURT: Okay. And the bases on which you would be offering those, presuming you can get him to authenticate that these are the communications that he recalls or that he created himself or whatever the case may be, is what?

MS. BENSING: In some cases, for the defendant's own statements. And then the remainder would be context. In some cases it's not for the truth of the matter, but simply the fact that they were communicating back and forth about the financial condition of the company at the time.

And in other cases, they may be relying on paging a

co-conspirator, and I think that's a few rare cases, Your Honor.

THE COURT: Okay. It sounds like these are not new issues.

And the defense has all of these documents, correct?

MS. BENSING: Yes.

MS. BONJEAN: We did just get the -- I think yesterday evening we did get a long a list, which today came out. So, maybe we'll be able to work out --

THE COURT: Okay. That's fine.

I also know that each day I'm getting new defense exhibits, and I'm not quite sure why that is. I'm getting them when the witness is getting them. I would prefer to get them ahead of that. And I know there was a reluctance by the defense to give the Government things earlier.

And I think I said before it doesn't make a whole lot of sense to keep it from me when it will just delay things if I am looking at something for the first time that the parties are disputing.

So, maybe it's that you're finding documents the night before, that happens. But to the extent that you're just holding back something, it's really counter-productive and I am going to move things along. And if that means because you didn't give me something on time that we are going to skip over it and come back to it after a break. And you'll

be here with me during the break, that may be what it means, but I would just ask you to, to the extent you can give me documents earlier rather than later — I think by now you all know that I look at everything that you give me — so I would like to be able to do that in a timely way that doesn't keep this jury waiting.

I think this jury is very attentive and they tend to show up on time or close to on time. The juror today was responsible in letting Mr. D'Agostino know that she was ill, so I don't want to keep them waiting.

So if you have documents that you're going to be using, even if you for whatever reason are not able to share them with the Government, you have to be able to share them with me.

MS. COHEN: Your Honor, I'll just add that we're not holding back for that reason. Apologies.

Obviously, we do try to get you -- sometimes a witness testifies and it rings -- makes us realize something that we want to show.

THE COURT: I understand.

MS. COHEN: But we absolutely are not doing that on purpose. We'll try --

THE COURT: I wasn't really suggesting in the sense of on purpose or nefarious, but just get more organized maybe then too. Because I think some of it is -- there are

definitely documents you used that were clearly ones you were going to use. I mean I don't think there's any way around that, and I didn't get them in time.

So, anyway I leave you with that. And you have the day today to kind of get more organized.

Anything else?

MS. FARRELL: Yes. On the topic of sort of previewing for the Court and organization, I think since we're all here, I just wanted to flag the following:

So as Your Honor I think well understands, because we've briefed the issue, we intend to authenticate certain text messages that principally the defendants are on with other OneTaste executives. And these in some cases are, you know -- we intend to authenticate these through, first, a paralegal from the U.S. Attorney's Office who received the Grand Jury subpoena productions from OneTaste. And that person can look at the GX's and look at the production and say: Government's Exhibit 1 through 10 are text message chains that were produced by OneTaste on, you know, August 1st, 2020. I just made up the date, obviously.

And then we intend to put on a OneTaste custodian, Mr. Pelletier or Mr. Williams, or potentially both, to say OneTaste, in fact, produced -- you know, did a production of materials that included text messages that had been collected from OneTaste employees on or about these dates.

At that point we believe we will have established the authenticity of the document. But then separately, there's the issue of -- two issues, relevance and non-hearsay basis for admission. We intend to -- to publish those defendant's statements through an FBI summary witness, as is the typical way that you would put in a defendant's -- a non-testifying defendant's statements.

But what we intend to do is in advance of putting on that witness is provide to, both the defense and the Court, a chart of exactly what those exhibits are, what their relevance -- you know, what the GX number is, who the parties to the statement are, what the relevance is based on the testimony to date, and what the non-hearsay basis for admissibility is.

