

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

KTF/NCG/SMF
F. #2018R01401

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 18, 2025

<u>By E-mail</u>

Probation Officer Meghan Wing
United States Probation Office
Eastern District of New York
202 Federal Plaza
Central Islip, New York 11722

   Re: United States v. Cherwitz, <u>et al.</u>
      <u>Criminal Docket No. 23-146 (DG)</u>

Dear Officer Wing:

   On August 21, 2025, the United States Probation Office ("Probation") disclosed its Presentence Investigation Report ("PSR") as to defendant Nicole Daedone (the "Daedone PSR") and defendant Rachel Cherwitz (the "Cherwitz PSR", and, collectively, the "PSRs") to the relevant parties. On September 4, 2025, the defendants collectively submitted to Probation their objections (the "Objections") to the PSRs. The government respectfully writes in response to those collective Objections.

   As a preliminary matter, and as discussed herein throughout, the majority of the Objections read less like challenges to discrete factual inaccuracies contained in the PSRs and more like attempts to relitigate the jury's verdict. Rather than identifying specific misstatements in Probation's account of the offense conduct, the Objections focus on rejecting the very conclusions the jury necessarily reached when it convicted the defendants of forced labor conspiracy. By disputing findings that are integral to the verdict—such as the existence of coercion or the nature of victim harm—the defendants are not correcting factual errors in the PSRs but instead are rehashing arguments already presented to a jury throughout a five-week trial which were rejected.

   The PSRs are required to reflect the offense conduct established at trial, including the evidence that the jury credited in reaching their verdict, and through other relevant evidence uncovered during Probation's investigation. When defendants object on grounds that undermine or contradict the jury's verdict, they are in essence challenging the legitimacy of the jury's determinations rather than the report's factual accuracy. The Objections should therefore not be understood as genuine disputes over the PSRs' contents, but as thinly veiled attempts to avoid the consequences of their criminal culpability. For that reason, the government herein opposes

the defendants' objections that are not specific to any factual inaccuracies contained in the PSRs and will only respond to specific factual inaccuracies the defendants raise in their filing.

**<u>Response to the Defendants' Generalized Objections</u>**

**<u>1.</u>**

The government has no objection to referring to witnesses who testified at trial in their true name, rather than Jane Doe or Co-Conspirator. For those who did not testify at trial, however, the government agrees with Probation's use of Jane Doe or Co-Conspirator.

**<u>2.</u>**

The defendants take issue with the use of quotation marks when referring to certain OneTaste terminology, such as orgasmic meditation. But the PSRs only refer to orgasmic meditation in quotation marks the first time it appears, PSR ¶ 5,[1] and then no longer uses quotation marks. Contrary to the defendants' suggestions, the PSRs do not show "contempt" for the practice of OM and merely describe the trial evidence.

**<u>3.</u>**

The defendants' objection misstates the PSR process. While the government provided a draft factual background to Probation in this case—as is customary and efficient in complex matters like this one—the PSRs are not simply a government document. Publication 107, which is cited by the defendants in their Objections, and Rule 32 require Probation to exercise independent judgment, but they do not prohibit Probation from incorporating party submissions where those materials accurately reflect the record. The probation officer retains discretion to edit, exclude or supplement those submissions based on her independent review of the trial record, investigative reports and defense submissions. Nor are the PSRs required to reproduce every witness statement in full. By design, the PSRs are summary documents, and the Court remains the ultimate arbiter of any factual disputes. Defendants have now had the opportunity to object and the Court will resolve those objections at sentencing.

**<u>4.</u>**

Some of OneTaste's practices were part and parcel of the forced labor conspiracy, and there is nothing improper in describing those practices and their role in the conspiracy, which was proved at trial.

---

[1]    Unless otherwise noted, all paragraph references are to both the Daedone and Cherwitz PSRs.

## Response to the Defendants' Particular Objections

**4.**

      This paragraph is supported by the factual record and should not be amended.  In particular, as proven at trial, OneTaste operated an "OM house" in Brooklyn.

**5-6.**

      These paragraphs are supported by the trial record.  The government has no objection to removing "warehouses" from the second sentence of ¶ 5 and clarifying that one of OneTaste's communal residences was called "the Warehouse."

**9.**

      This paragraph is supported by the trial record and the guilty verdict against the defendants.  The government has no objection, however, to replacing "scheme" with "conspiracy."

**10.**

      This paragraph is supported by the trial record and should not be amended.

**12-13.**

      These paragraphs are supported by the trial record, and as to those witnesses who did not testify, by Section 3500 material produced to the defense.  Notably, the jury rendered a guilty verdict despite victim testimony that they were physically able to leave OneTaste.

**14-23.**

      The entirety of this section—which incorporates victim testimony and exhibits introduced at trial—is supported by the trial record.  The defendants' objections simply take issue with the victims' testimony and the jury verdict.  In any event, the government has no objection to incorporating testimony that Jane Doe 7 worked as a co-lead of OneTaste's Las Vegas branch.

**24.**

      This paragraph is supported by the trial record.  In particular, trial testimony established that Daedone and Cherwitz increased the importance of the sales team in 2012 after the Investor could no longer fund OneTaste.  See Tr. 3413.  The government has no objection, however, to including that OneTaste first began selling courses in 2006.  The remainder of the paragraph should not be amended, as the defendants do not dispute that OneTaste participants "could expect" to participate in OM.

**26.**

This paragraph is supported by the trial record and should not be amended.

**27.**

This paragraph is supported by the trial record.  The government has no objection to adding that some employees who lived in OneTaste residences participated in "work trade," an arrangement where they would work in exchange for rent or meals at OneTaste residences.

**28-30.**

These paragraphs are supported by the trial record and should not be amended.

**31.**

This paragraph is supported by the trial record, in particular the testimony of Jane Doe 2, and should not be amended.  That, as she testified, Jane Doe 2 may have relented and consented to do a demo with a male partner does not mean she consented to defendant Cherwitz touching her genitals.  John Doe 1's 302 corroborates Jane Doe 2's account, and the government has no objection to providing the full text of the relevant 302s to the Court for its consideration. See 3500-HT-6.

