

233 Broadway, Suite 707
New York, NY 10279

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

September 19, 2025

Probation Officer Meghan Wing
United States Probation Office
Eastern District of New York
202 Federal Plaza
Central Islip, New York 11722

      Re: United States v. Cherwitz, et al.
      Criminal Docket No. 23-146 (DG)

Dear Meghan Wing:

    Defendant objects to any application of the proposed enhancements under U.S.S.G. §§ 3B1.3 and 3C1.1. As set forth below, the record does not establish the elements necessary to support either enhancement. Both the abuse-of-trust and obstruction arguments rest on speculation, conflation of uncharged conduct with the offense of conviction, and disputed inferences that, at a minimum, would require a *Fatico* hearing to resolve.

### 1. Objection to Abuse of Trust Enhancement

    Defendant objects to the application of the abuse of trust enhancement under U.S.S.G. § 3B1.3. As the Second Circuit has made clear, § 3B1.3 requires proof (1) that the defendant "occupied a position of trust," and (2) that she "abused that position of trust to commit or conceal" the present offense. *United States v. Nuzzo*, 385 F.3d 109, 115 (2d Cir. 2004) (reversing application of § 3B1.3 where the government failed to show that the defendant's position of trust significantly facilitated the commission or concealment of his crimes).

    The government failed to make a convincing case for application of the abuse of trust enhancement. As a preliminary matter, Ms. Daedone was the CEO of a company who wrote books and gave speeches to thousands of students. People were free to accept or reject her ideas and the witnesses at trial admitted as much. A CEO of a company and author or philosophical teacher is not a "position of trust." That people were drawn to Ms. Daedone or her teachings does not mean that she "occupied a position of trust."

    Even more problematic, the record does not support a finding that Ms. Daedone's alleged position of influence was used in a way that "significantly facilitated" the



233 Broadway, Suite 707
New York, NY 10279

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

commission or concealment of the crime of conviction—forced labor conspiracy. At trial, the jury was instructed only on conspiracy, not on substantive forced labor counts, and returned a conviction solely on that theory. The government's sentencing argument repeatedly blurs this distinction, pointing to evidence more relevant to uncharged conduct than to the offense actually proved.

Put simply, the enhancement does not apply where the government conflates generalized allegations of exploitation with the specific elements of the offense of conviction. Without proof that any supposed position of trust was actually instrumental in committing or concealing the forced labor conspiracy—as opposed to forced labor itself—the second prong is not satisfied. Accordingly, the § 3B1.3 enhancement should not be imposed.

**2. Objection to Obstruction-of-Justice Enhancement**

The enhancement does not apply. Section 3C1.1 requires a finding—by a preponderance of the evidence—(A) that the defendant willfully obstructed or attempted to obstruct "the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense," and (B) that the conduct related to the offense of conviction (or a closely related offense). *See* U.S.S.G. § 3C1.1; *United States v. Reed*, 49 F.3d 895, 900 (2d Cir. 1995); *United States v. Zagari*, 111 F.3d 307, 329 (2d Cir. 1997) (explaining that where obstruction arises in a related proceeding, the conduct must also be shown to be material to the instant offense). The record does not support either element.

First, the government points to an isolated March 9, 2016 message in which Ms. Daedone told a subordinate to "erase your texts." But when read in context, that exchange is not tied to any investigation or prosecutorial concern. The surrounding thread involved lighthearted comments about breakfast, observations about a member's boots, and suggestions for how to frame supportive feedback to that member. Against that backdrop, the more natural inference is that "erase your texts" meant not forwarding or saving messages that might embarrass someone internally—not an effort to obstruct federal investigators. At the very least, both interpretations are equally plausible, which means the government cannot meet its burden to prove willful obstruction by a preponderance. *See United States v. Zagari*, 111 F.3d 307, 328 (2d Cir. 1997) (the obstruction enhancement is "appropriate only upon a finding that the defendant had the specific intent to obstruct justice") (citing *United States v. Defeo*, 36 F.3d 272, 276 (2d Cir. 1994) (internal quotation marks omitted).



233 Broadway, Suite 707
New York, NY 10279

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

Second, the cited deletions "occurred after the conspiracy ended but before indictment," and amid generalized concerns about reputational/legal risk (e.g., being "seen as prostitution").  On this record, there is no finding that a federal investigation into the forced-labor conspiracy was underway—or that any deletion was aimed at, or foreseeably aimed at, that investigation.  While pre-charge conduct can qualify, the Second Circuit has required a clear nexus to an investigation that "plainly encompassed the conduct at issue in the federal crime of conviction."  *United States v. Ayers*, 416 F.3d 131, 134 (2d Cir. 2005).   Here, the government's theory rests on ambiguous references to "legal scare" and "prostitution" risk—distinct charging theories the jury did not adopt.  That is not enough to satisfy § 3C1.1's "instant offense" (or "closely related offense") requirement for a forced-labor conspiracy conviction.

Furthermore, the government offers only speculation that recovered texts "could have led to additional indictments."  Speculation about hypothetical content and downstream charging decisions cannot carry the government's burden on materiality.  *See Zagari*, 111 F.3d at 329 (finding that materiality cannot rest solely on relevance to a related proceeding; it must also be material to the instant federal offense).

The PSR found "no information that the defendant impeded or obstructed justice."  PSR ¶ 102.  That assessment tracks Second Circuit law—absent proof of (i) a concrete investigative nexus to the instant offense (or a closely related offense actually under investigation), (ii) the material significance of the purportedly destroyed communications, and (iii) a willful obstructive purpose, § 3C1.1 should not apply.

Respectfully Submitted,

/s/JENNIFER BONJEAN