And we also -- a project that is underway, that is not yet completed, is we understand from how this trial has gone so far is that some of these are very long texts chains, but that Your Honor's preference is to only admit portions of it that the relevance for which has been established. So we're going through --

THE COURT: Well, I mean I think that's fairly fundamental. Right? You're not just going to be throwing in pages and pages that have no relevance. Right?

So it's not my preference, it's really the Rules of Evidence.

MS. FARRELL: Understood, Your Honor.

So, we're -- I mean we think all of it is relevant. Obviously, there are parts that are more relevant than others, and so we are trying to, A, narrow the set; and B, narrow the content of the each specific text thread. So, we are currently going through it and potentially, like, redacting or narrowing those threads from what was originally produced, with the plan being of providing all of that to the Court and the defense in advance of this special agent's testimony, so that to the extent there are arguments about the content of the text, those are worked out in advance.

Because the summary, the FBI summary witness is simply publishing -- publishing these to the jury. He's not going to be, you know, someone with first-hand knowledge who's on the text messages. They are, nevertheless, admissible because they're the defendants' messages.

THE COURT: I want to understand more, and I think I asked about this the other day.

Exactly the testimony that you intend to elicit either from a paralegal, if the Court allows, or from a custodian at OneTaste, or from individuals whose text messages are the subject of these exhibits. Right. Really the first two buckets are more important for me to hear the scope of what exactly you plan to elicit.

MS. FARRELL: Certainly. I can do that right now.

And just so you know, we had put all this in our motion in response to Mr. Pelletier's letter, but I understand he didn't actually file it. So, I'll --

THE COURT: I mean unless he's done it this morning since I took the bench, but he hadn't as of 20 minutes ago or 25 minutes ago.

MS. FARRELL: I understand. So, let me proffer that for you.

So, the first is a former paralegal from the U.S. Attorney's Office who worked on this case, who is the person who received all the productions from OneTaste when they were being made pursuant to the Grand Jury subpoenas that had been served.

There were three Grand Jury subpoenas served on OneTaste. The texts were really in response to the second one. And so she will testify, you know, a Grand Jury subpoena was served on OneTaste that requested this set of information. On such and such date, OneTaste produced materials in response to the subpoena. This is what the cover letter said. These are the materials.

THE COURT: I don't think I've seen the cover letter or the materials. Is that right?

MS. FARRELL: Correct. We're not going to provide you the materials because it's literally like --

THE COURT: Okay.

MS. FARRELL: -- dozens of thousands of text messages.

THE COURT: Yes. But it's in the cover letter, though?

MS. FARRELL: We can provide you the cover letter. It's a cover e-mail, but we can provide that to you.

They -- they were served in tranches or produced in tranches, so it's not just one production. I believe there are three that are responsive.

Again, this is all laid out in the letter in response to Mr. Pelletier. Perhaps what I'll do today, Your Honor, is just change it as a letter to the Court so that you have it in a letter form.

But, essentially, there were three, I believe three productions made by OneTaste in which these text messages responsive to the Grand Jury subpoena were produced. And so, our former paralegal will say, you know, I received them. I saved them on our drive. I've -- you know, I've since -- I understand Government -- that Exhibits 1 through 10 are marked for admission in this trial. I've reviewed the content of those exhibits and compared them to what was produced by OneTaste. They are identical documents.

Then we'll have Mr. Pelletier or Mr. Williams, potentially both depending on how their testimony comes out, say, I -- let's say Mr. Pelletier, because he's the one who

actually submitted all -- who actually made all these productions: OneTaste got a Grand Jury subpoena. I was their lawyer. We gathered materials responsive to the subpoena.

Somebody will say, I don't know if it's Mr. Pelletier or Mr. Williams or Eli Block: In response to the subpoena we collected phones of employees of OneTaste, you know, uploaded text messages from those phones and produced responsive text messages pursuant to the subpoena.