**33.**

This paragraph is supported by the trial record and should not be amended.

**34.**

This paragraph is supported by the trial record and should not be amended.  In addition, there is substantial evidence, including photographic evidence, that one OneTaste participant's buttocks were engraved using a scalpel with the initials "ND" (for Nicole Daedone) during a BDSM session.  The defendants moved to exclude any mention of this during trial on the grounds that it was more prejudicial than probative, and such evidence was not offered at trial.  However, the Court is permitted to consider this evidence in connection with sentencing.

**35.**

There was substantial trial evidence that witnesses were isolated from their families.  The PSR is not suggesting there was total isolation; but it is consistent with the trial record that Cherwitz discouraged a number of witnesses from taking trips or communicating with family members as described in this paragraph of the PSR.

**36.**

        This paragraph is supported by the trial record and should not be amended.  This paragraph discusses Daedone and Cherwitz's <u>actions</u> in deliberately interfering with established relationships to control their followers – not their beliefs or speech.

**37.**

        While Jane Doe 21 did not testify at trial, this paragraph is supported by her 302, which the government is prepared to provide the Court in connection with sentencing.

**38.**

        The defendants misconstrue this paragraph – it does not say they "targeted" individuals with past trauma; rather, that they "exploited" individuals with past trauma.  There is considerable trial evidence supporting that OneTaste participants were encouraged, and even required, to disclose their past trauma and use it to sell OneTaste courses.

**39-45.**

        These paragraphs are supported by the trial record and should not be amended.

**46.**

        This paragraph is supported by the trial record and should not be amended.  <u>See</u> Tr. 3414.

**47.**

        This paragraph is supported by the trial record and should not be amended.

**48.**

        While Jane Doe 21 did not testify at trial, this paragraph is supported by her 302, which the government is prepared to provide the Court in connection with sentencing.

**49-55.**

        These paragraphs are supported by the trial record and should not be amended. The government has no objection to removing the sentence regarding Jane Doe 1's probation in ¶ 50.

**56.**

      The government has no objection to striking that the "defendants and their co-conspirators encouraged the OneTaste participants" to accept money from "sugar daddies" or participate in fake marriages, but it is accurate that the defendants knew OneTaste participants engaged in these activities to pay for OneTaste courses.  See Tr. 1263-64. Likewise, it is accurate that CC-8 helped set up an account on sugardaddy.com for Jane Doe 5.  Tr. 1240-41. It is also supported by the trial record that the defendants encouraged OneTaste participants to ask men from the community to pay for courses.

**57-58.**

      These paragraphs are supported by the trial record and should not be amended.

**60.**

      Defendants' objection mischaracterizes both the record and the function of the Presentence Report.  A PSR is not required to recite every detail of a witness's testimony or cross-examination; its purpose is to provide an accurate and balanced summary of the evidence and relevant conduct.  This objection does not identify any factual inaccuracy, but instead reflects disagreement with how the testimony is characterized.  It should therefore be rejected; ¶ 60 is correct as written.  See, e.g., Tr. 1688-90.

**61.**

      This objection mischaracterizes the trial record.  There is nothing in ¶ 61 that suggests that OM was nefarious; instead, ¶ 61 summarizes various witnesses' testimony regarding their participation in OM sessions.  The defendants fail to point to any factual inaccuracies in this paragraph.

**62.**

      This objection ignores the trial evidence and mischaracterizes ¶ 62.  Paragraph 62 is merely a summary of various witness' testimony, see, e.g., Tr. 824-26, including, specifically, Jane Doe 6, regarding her understanding of what the term "research partners" meant at OneTaste.  See Tr. 1032-34; 1048-49; 1069-74.  Again, the defendants fail to point to any factual inaccuracies in this paragraph.

**63.**

      This objection mischaracterizes the evidentiary record, including not just the trial record but also evidence uncovered during the government's investigation.  Indeed, ample evidence indicates that "sex was used as a means of encouraging productivity."  See, e.g., Tr. 1583; 1585; 1686; 2742-43; 3960-61; 3500-MPI-1; 3500-MPI-2; 3500-RW-33; 3500-MN-17; 3500-MN-47; 3500-MN-52.

The government agrees that Paragraph 63 should be amended to delete the final clause: "which they did at her direction."

**64.**

There is no requirement that the factual assertions contained in a PSR contain every statement a witness made. To the contrary, ¶ 64 is factually correct as written and the defendants point to no factual inaccuracies contained therein.

**65.**

This paragraph does not make a "connection" between the encouragement of marriage and the forced labor conspiracy. Defendants point to no factual inaccuracy contained therein.

**66.**

This objection mischaracterizes the trial record. Multiple witnesses testified that sexual activity was framed as essential to participants' "healing" and to "working through trauma." See, e.g., Tr. 258; 2131-32; 2833; 3949-51; 3960-65. The allegations regarding Jane Doe 1 are supported by other OneTaste participants who witnessed Jane Doe 1's treatment. See, e.g., 3500-HT-1. For example, Jane Doe 4 testified to her observations regarding Jane Doe 1's experiences at OneTaste. See, e.g., Tr. 3918 (discussing Cherwitz discouraging Jane Doe 1 from seeking medical treatment); 3962-65 (discussing, inter alia, (i) Cherwitz directing Jane Doe 1 to set up an OkCupid profile to have more sex; (ii) Cherwitz assigning Jane Doe 1 to have more sex; and (iii) the effect that these assignments had on Jane Doe 1). However, the government has no objection to striking the last sentence of this paragraph.

**67.**

This objection mischaracterizes the trial record. Again, the defendants' objections point to no factual inaccuracies but merely attempt to relitigate the jury's verdict regarding what constitutes serious harm.

**68.**

This objection mischaracterizes the trial record. Numerous witnesses testified that the defendants, together with their co-conspirators, regulated aspects of everyday life, including access to "mainstream activities and materials." See Tr. 2457; 2705-06; 2746; 2899-2901.