Now, the issue that they are asserting work product privilege over, which we think we should be permitted to have them testify about, is the identity of the employees from whom they collected the phones. I believe that is the core issue over which they are asserting work product privilege. And now, I understand also attorney-client privilege. Although, that is a new assertion as of Friday.

You know, our belief, which we've argued to Your Honor before -- and we can supplement this -- is that it's not work -- the identity of the individuals from whom the phones were collected, even if it at one point was work product privilege, it no longer is now that those materials have been produced, and there was no assertion made at the time of the production. Although, the subpoena --

THE COURT: That's why I need to know what the response was.

MS. FARRELL: Yes.

THE COURT: Did the response identify the people from whom the materials were collected?

MS. FARRELL: Well, it indicates that it's -- it's self-evident from the materials that are collected.

THE COURT: What do you mean it indicates that it's self-evident?

MS. FARRELL: Like, the -- it says on the -- on the face of the document who -- who is -- the participants in these texts.

THE COURT: That's a different question though, right?

MS. FARRELL: Right.

The cover letter does not say we collected from the following ten people. At the same time, they did not assert any privilege over -- there were separate privilege assertions over separate documents that are not at issue today, and which we take no issue with.

THE COURT: Did they respond?

I think we went through this the other day, so I don't want to repeat necessarily, but there were different paragraphs in the subpoena calling for particular information.

Was that provided or was there an incomplete compliance with the subpoena?

There was those couple of paragraphs I read out to you which were just examples.

MS. FARRELL: Yes.

So, the subpoena called for any privilege assertions to be made at the time. It also called for the company to certify compliance. It also called for the company, to the extent there were incomplete documents or incomplete materials where summary materials being provided, for -- for the company to indicate as much.

So --

THE COURT: There was also something about authentication I believe, right?

MS. FARRELL: Correct.

THE COURT: I could pull it out.

MS. FARRELL: Correct. That the company -- that to the extent they weren't going to provide somebody to authenticate the documents at the time of trial, to indicate as much.

And so, they produced the documents. There was no indication that there was any privilege being asserted over them at the time. There was no indication that the documents were incomplete or not what they purport to be, which just spacially they look like and they are text messages with employees whose names are on the document.

So, in other words, at the time of the subpoena response, there's no reason that the Government would have anticipated being where we are today because they did not

assert a privilege. They didn't --

THE COURT: Well, surely you could have anticipated that OneTaste would be filing a motion, if not exactly this one, but something else along these lines, no?

MS. FARRELL: I have to say, personally no. I mean I wasn't involved at the time, but I've never, ever -- I've done a lot of white collar trials, I've never been in a situation where a corporation has refused --

THE COURT: It's not common.

MS. FARRELL: -- to authenticate its own documents that it has produced in response to a subpoena.

And so, our position is to the extent there are issues in response to the subpoena, the subpoena called for the company to flag those at the time and they were not --

THE COURT: That's what I asking about the other day.

MS. FARRELL: Yes.

THE COURT: And that's why I'm asking you now, what exactly are you planning to elicit about the response, about what was asked for and then what was given?

That's what I'm asking.

MS. FARRELL: Yes. So, the -- from the paralegal we'll elicit, you know: This list of ten people -- ten employees, their texts were requested. In response to this specific number on the subpoena, OneTaste produced -- made

these three productions. Those individuals' names are, in fact, listed on the documents that were produced.

From -- from -- then from the OneTaste custodian we'll elicit: We got the subpoena. We produced these materials in response to this request.

What I'd like to elicit is: Exactly from whom did you collect phones?

They're going to -- I understand they will assert work product over that answer, unless the Court orders them to answer.

Frankly, I don't --

THE COURT: I don't know if that would be reason to believe that if the Court orders them to answer, that they will still refuse to answer.

MS. FARRELL: Yes. Mr. Pelletier has indicated that they intend to mandamus you if you order them to answer.

What I will say is, I actually don't think for purposes of authenticity that we even need to elicit that testimony.

THE COURT: Well, this is why I'm asking you --

MS. FARRELL: Yes.