**69-80.**

Defendants' generalized objection is misplaced. The paragraphs at issue accurately summarize the victims' testimony. The victims' testimony reflected the victims'

personal perspectives on the harms they endured, including the effects on their sense of self, autonomy, and identity.

Moreover, as noted above, Probation is not required to reproduce victim statements in full or to include every contextual detail; it is sufficient that the report fairly and accurately conveys the substance of the statements, which it does here. To the extent defendants suggest that additional context is relevant, that argument goes to the weight the Court may accord particular statements at sentencing, not to whether the paragraphs should be stricken from the report.

## 81.

Defendant's objection is not a proper basis to strike or revise the paragraph. First, the PSR accurately reflects the evidence concerning defendant Cherwitz's role and compensation in connection with OneTaste. That Cherwitz may have earned approximately $35,000, or $400,000 over a decade does not undermine the significance of her financial benefit from the scheme. Second, that Daedone earned a modest income does not undermine the significance of her financial benefit from the scheme. The Guidelines do not require that a defendant receive extraordinary or disproportionate profits to be included in a PSR.

The government has no objection to adding that Cherwitz earned from OneTaste a total of $421,883 between 2007 and 2018.

## 82.

This paragraph is supported by the trial record. See, e.g., Tr. 708; 828; 1663; 2120-21; 2439; 3424. The government has no objection, however, to striking "massage parlors" from the second to last sentence.

## 83.

This objection mischaracterizes the trial evidence. Specifically, OneTaste's own literature identifies OM as a sexual practice. See GX 3120.

## 85.

There is nothing in ¶ 85 that states that anyone was forced to participate in scenes. Paragraph 85 is correct as written.

## 86.

This objection misstates ¶ 86. There is no evidence to support the factual basis contained in defendants' objections. Paragraph 86 is correct as written.

**87.**

There is nothing in ¶ 87 that suggests that the scenes were in any way illegal. Paragraph 87 provides specific, factual allegations regarding the scenes that Daedone organized for the Investor.

**88.**

The government hereby incorporates its discussion and objections to the PSR's failure to impose a two-level increase pursuant to U.S.S.G. § 3C1.1.

**89.**

This objection fails to point to any material or factual inaccuracy. The PSR describes a pattern of conduct that obstructed (or attempted to obstruct) the trial proceedings.

**90.**

Again, this objection fails to point to any material or factual inaccuracy. It is also beyond dispute that this letter contained multiple references to witness interviews designated as sensitive.

**91.**

This objection takes issue with the implications of these factual assertions but does not deny the factual allegations contained therein. Paragraph 91 is correct as written. See, e.g., ECF No. 318 at 5-6.

**92.**

This objection again takes issue with the implications of these factual assertions but does not deny the factual assertions contained therein. Indeed, the Court indicated that it had seen these gestures firsthand, which resulted in an admonition from the Court. See, e.g., Tr. 3908-10; see also Bond Hearing Tr. 39-40 (the Court and Daedone's defense counsel discussing "Marcus" "making faces"). Disruptive commentary by the defendants' supporters occurred throughout trial. See, e.g., Tr. 3944 (court stopping the proceedings to instruct someone in the gallery to "take your conversations outside").

**95.**

The government reiterates its response to the defendant's objection as to ¶ 9. Again, this objection takes issue with the implications of these factual assertions but does not deny the factual allegations contained therein.

**98.**

The government herein incorporates its objections to the Daedone PSR's failure to include an enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.

*Offense Level Computation Regarding Daedone*

**106.**

Defendant Daedone objects to the imposition of a three-level sentencing enhancement under § 2H4.1(b)(3)(A), which applies when a victim is held under a condition of involuntary servitude for more than one year. Daedone asserts that because no jury found that the defendants committed the substantive offense of forced labor, this enhancement cannot apply. Relatedly, Daedone asserts that the district court cannot find that the defendants committed the offense of forced labor because such a finding necessarily violates various constitutional protections.

First, the Guidelines explicitly contemplate situations in which defendants are convicted only of conspiracy. In particular, U.S.S.G. § 2X1.1(b)(2) directs a sentencing court to adjust a defendant's base offense level for conspiracy downwards by three levels "unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control." Indeed, numerous courts have declined to impose the reduction despite the defendants being guilty only of an inchoate offense. See, e.g., United States v. Deas, 768 F. App'x 81, 82-83 (2d Cir. 2019) (attempt); United States v. Lutchman, 910 F.3d 33, 39 (2d Cir. 2018) (conspiracy); Kaplan v. United States, 663 F. App'x 69, 71 (2d Cir. 2016) (conspiracy); United States v. Nicolescu, 541 F. App'x 93, 99 (2d Cir. 2013) (attempt and conspiracy); United States v. Medina, 74 F.3d 413, 418-19 (2d Cir. 1996) (attempt and conspiracy). In such instances, the relevant question is simply whether the conspiracy "ripen[ed] into [a] substantially completed offense[]" or "c[a]me close enough to fruition." United States v. Amato, 46 F.3d 1255, 1262 (2d Cir. 1995).

It is clear, therefore, that the defendants' allegations that the government is seeking to punish the defendants for a crime for which they were not convicted is a red herring. Neither the PSR nor the government are seeking a punishment beyond the statutory maximum for the crime for which the defendants were convicted. Rather, the PSR seeks proper implementation of the applicable sentencing guideline.

Indeed, unconvicted or uncharged relevant conduct may be relied upon to adjust a defendant's sentence level as contemplated by the Guidelines based on proof by a preponderance of the evidence. United States v. Gigante, 94 F.3d 53, 55 (2d Cir. 1996); United States v. Rodriguez-Gonzalez, 899 F.2d 177, 182 (2d Cir. 1990); United States v. Concepcion, 983 F.2d 369, 388, 390, 394 (2d Cir. 1992); United States v. Vaughn, 430 F.3d 518, 526-27 (2d Cir. 2005); but see U.S.S.G. § 6A1.3 cmt. ("Acquitted conduct . . . is not relevant conduct for purposes of determining the guideline range."). At sentencing, judges are not limited to

considering the facts found by the jury or admitted by the defendant, but instead are obligated to make findings at sentencing using a preponderance standard.  See, e.g., Vaughn, 430 F.3d at 528; United States v. Cordoba-Murgas, 233 F.3d 704, 708-09 (2d Cir. 2000).