THE COURT: -- what exactly are you seeking to elicit?

MS. FARRELL: Well, I think it would be sufficient, but here's the thing is I don't -- we want guidance from the

Court on this because our -- our only goal is to get these text messages into evidence, to authenticate them.

The Government thinks it is sufficient, and we -- we understand OneTaste agrees, that it would be sufficient to have a OneTaste custodian testify that we got this request for these ten people's text messages. We collected employees' text messages and produced them in response to the subpoena.

THE COURT: Why do you need that middle step?

MS. FARRELL: That they collected the --

THE COURT: Why is it not sufficient that you indicate that you --

MS. FARRELL: We complied with this provision of the subpoena?

Yes, I think that's right. We actually think it is sufficient. And then to the extent they want to challenge, you know, go after the weight, not the admissibility, of the document and claim that these are what, I don't know, someone made them up and they're fake. Like fine, this they want to cross on that, be my guest.

You know, we would obviously point to some of the defense exhibits where they appear to be using these very text messages themselves.

THE COURT: I mean to the extent that you are going to be possibly putting on people whose texts are at issue and they authenticate that these are their texts, that is yet

another data point to indicate that these documents are what they purport to be.

I assume that that is another one of your bases on which you would ask the Court to admit the others.

MS. FARRELL: That's correct.

So, we are prepared to call all the people whose texts -- whose texts were produced in response to the Grand Jury subpoena. We don't think we need to do that, and we don't think -- we would prefer not to have to do that. They're all adverse witnesses who still work at OneTaste and who are going to -- you know, they may -- they may well not recall and personally be able to authenticate them because they haven't seen the documents in a long time.

But we do -- there already have been, and there will be, additional people who are going to testify who are going to look at documents that were produced by OneTaste and be able to authenticate them. And we believe that that is sufficient to authenticate all the documents because it shows that what was produced by OneTaste are, in fact, true and accurate copies of text messages of employees.

So, for example, Mr. Kandell is going to testify, we anticipate he is going to be able to authenticate his own text messages as Ms. Bensing just indicated. Those are text messages that came from that tranche, that production, that OneTaste provided.

THE COURT: Well, let me just say based on what I've seen — and, again, if there's some filings that were intended to be filed that weren't, I haven't seen them yet — but I am not at all persuaded that there is either work product protection or attorney-client privilege at issue here. I think there's game-playing going on. And, you know, enough is enough.

So, you know, I think you can talk to the defense here. I think one thing you might want to think about is exactly what, you know, the universe of what you want to put in. And, perhaps, a testimonial stipulation might go a long way here.

But, again, you know, there's game-playing going on here and enough is enough.

MS. FARRELL: Thank you, Your Honor. We feel the same way.

And I -- I think the bottom line is we can authenticate these text messages without having to get to the point where OneTaste is threatening to mandamus you.

THE COURT: They can threaten all they want. That's really separate from the evidentiary decisions that this Court will be making.

MS. FARRELL: Exactly. I don't -- I don't think we need to get the testimony about from exactly who the texts were collected, given that we can just establish what the

subpoenaed said and the fact that they said they were in compliance with the subpoena.

All right. Thank you, Your Honor.

Oh, I'm sorry. I think Ms. Bensing had something to add.

MS. BENSING: No.

MS. FARRELL: No, all right.

THE COURT: All right. I think the parties have a lot to talk to each other about, but I will tell you that the Government makes persuasive arguments on this point. I think that it would be worthwhile having a conversation with these two defense attorneys. OneTaste is not a party in this case, and I am not attributing game-playing to these attorneys here. Let me make that very clear.

Okay. We are adjourned. And, hopefully, we will have our full complement of the jury tomorrow.

MS. FARRELL: Thank you.

THE COURT: Have a productive and good today. Maybe give yourselves a little bit of a break.

(Matter adjourned to May 21, 2025 at 9:30 a.m. )

ooo0ooo