As the Second Circuit has noted, factual determinations used to sentence a defendant to a sentence within the maximum allowed by statute based not only on conduct charged in an indictment but also on relevant conduct (as defined by U.S.S.G. § 1B1.3) can be made by a court without violating a defendant's right to due process.  White, 240 F.3d at 136; see also U.S.S.G. § 6A1.3 cmt. ("The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.").  In making such findings, the Circuit has instructed that a preponderance of the evidence is the appropriate standard to be used.  See Cordoba-Murgas, 233 F.3d at 708-09; White, 240 F.3d at 136; United States v. Ruggiero, 100 F.3d 284, 290-91 (2d Cir. 1996) (proof by a "preponderance of the evidence" is the applicable burden of proof when a sentencing judge is asked to assess disputed facts relevant to sentencing).  The defendants' concerns that obliquely reference the Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), only apply when a sentencing court's findings increase the penalty faced by the defendant above the statutory maximum for a given count, and not when they merely affect the length of a sentence within the statutory range.  White, 240 F.3d at 135-36 ("Here, the district court did not exceed the maximum for any individual count. It cannot therefore be said that, as to any individual count, the court's findings resulted in the imposition of a greater punishment than was authorized by the jury's verdict."); see also United States v. Garcia, 240 F.3d 180, 183 (2d Cir.2001) ("We see nothing in the Court's holding in Apprendi or its explication of the holding that alters a sentencing judge's traditional authority to determine those facts relevant to selection of an appropriate sentence within the statutory maximum . . .").  Indeed, where factual findings do not allow for a sentence greater than the statutory maximum, judicial factfinding rather than jury factfinding is "required [ ] under an advisory Guidelines regime."  United States v. Singletary, 458 F.3d 72, 80 (2d Cir.2006) (emphasis omitted).

Second, Daedone's objection as to the three-level sentencing enhancement misstates both the law and the operation of the Guidelines.  The enhancement under § 2H4.1(b)(3)(A) does not require a substantive conviction for forced labor under 18 U.S.C. § 1589.  Rather, it requires a judicial finding by a preponderance of the evidence that the offense conduct involved holding a victim in a condition of involuntary servitude for more than one year.  As described above, it is well established that enhancement may apply even where the jury's verdict did not specifically resolve the factual predicate, so long as the finding does not increase the statutory maximum sentence or trigger a mandatory minimum sentence.  See White, 240 F.3d at 135-36; see also Portalatin v. Graham, 624 F.3d 69, 88 (2d Cir. 2010) ("[J]udicial factfinding that is undertaken to select an appropriate sentence within an authorized range – up to and including the Apprendi maximum – does not offend the Sixth Amendment.") (emphasis in original).  Here, applying § 2H4.1(b)(3)(A) falls squarely within the sentencing court's authority.

Daedone's related constitutional argument also fails.  Courts have repeatedly held that judicial fact-finding at sentencing does not violate the Sixth Amendment, the Due Process Clause, or the Double Jeopardy Clause, provided that the sentence imposed does not exceed the

statutory range authorized by the jury's verdict.  Daedone's conspiracy conviction under
§ 1594(b) already authorizes a 20-year statutory maximum, and the enhancement here merely
guides the district court's exercise of discretion within that range.  Thus, no constitutional
protections are violated by considering whether victims were subjected to involuntary servitude
for longer than one year.

   Finally, the trial record provides ample evidence supporting the enhancement.
Multiple witnesses described being compelled to provide unpaid labor and sexual services for
years, often under constant threat of economic, psychological, and reputational harm.  See, e.g.,
Tr. 149-50; 254-56; 298; 372; 1051-52; 1056; 1080; 1121-22; 1125; 1259; 1270; 1695; 2102;
2123; 2409; 2422; 2963; 3949-50.  These conditions meet the definition of involuntary servitude
under § 2H4.1(b)(3)(A).  The jury's conspiracy verdict confirms that the defendants agreed to
and executed a scheme to compel such labor, and the district court may appropriately credit this
evidence to find, by a preponderance, that victims were held in involuntary servitude for more
than one year.  Accordingly, the enhancement is properly applied.

## 107.

   Defendant Daedone objects to the imposition of the offense level applicable to
§ 2A3.1 pursuant to the U.S.S.G. § 2H4.1(b)(4)(B) sentencing enhancement.  First, Daedone
asserts that the record does not establish that Daedone committed criminal sexual abuse.  Second,
Daedone asserts that the application of this enhancement violates her constitutional right to
"defend against any accusations that would be used to increase her sentence."  Third, Daedone
complains that the application of this enhancement is a "bait and switch" by which the
government seeks to punish Daedone for uncharged crimes without having to prove the elements
of that crime.

   Daedone's objections to the application of § 2H4.1(b)(4)(B) lack merit.  First, as
the Daedone PSR correctly notes, § 2H4.1(b)(4)(B) instructs that if any other felony offense was
committed during the commission of, or in connection with, the forced labor offense, the court is
to increase the offense level to the greater of 2 plus the offense level from the offense guideline
applicable to that other offense, but in no event greater than level 43.  See Daedone PSR ¶ 96,
107.  Here, the Daedone PSR correctly applied the offense guideline applicable to 18 U.S.C.
§ 2242, which is U.S.S.G. § 2A3.1.  The Section 2A3.1 cross-reference applies if the offense
involved 18 U.S.C. § 2242, which proscribes, among other things, knowingly causing "another
person to engage in a sexual act by threatening or placing that other person in fear."  Id.
Application Note 4 to United States Sentencing Guidelines § 2G1.1 explicitly defines conduct
described in 18 U.S.C. § 2242:

   (B) Conduct Described in 18 U.S.C. § 2242.—For purposes of
   subsection (c)(1), conduct described in 18 U.S.C. § 2242 is: (i)
   engaging in, or causing another person to engage in, a sexual act
   with another person by threatening or placing the victim in fear
   (other than by threatening or placing the victim in fear that any

person will be subject to death, serious bodily injury, or kidnapping); . . . .

U.S.S.G. § 2G1.1 n.4.

Courts have defined the word "fear" in § 2242 broadly.  United States v. Guidry, 817 F.3d 997, 1008 (7th Cir. 2016); see also United States v. Law, 990 F.3d 1058, 1065 (7th Cir. 2021) (district court properly applied the § 2A3.1 cross-reference based on evidence that the defendant placed victims in fear of "physical, financial and psychological harms); United States v. Monsalve, 342 F. App'x 451, 454, 457 (11th Cir. 2001) (cross-reference to § 2A3.1 upheld where defendant placed victims in fear of deportation); United States v. Iu, 917 F.3d 1026, 1031 (8th Cir. 2019) (pointing to behavior "aimed at frightening [the victim] to the point that she acquiesced to sexual activity with him" to satisfy the fear requirement of § 2242); United States v. Betone, 636 F.3d 384, 388 (8th Cir. 2011) (relying on statements such as "[y]ou don't want to do that, because it's the worst thing you can do for yourself right here and right now," and the victim's testimony that he was afraid to resist or leave to establish fear); United States v. Boyles, 57 F.3d 535, 544 (7th Cir. 1995) ("'Fear' and 'threats' are different from 'force.'"); United States v. Gavin, 959 F.2d 788, 791 (9th Cir. 1992) ("A person of ordinary intelligence would understand the kind of fear the statute prohibits is fear of harm to self or others.")  Similarly, Section 2242's legislative history states that the "requirement of force may be satisfied by a showing that the threat or intimidation created in the victim's mind an apprehension or fear of harm to self or others."  H.R.Rep. No. 594, 99th Cong., 2d Sess., reprinted in 1986 U.S.C.C.A.N. 6186, 6196.  Thus, there is no requirement as Daedone suggests that "threatening or placing one in fear requires some threat of bodily harm."  In contrast, the case to which Daedone cites, United States v. Flaming, 133 F.4th 1011, 1024 (10th Cir. 2025), stands for the proposition that bodily harm is sufficient, but not necessary, to satisfy § 2242.

Second, Daedone's claim that the record does not establish criminal sexual abuse ignores the ample evidence adduced at trial.  As the Daedone PSR correctly notes, Daedone caused Jane Does 6 and 7 to engage in sexual acts with the Investor by placing them in fear of the repercussions if they said no.  Jane Doe 6 feared that she would be "shunned or kicked out of the community" and Jane Doe 7 feared she would lose her job and "sense of safety."  Daedone PSR ¶ 96.

Such fears constitute the type of harm that satisfies the elements of Section 2242. In Jane Doe 6's case, fear of being shunned or expelled from OneTaste qualifies because, as courts have recognized, intimidation that threatens social and reputational ruin under § 2242 is sufficient to establish coercion.  See Law, 990 F.3d at 1065.  The fear of being shunned or expelled from one's community strips the victim of identity, belonging and social survival, leaving compliance as the only option.  Jane Doe 7's fear of losing her job falls squarely within precedent holding that economic harms—including loss of livelihood, stability or housing— constitute the type of fear that compels compliance and therefore satisfies § 2242.  At OneTaste, work and housing were intertwined with membership, meaning that refusal risks not only a paycheck but also housing and economic stability.  Such coercion is precisely the type of non-physical intimidation Congress intended Section 2242 to reach.  See Monsalve, 342 F. App'x at 454 (deportation); Law, 990 F.3d at 1065 (financial harm).  Finally, Jane Doe 7's testimony that

13

she feared for her "sense of safety" reflects the kind of mental apprehension that courts, including in Iu, 917 F.3d at 1031, and Betone, 636 F.3d at 388, have found sufficient to establish coercion where victims comply not because they consent but because intimidation renders refusal impossible.

Third, the enhancement does not require a separate conviction for criminal sexual abuse; rather, it requires a judicial finding, by a preponderance of the evidence, that criminal sexual abuse "was committed during the commission of, or in connection with" the forced labor offense.  U.S.S.G. § 2H4.1(b)(4)(B).  Courts have long recognized that such an enhancement may be grounded in conduct proven at trial, even if the jury was not asked to return a separate verdict on that specific crime.  See White, 240 F.3d at 136; U.S.S.G. § 6A1.3 cmt.

Fourth, a defendant is not entitled to a jury trial on Guidelines enhancements, nor is she insulated from judicial fact-finding about relevant conduct.  See White, 240 F.3d at 135-36.  Daedone had a full and fair opportunity to challenge the government's evidence at trial through cross-examination and continues to have that opportunity through briefing at sentencing.  The application of the enhancement here therefore does not deprive her of the ability to "defend against" allegations relevant to her sentencing exposure.  Indeed, the defendant Daedone was given ample notice of the allegations concerning sexual abuse for which she now claims ignorance.  See, e.g., Indictment ¶ 6 (alleging defendants subjected victims to, among other things, sexual abuse), ¶ 9 (alleging that defendants recruiting and groomed victims to engage in sexual acts with OneTaste's current and prospective investors).

Finally, Daedone's claim that the enhancement constitutes a "bait and switch" is unfounded.  The Guidelines specifically provide for consideration of relevant conduct, including acts not charged as separate substantive counts, where those acts form part of the same course of conduct or common scheme as the offense of conviction.  See U.S.S.G. § 1B1.3.  Far from being a post hoc effort to expand liability, the enhancement appropriately captures the full scope of harm caused by Daedone and Cherwitz's forced labor conspiracy, which depended on sexual coercion and exploitation.

**109.**

Defendant Daedone objects to the Daedone PSR's imposition of a four-level enhancement pursuant to § 3B1.1(a) on the grounds that "titles" are not dispositive of whether Daedone "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  This objection, which cites to no authority to support it, ignores the extensive record proving that Daedone was a leader of the forced labor conspiracy.  See Daedone PSR ¶ 97.

The trial evidence overwhelmingly demonstrated that Daedone, as founder and chief executive of OneTaste, was the central figure directing its criminal operations.  Witness testimony established that Daedone personally set the company's philosophy, training methods, and business model, and that she recruited and delegated responsibilities to those who worked under her—including co-defendant Cherwitz and senior managers—who in turn supervised dozens of employees and community members.  Daedone exercised decision-making authority

over finances, dictated the handling of recruits and victims, and ordered subordinates to enforce compliance with the company's demands. Such conduct falls squarely within the factors enumerated in Application Note 4 to § 3B1.1, which include decision-making authority, nature of participation, recruitment of accomplices, control over others, claimed right to a larger share of the fruits of the crime, and degree of responsibility for the criminal scheme. See also United States v. Si Lu Tian, 339 F.3d 143, 156 (2d Cir. 2003) (looking to "the degree of discretion exercised by [the defendant], the nature and degree of his participation in planning or organizing the offense, and the degree of control and authority exercised over the other members of the conspiracy"); United States v. McPartland, No. 17-CR-587 (JMA), 2021 WL 3409229, at *6 (E.D.N.Y. Aug. 4, 2021).

Further, the record leaves no doubt that the conspiracy "involved five or more participants or was otherwise extensive." OneTaste maintained hubs in multiple cities, and scores of individuals participated in coercing labor, recruiting new victims, enforcing compliance, and marketing the company's "wellness" programs. Indeed, the Court found at trial that the government proved that several other individuals were co-conspirators of defendants Daedone and Cherwitz in the forced labor conspiracy. See Tr. 4681-82 (the Court finding the government met its burden with respect to the coconspirator statements admitted at trial pursuant to Federal Rule of Evidence 801(d)(2)(E)). Additionally, the Guidelines make clear that the enhancement applies where the criminal activity is "otherwise extensive," U.S.S.G. § 3B1.1(a), and courts have interpreted this broadly to include schemes relying on unindicted participants or unwitting outsiders. See, e.g., United States v. Skys, 637 F.3d 146, 156 (2d Cir. 2011) ("A "participant," for purposes of § 3B1.1, is "a person who is criminally responsible for the commission of the offense, but need not have been convicted.") (citing U.S.S.G. § 3B1.1 n.1); United States v. Napoli, 179 F.3d 1, 14 (2d Cir. 1999); United States v. Carrozzella, 105 F.3d 796, 803-04 (2d Cir. 1997). Here, the criminal enterprise's scope—spanning years, multiple states and numerous victims—easily satisfies the "otherwise extensive" threshold.

Accordingly, Daedone's objection mischaracterizes the law and the record. Titles alone may not be dispositive, but the evidence shows that Daedone was not merely a titular head—she was the architect, leader, and driving force of the forced labor conspiracy, and the § 3B1.1(a) enhancement was correctly applied.

*Offense Level Computation Regarding Cherwitz*

**<u>106.</u>**

Defendant Cherwitz objects to the imposition of a two-level enhancement pursuant to § 2H4.1(b)(1)(B) on the basis that Jane Doe 2 did not suffer serious bodily injury. Cherwitz notes that the conduct involving Jane Doe 2, which is described in Cherwitz PSR ¶ 31, does not constitute criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any "similar offense under state law." This objection fails because it is both legally unsupported and factually contradicted by the record.

U.S.S.G. § 2H4.1(b)(1)(B) instructs a sentencing court to increase by two levels the offense level if "any victim sustained serious bodily injury." Id. Application Note 1(M) to

Section 1B1.1 notes "serious bodily injury" is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law."  Contrary to Cherwitz's claim, the enhancement does not require a conviction under these statutes—only that the conduct falls within their ambit.  As the Cherwitz PSR notes, New York State Penal Law § 130.20 (Sexual Misconduct) and § 130.52 (Forcible Touching) are similar to criminal sexual abuse under 18 U.S.C. § 2242 in that they both involve sexual contact with an individual without that person's consent.  Cherwitz PSR ¶ 96.

The Cherwitz PSR is correct that the two New York State statutes referenced are "similar offenses under state law" to 18 U.S.C. §§ 2241 or 2242.  Both statutes prohibit the same core misconduct—nonconsensual sexual activity—secured through force, coercion or the absence of consent.  Section 2242 prohibits knowingly causing another to engage in a sexual act by threatening or placing that person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury or kidnapping) or engaging in a sexual act with another person without that person's consent, to include doing so through coercion.  Likewise, New York State Penal Law § 130.20(1) makes it a crime to engage in vaginal sexual contact with another person without such person's consent, whereas New York State Penal Law § 130.52(1) makes it a crime to intentionally and for no legitimate purpose "forcibly touch[] the sexual or other intimate parts of another person for the purpose of degrading or abusing such person."  These provisions mirror the federal prohibition because they target the same substantive harm: the imposition of unwanted sexual activity on an unwilling or intimidated victim.

Further, the New York statutes (New York Penal Law Sections 130.20(1) and 130.52(1)), like 18 U.S.C. § 2242, criminalize coerced or nonconsensual sexual activity and are "similar offenses" to § 2242.  All three provisions require proof that the victim did not consent to sexual activity and all recognize that coercion, intimidation or exploitation of vulnerability may render consent legally invalid.  Because the underlying harm—compelling sexual activity against the will of the victim—is the same under federal and New York law, §§ 130.20(1) and 130.52(1) fall squarely within the category of "similar offenses" referenced in Application Note 1(M). They therefore provide an independent basis for finding that Jane Doe 2 sustained "serious bodily injury."

The key question therefore is whether defendant Cherwitz's conduct in forcibly touching Jane Doe 2's vaginal area meets the elements set forth in either New York statute; Cherwitz's conduct does.  As to New York Penal Law § 130.20(1), the evidence adduced at trial established by a preponderance of the evidence that Cherwitz compelled vaginal sexual contact without Jane Doe 2 without her consent when Cherwitz forcibly stroked Jane Doe 2's clitoris without Jane Doe 2's consent as part of an audition to participate in a public OM demonstration. As to New York Penal Law § 130.52(1), the record shows by a preponderance of the evidence that Cherwitz intentionally and without legitimate purpose touched Jane Doe 2's intimate area in a degrading manner.  Notably, the defendants had an opportunity to cross-examine Jane Doe 2 regarding this event and did not do so.  They cannot now complain that a hearing should be required when they had ample opportunity to impeach Jane Doe 2.

**107.**

        The government hereby incorporates its response to defendant Daedone's objections to the imposition of a three-level sentencing enhancement under § 2H4.1(b)(3)(A), which applies when a victim is held under a condition of involuntary servitude for more than one year.

**108.**

        Defendant Cherwitz objects to the imposition of the offense level applicable to § 2A3.1 pursuant to the U.S.S.G. § 2H4.1(b)(4)(B) sentencing enhancement.  First, Cherwitz argues that the record does not establish by any burden of proof that Cherwitz committed the crime of criminal sexual abuse in violation of 18 U.S.C. § 2242.  Second, Cherwitz argues that she was constitutionally entitled to notice that she would be accused of violating 18 U.S.C. § 2242.  Third, Cherwitz argues that the Section 2242 ought not apply in the context of Cherwitz's conduct vis-à-vis Jane Doe 2 because it did not take place in a coercive setting.  Fourth, Cherwitz argues that a jury must have found that Cherwitz violated Section 2242 for the cross-reference to apply.  These arguments again are factually and legally misguided.

        First, the trial record clearly proves by a preponderance of the evidence that Cherwitz "engaged in a sexual act with another person without that other person's consent," including "doing so through coercion," in violation of 18 U.S.C. § 2242(3).  As Application Note 3 to U.S.S.G. § 1B1.5 instructs, relevant conduct includes conduct that would constitute a federal offense had the conduct occurred in the territorial or maritime jurisdiction of the United States.  Likewise, 18 U.S.C. § 2246(2)(C) defines "sexual act" as the "penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  In this case, defendant Cherwitz forcibly touched Jane Doe 2's clitoris without Jane Doe 2's consent.  Jane Doe 2's testimony indicates that as part of an audition for an OM demonstration that took place at an OM house in which Jane Doe 2 was selected to participate because Jane Doe 2 was identified as a "virus" within the OneTaste community, (1) Jane Doe 2 indicated that did not want to participate in the audition; (2) another OneTaste participant began stroking Jane Doe 2's clitoris for a few minutes; (3) Cherwitz then pushed that participant aside and started stroking Jane Doe 2's clitoris without asking Jane Doe 2's permission; (4) Cherwitz directed another OneTaste participant to walk to the end of a hallway and asked that participant if he could "feel" Jane Doe 2's orgasm to which that participant said he could not; (5) Cherwitz continued stroking Jane Doe 2's clitoris beyond the 15 minute time period of a traditional OM session; and (6) at the conclusion, Cherwitz berated and ridiculed Jane Doe 2, and told others to shun her.  See Tr. 302-06; see also Cherwitz PSR ¶ 31 (Cherwitz "continued to mock and berate Jane Doe 2 in front of the other household members while Jane Doe 2 was on the table half dressed.  Cherwitz then announced to the other house members that they were not to speak with Jane Doe 2 for a period of time."); id. ¶ 76.  Again, the defendants elected not to cross-examine Jane Doe 2 regarding her recollection of these events and the government has proven it by a preponderance of the evidence.

<u>Second</u>, Cherwitz's unsupported argument that she is entitled to notice that the Sentencing Guideline cross-reference to § 2A3.1 would apply and therefore increase her base offense level to 32 is simply misguided.  <u>Cf.</u> Cherwitz PSR ¶ 99, 108; <u>see also</u> Indictment ¶ 6 (alleging that the defendants subjected victims to, <u>inter alia</u>, sexual abuse).  The only notice that would be required would be if the sentencing court departed from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission.  <u>See</u> Fed. R. Crim. P. 32(h); <u>Irizarry v. United States</u>, 553 U.S. 708, 714 (2008); <u>United States v. Belliard</u>, 309 F. App'x 488, 489-90 (2d Cir. 2009).  Here, the PSR properly identifies § 2H4.1 in making the initial selection on which sentencing guideline to apply; once it did so, it can properly consider underlying uncharged conduct in applying that guideline's applicable provisions.  <u>See</u> <u>United States v. Padilla</u>, 961 F.2d 322, 325-26 (2d Cir. 1992).

Indeed, as discussed above, a court can consider uncharged, relevant conduct when calculating a defendant's applicable sentencing guidelines, see <u>supra</u>.  Thus, there is simply no constitutional or statutory requirement that a defendant be "entitled to know with specificity what act of criminal sexual abuse she was accused of committing so she could defend it."  Cherwitz Objections at ¶ 106.  Again, defendant Cherwitz misreads the law: factual determinations used to sentence a defendant to a sentence within the maximum allowed by statute based not only on conduct charged in an indictment but also on relevant conduct (as defined by U.S.S.G. § 1B1.3) can be made by a court without violating a defendant's right to due process.  <u>White</u>, 240 F.3d at 136; <u>United States v. Ahders</u>, 622 F.3d 115, 120 (2d Cir. 2010) (relevant conduct includes both charged and uncharged conduct); <u>United States v. Wernick</u>, 691 F.3d 108, 115 (2d Cir. 2012) (conduct must be relevant and it must occur during the commission of the offense, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense); <u>United States v. Plaza</u>, 752 F. App'x 37, 46 (2d Cir. 2018) (upholding application of murder cross-reference in determining that an uncharged murder was "relevant conduct" to defendant's participation in a narcotics conspiracy).

<u>Third</u>, Cherwitz's argument that Section 2242 ought not apply because Cherwitz's conduct at issue here took place not in a coercive setting like a prison but rather in an OM house ignores the relevant facts and misrepresents the applicable law.  As Application Note 3 to U.S.S.G. § 1B1.5 instructs, relevant conduct includes conduct that would constitute a federal offense had the conduct occurred in the territorial or maritime jurisdiction of the United States.  There is simply no indication that such conduct must necessarily occur in a coercive setting like a prison; indeed, Title 18, United States Code, Section 7 sweeps within Section 2242's reach not just coercive settings like prisons but also airplanes, boats and national parks.

<u>Fourth</u>, Cherwitz is simply incorrect that the Section 2A3.1 cross-reference can only apply if a jury found that Cherwitz violated 18 U.S.C. § 2242.  For the reasons already set forth herein, that is an incorrect reading of the law.  <u>See</u> <u>White</u>, 240 F.3d at 136; U.S.S.G. § 6A1.3 cmt.

**110.**

Defendant Cherwitz objects to the imposition of a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) because Cherwitz was not the "founder or a leader of OneTaste." Cherwitz argues that to qualify as a "leader or organizer" under § 3B1.1(a), Cherwitz must have "manag[ed] or supervis[ed] one or more" participants in the forced labor conspiracy and that she "did not manage or supervise any of the co-conspirators."

The government agrees that the PSR improperly applied a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a); instead, the government believes that a three-level enhancement pursuant to U.S.S.G. § 3B1.1(b) properly applies. Section 3B1.1 provides that "[i]f a defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive," her offense level should be increased by three levels. Id. § 3B1.1(b). A defendant is a "manager or supervisor" of criminal activity if "[s]he 'exercise[d] some degree of control over others involved in the commission of the offense . . . or play[ed] a significant role in the decision to recruit or to supervise lower-level participants.'" United States v. Blount, 291 F.3d 201, 217 (2d Cir. 2002) (quoting Ellerby v. United States, 187 F.3d 257, 259 (2d Cir. 1998)); see also U.S.S.G. § 3B1.1 n.2 ("[T]he defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."); U.S.S.G. § 3B1.1 n.1 (defining participant as someone who is criminally responsible for the commission of the offense, but need not have been convicted).

Cherwitz qualifies as a manager or supervisor within the meaning of U.S.S.G. § 3B1.1(b). As OneTaste's Head of Sales, Cherwitz was entrusted with authority over a team that recruited new members, marketed courses and generated revenue for the enterprise. She not only carried out orders from Nicole Daedone but also exercised independent discretion in setting sales strategies, training staff and assigning responsibilities to subordinates. The conspiracy's success depended on this structure, and Cherwitz's role in managing people, including co-conspirators such as Co-Conspirator 2, Co-Conspirator 6 and Co-Conspirator 8, see United States v. James, No. 24-84-CR, 2025 WL 2486539, at *10 (2d Cir. Aug. 29, 2025) (noting that for an enhancement pursuant to § 3B1.1 to apply, the PSR or the sentencing court must identify the "criminally responsible" participant), and OneTaste's sales operations places her squarely within the Guidelines' definition of a manager or supervisor. Cherwitz's authority to assign tasks, oversee implementation and discipline subordinates demonstrates the type of managerial control Section 3B1.1(b) contemplates.

Cherwitz's role cannot be characterized as that of a mere participant. Unlike lower-level members who simply complied with orders, Cherwitz had a defined leadership role that gave her authority over others, placed her at the center of OneTaste's coercive sales and labor operations—essential components of the forced labor conspiracy—and required her to coordinate multiple people and resources in pursuit of the conspiracy's goals.

At the same time, the record makes clear that Cherwitz's role was not that of the overall organizer or leader of the conspiracy, which the Guidelines reserve for those who create, direct and control the entire conspiracy. That role belonged to Daedone, who founded OneTaste, set its philosophy and exercised ultimate authority.

And, for the reasons set forth above with respect to Daedone, the forced labor conspiracy involved "five or more participants or was otherwise extensive."  See U.S.S.G. § 3B1.1(a).

*Rachel Cherwitz Offender Characteristics*

**128.**

This objection misconstrues ¶ 128 of the Cherwitz PSR, which reflects Mr. Pelletier's understanding of the offense conduct.

**178-79.**

The government agrees that the offense of conviction is not a Class A felony.  In general, the maximum term of imprisonment for a violation of 18 U.S.C. § 1594(b) is twenty years, or life, if "death results from [the] violation" or if the violation "included kidnapping, an attempt to kidnap, aggravated sexual abuse, or an attempt to kill. . . ."  18 U.S.C. § 1589(d).  Here, the jury did not make a specific finding that the defendants' violation "include[s] . . . aggravated sexual abuse."  See, e.g., Apprendi v. United States, 530 U.S. 466 (2000); United States v. Nellis, No. 23-6295-CR, 2025 WL 1403404, at *2 (2d Cir. May 15, 2025) ("any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt").  For those reasons, the statutory maximum term of imprisonment applicable to defendants Daedone and Cherwitz is twenty years.  As such, the offense of conviction is a Class C felony.  See 18 U.S.C.§ 3559(a)(3).

**184.**

The government will separately address forfeiture with the Court.

**186.**

The government will separately address restitution with the Court.

**188.**

The government agrees that, although the conspiracy for which the defendants were convicted involved sexual exploitation, the defendants were not convicted of a "sex offense."  Cf. 34 U.S.C. § 20911(5) (defining "sex offense").  They are thus not required to register as sex offenders under the Sex Offender Registration and Notification Act ("SORNA").

**194.**

For the reasons stated above, it is inapposite that the defendants were not charged or convicted of holding any person in a condition of involuntary servitude.  The Court is entitled to make that finding by a preponderance of the evidence.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:      /s/
Kaitlin T. Farrell
Nina C. Gupta
Sean M. Fern
Assistant U.S. Attorneys
(718) 254-7000

cc:      Clerk of Court (DG) (by ECF and e-mail)
Defense Counsel of Record (by ECF and e-mail)